**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **VERIDYNE CORPORATION**<br>**2002 Sproul Road Suite 206**<br>**Broomall, Pennsylvania 19008** | : | |
| **Plaintiff** | : | **No. 06-150C** |
| **v** | : | |
| **THE UNITED STATES OF AMERICA** | : | |
| **Defendant** | : | |

**AMENDED COMPLAINT**

## A. PARTIES

1. Plaintiff Veridyne Corporation ("Plaintiff" or "Veridyne") is a corporation, organized and existing under the laws of the Commonwealth of Pennsylvania; it is a small business and, at all times relevant hereto, was a certified participant in the Small Business Administration ("SBA") Minority Business Enterprise Program (i.e., the 8(a) Program).

2. Defendant is the United States of America acting through the Department of Transportation ("DOT").

## B. Jurisdiction

3. Jurisdiction is founded upon the Contract Disputes Act, 41 U.S.C. 601 et seq (the "CDA"); as is more fully set forth infra.

## C. Background

4. On March 14, 1995, the DOT Maritime Administration ("MARAD") awarded Contract DTMA91-95-C-00024 (the "Contract") to SBA, pursuant to the 8(a) Program.

5. The 8(a) Program participant designated to perform under the Contract was Veridyne, under its then name of Shepard-Patterson & Associates, Inc. (for clarity

purposes, the contractor will, at all times herein, be referred to as Veridyne); SBA then awarded Subcontract No. 0303-95-1-00055 (the "Subcontract") to Veridyne.

6. The Contract was an indefinite delivery, indefinite quantity, Cost Plus Award Fee Contract, covering a base year and four one (1) year options.

7. In "Brief Description Of Services," on page B-1, the Contract described the services to be provided by Veridyne as follows:

> This is an Indefinite Delivery, Indefinite Quantity, Cost Plus Award Fee Contract. The total purpose of this contract is to provide for comprehensive logistic support services necessary to maintain and enhance, where necessary, MARAD's Logistics Programs in support of the Ready Reserve Force (RRF) and its overall mission. The Contractor resources shall manage the Equipment Configuration and Spare Parts Management Information System (ECSMIS) programs and be available to respond to the various logistics support requirements of the RRF.

* * * *

8. In "Statement Of Work," C.2 on page C-2, the Contract provided that Veridyne would provide services to MARAD, "as needed in accordance with authorized written work orders."

9. In "Work Order Procedures," F.7 on page F-3, the Contract provided, in (d), as follows: "The Contractor shall perform work under this contract as specified in the written work orders issued by the Contracting Officer."

10. The Contract provided the following estimated cost and "award fee pool," by year:

| | | |
|---|---|---|
| Base Year Period | $2,789,874.56 | $323,189.96 |
| Option Year One Period | $3,754,201.14 | $300,336.09 |
| Option Year Two Period | $4,283,181.76 | $342,654.54 |
| Option Year Three Period | $4,305,572.15 | $344,445.77 |
| Option Year Four Period | $4,426.697.39 | $354,135.79 |

11. In terms of the award fee, the Contract provided for a maximum award fee of Eight (8%) Percent, with half of that figure, i.e., Four (4%) Percent, payable semi-monthly

as a provisional fee; thereafter, based on MARAD's evaluation of Veridyne's performance per contract quarter, Veridyne could receive additional award fees up to the Eight (8%) Percent maximum figure; it could also be required to repay part (or all) of the provisional award fees it had received in a quarter, if MARAD judged Veridyne's performance to have been unacceptable.

12. The Contract established the following rating system and point scale for determination of the award fees Veridyne could receive:

| | | | |
|---|---|---|---|
| Superior Rating: | 4 | Fee: | 8% |
| Highly Satisfactory Rating: | 3 | Fee | 6%-7% |
| Satisfactory Rating: | 2 | Fee | 4%-5% |
| Marginal Rating: | 1 | Fee | 1%-3% |
| Unsatisfactory Rating: | 0 | Fee | 0% |

13. Veridyne began performing on the Contract in 1995 pursuant to work orders issued by MARAD contracting officer.

14. From the date of Award (i.e., March 27, 1995) through the fourth option year, Veridyne received authorized work orders totaling approximately $20.1 million; in terms of award fees, Veridyne received the full 8% award fee for virtually all of the TWENTY (20) performance quarters, based on its performance having been rated "Superior" (i.e., an average point rating of at least 3.75) by MARAD; Veridyne, therefore, received some $1.564 million in award fees.

15. In early 1998, Veridyne and MARAD Contracting Officer, Wayne Cutrell, began discussions on an extension of the Contract.

16. The discussions between Veridyne and Cutrell culminated in the execution of bilateral Modification 0023 to the Contract, by Mr. Cutrell and Veridyne's President on May 18, 1998, and by SBA Contracting Officer Ollie Adams on May 20.

17. Modification 0023, described itself as follows:

1. This modification is issued to provide five additional (1)

> year option periods to this contract. The current contract has one option period remaining, Option Period Four, which begins March 27, 1998 [sic, 1999] through March 26, 2000. <u>Upon the discretion of the Contracting Officer</u>, a written notice will be provided to the contractor giving notice of the beginning of the first of five additional one year option periods. This first period is designated Option Year Five, beginning March 27, 2000 through March 26, 2001. <u>The option periods will be exercised at the sole discretion of the Government</u>.
>
> * * *
>
> 3. The scope of work and all terms and conditions of the contract are unchanged. <u>Funds are obligated by Delivery Orders issued under this contract</u>, therefore no funds are committed at this time.

Modification 0023, page 2 of 7 (emphasis supplied).

18. Modification 0023, in sum and substance, added five (5) additional option years; March 27, 2000, through March 26, 2001, March 27, 2001 through March 26, 2002, March 27, 2002 through March 26, 2003, March 27, 2003 through March 26, 2004 and March 27, 2004 through March 26,dification 0023 provided the following estimated costs and award fee pool (by period):

| | | |
|---|---|---|
| Option Year Five Period | $1,202,982.00 | $87,783.00 |
| Option Year Six Period | $ 808,316.00 | $57,718.00 |
| Option Year Seven Period | $ 379,669.00 | $27,528.00 |
| Option Year Eight Period | $ 230,962.00 | $18,400.00 |
| Option Year Nine Period | $ 172,769.00 | $13,821.00 |

20. On March 25, 1999 MARAD Contracting Officer Erica Williams issued unilateral Modification 0026 to the Contract, extending the term of the Contract from March 27, 1999 through March 26, 2000 (i.e., Option Year Four under the original award); as stated in Modification 0026 no funds were obligated thereby, as funding would be obligated by individual Delivery Orders issued under the contract.

21. On March 22, 2000, MARAD Contracting Officer Williams issued unilateral modification 0032 to the Contract, extending the contract term for an additional year (<u>i.e.</u>, the first year of the Modification 0023 extension) from March 27, 2000 through March 26,

2001; as stated in Modification 0032, no funds were obligated thereby, as funding would be obligated by the issuance of individual Delivery Orders issued under the Contract.

22. By September 30, of 2000, Veridyne had invoiced approximately $3,168,088 in costs, all incurred in response to work orders issued by MARAD contracting officers.

23. Based on its invoicing for its work on the work orders described in 22, supra, by September 30, 2000, Veridyne had billed the entire award fee established in Modification 0023; MARAD therefore disallowed the provisional fees included in Veridyne invoices 150 and 151.

24. By letters dated October 18, and November 6, 2000, Veridyne proposed adjustments to the award fees in the Contract.

25. By unilateral Modification 0033, dated March 23, 2001, MARAD Contracting Officer Williams exercised the second option under Modification 0023, extending the contract period from March 27, 2001 through March 26, 2002 (the second year of the Modification 0023 extension).

26. By letter dated April 25, 2001 MARAD Contracting Officer Benedict J. Burnowski proposed a new award fee pool, as follows:

| | |
|---|---|
| Option Year 5 | $370,099 |
| Option Year 6 | $339,931 |
| Option Year 7 | $311,517 |
| Option Year 8 | $311,517 |
| Option Year 9 | $311,517 |
| | $1,644,581 |

27. Following Mr. Burnowski's April 25, 2001 letter, he and representatives of Veridyne; based on actual contract costs for years of 1-5 of $20,122,815 and the award fee earned by Veridyne thereon ($1,564,762), plus estimated year 6-10 costs of $32,581,873, Veridyne proposed year 6-10 award fees of $2,726,829.

28. Following further discussions between Mr. Burnowski and Veridyne, Mr. Burnowski sent Veridyne a "draft" bilateral modification (i.e., 0035) to the Contract; the draft modification provided, in part, as follows:

> Block 14 (Continued)
>
> 1. Where the Government has exceeded the maximum order limitations for option years 5 through 9 of this contract, the Contractor agrees to honor any and all orders, including those that exceed the maximum order limitation, from the Government up to a maximum of 645,407 labor hours (inclusive of labor hours incurred by its first tier subcontractor, INS) for the consideration set forth in paragraph 14.2 below. Please note that while the contract does not include FAR clause 52.216-19, Order Limitations, section B of the contract states that this is an Indefinite Delivery, Indefinite Quantity type contract and this contract type requires the inclusion of the aforementioned clause.
>
> 2. It is estimated that the work necessary to accomplish the requirements of this contract for the performance period covered by option year 5 through 9 will require an increase in the total estimated cost by $29,614,729 from $2,794,698 to $32,409,427.39 by reason of this modification. The fee is increased $2,044,750 from $205,250 to $2,250,000 of which $843,750.00 shall be base fee and $1,406,250.00 shall be the maximum award fee available. The year by year changes to total estimated cost and fee are shown in the revised section B for option years 5 and 9 is made part of this modification.

29. According to the cover letter transmitting "Draft" modification 0035 to Verification, execution of the modification was "conditioned on the review and approval of MARAD's Contract Review Team."

30. Modification 0035 was never formerly executed; however the parties proceeded to operate in accordance with its parameters.

31. On September 28, 2001, MARAD Contracting Officer Williams executed unilateral Modification 0036 to the Contract, increasing the total award fee by $263,152.00.

32. On March 22, 2002, MARAD Contracting Officer Williams executed unilateral Modification 0038 to the Contract, exercising the option to extend the term for the period March 27, 2002 through March 26, 2003 (i.e., the second performance year under the Modification 0023 extension); no funds were obligated thereby as funding was to be obligated by individual Delivery Orders.

33. On April 24, 2002, MARAD Contracting Officer Williams executed unilateral Modifications 0039 and 0040 to the Contract, authorizing Veridyne to bill the full award fee of $72,607.24 for the periods October through December 2001 and January through March 2002, based on Veridyne's performance having been evaluated as "Superior" for each period (i.e., average point scores of 3.92173913 and 3.879032258 respectively).

34. On August 12, 2002, MARAD Contracting Officer Williams executed unilateral Modification 0041 to the Contract authorizing Veridyne to bill the full award fee of $66,593.01 for the period April through June, 2002, based on Veridyne's performance having been rated "Superior" for the period (i.e., a perfect 4.0 average point score).

35. On September 26, 2002, MARAD Contracting Officer Williams executed unilateral Modification 0042 adding funding in the amount of $66,593.01 to the award fee pool.

36. On October 25, 2002, MARAD Contracting Officer Williams executed unilateral Modification 0044 to the Contract authorizing Veridyne to invoice the full award fee of $66,593.01 for the period July through September, 2002, based on Veridyne's performance having been rated "Superior" for the period (i.e., an average point score of 3.831858407).

37. On February 26, 2003, MARAD Contracting Officer Williams executed unilateral Modification 0045, authorizing Veridyne to invoice the full award fee of

$66,593.01 for the period October through December, 2002, based on Veridyne's performance having been rated "Superior" for the period.

38. On March 20, 2003, MARAD Contracting Officer Williams executed unilateral Modification 0046 to the Contract, inter alia, extending the Contract for the period March 27, 2003 through March 26, 2004 (i.e., the fourth year under the Modification 0023 extension); no funds were obligated thereby, as funding was to be obligated "incrementally."

39. On May 15, 2003, MARAD Contracting Officer Williams executed unilateral Modification 0048 to the Contract, authorizing Veridyne to invoice the full award fee of $66,593.01 for the period January through March, 2003, based on Veridyne's performance having been rated "Superior" for the period (i.e., an average point score of 3.941747573).

40. On August 15, 2003, MARAD Contracting Officer Williams executed unilateral Modification 0049 to the Contract, authorizing Veridyne to invoice the full award fee of $66,593.01 for the period of April through June, 2003, based on Veridyne's performance having been rated "Superior" for the period (i.e., an average point of 3.95862069).

41. On November 5, 2003, MARAD Contracting Officer Williams executed unilateral Modification 0050 to the Contract authorizing Veridyne to invoice the full award fee of $66,593.01 for the period of July through September, 2003, based on Veridyne's performance having been rated "Superior" for the period (i.e., an average point of score 3.97972973).

42. On January 28, 2004, MARAD Contracting Officer Williams executed unilateral Modification 0051 to the Contract authorizing Veridyne to invoice for the full award fee of $66,593.01 for the period October through December, 2003, based on

Veridyne's performance having been rated "Superior" for that period (i.e., an average point score of 3.979452055).

43. On March 19, 2004, MARAD Contracting Officer Williams executed unilateral Modification 0052 to the Contract, exercising the option to extend the term for the period March 27, 2004 through March 26, 2005 (i.e., the fifth and final year under the Modification 0023 extension); no funds were obligated thereby, as funds were to be obligated by individual work orders.

44. On May 18, 2004, MARAD Contracting Officer Williams executed unilateral Modification 0053 to the Contract, authorizing Veridyne to invoice for full award fee of $66,593.01 for the period January through March, 2004, based on Veridyne's performance having been rated "Superior" for the period (i.e., an average point score of 3.895104845).

45. On September 14, 2004, MARAD Contracting Officer Williams executed unilateral Modification 0055 to the Contract authorizing Veridyne to invoice $44,418.00 for award fee for the period April through June, 2004; notwithstanding the fact that Veridyne's performance for the period had been rated "Superior" overall, with an average point score of 3.715447154 (25 of 29 evaluations rated as "4"), the Performance Evaluation Board and Fee Determining Official reduced the award fee by one-third (1/3), due to Veridyne having been awarded a rating of "2" (i.e., "Satisfactory") for 3 of 29 ratings.

46. On or about December 7, 2004, Veridyne was informed by MARAD's Counsel that MARAD considered Modification 0023 to the Contract to have been void ab initio, on the basis that Veridyne had to have known that MARAD would order more than the estimated $2,999,994.80 set forth in Modification 0023, thereby making Veridyne's acceptance of Modification 0023 tantamount to fraud; Veridyne's contract performance was suspended by MARAD's General Counsel.

Count I

47. Veridyne hereby incorporates paragraphs 1-46 of this Complaint as if set forth in full.

48. Between September 1 and December 15, 2004, Veridyne submitted the following invoices to MARAD; all the services rendered and covered by the invoices were utilized by MARAD and performed under authorized work orders:

| No. | Date | Period | Amount |
|---|---|---|---|
| 260 | 9/28/04 | 9/1 – 9/15 | $246,116.05 |
| 261 | 10/15/04 | 9/16 – 9/30 | $345,740.95 |
| 262 | 11/1/04 | 10/1 – 10/15 | $224,416.15 |
| 263 | 11/15/04 | 10/10 – 10/31 | $244,905.45 |
| 264 | 11/24/04 | 11/1 – 11/15 | $202,818.19 |
| 265 | 12/15/04 | 11/16 – 11/30 | $208,871.74 |
| | | | $1,532,868.40 |

49. Following the suspension of contract performance, Veridyne was informed by MARAD's General Counsel that invoices 260 through 265 would not be paid.

50. Subsequently, Veridyne submitted two (2) additional invoices, for the period December 1 through 31, 2004 (No. 266 in the amount of $491,185.05) and for the period January 1 through March 31, 2005 (No. 267 in the amount of $213,688.98); the two additional invoices were for activities involved in closing down operations (Invoice No. 266), and for costs continuing through March 26 2005, e.g., office and equipment leases (invoice No. 267).

51. As with the earlier Five (5) invoices, MARAD refused to pay Invoices 266 and 267, bringing the total of payments due Veridyne and withheld by MARAD to $2,267,163.96.

52. After several months of fruitless effort aimed at convincing MARAD to pay its invoices for services ordered, rendered, and utilized by MARAD, on July 14, 2005

Veridyne re-submitted Invoices 260 through 267 as a certified claim pursuant to the CDA (the "Claim"); a Final Decision was requested.

53. Veridyne was informed in August of 2005 by MARAD's General Counsel that no Final Decision would be issued on the Claim, because it involved fraud.

54. More than sixty (60) days have passed without a Final Decision by the Contracting officer on Veridyne's claim for payment of Invoices 250 through 267; it is, therefore, deemed denied.

55. Veridyne is entitled to payment on Invoices 260 through 267 on the basis that:

a) Modification 0023 is not void ab initio, as it was executed by representatives of MARAD and SBA, both of whom acted within the scope of their authority;

b) to the extent that Modification 0023 may have been outside the authority of the MARAD representative (i.e., Contracting Officer Cutrell), Modification 0023 was ratified by other MARAD contracting personnel acting within their authority (e.g., Modifications 0032, 0033, 0036, 0038, 0039, 0040, 0041, 0042, 0044, 0045, 0046, 0048, 0049, 0050, 0051, 0052, 0053 and 0055);

c) all work performed by Veridyne and invoiced by Invoice Nos. 260 through 266 was pursuant to individual work orders, each of which was issued by MARAD representatives acting within the scope of their authority;

d) to the extent that Modification 0023 may have been outside the authority of the MARAD representative (i.e., Contracting Officer Cutrell), MARAD waived the defect by issuing numerous work orders thereunder;

e) to the extent that Modification 0023 may have been outside the authority of the MARAD representative, Veridyne is still entitled to payment under the doctrine of quantum meruit;

f) to the extent that Modification 0023 may have been outside the authority of the MARAD representative, Veridyne is still entitled to payment of its invoices under the doctrine of *estoppel in pais;*

g) Invoice No. 267 represents costs Veridyne incurred for expenses continuing through March 26, 2005 (i.e., conclusion of the final option year), and Veridyne is again entitled to payment due to its having committed to those expenses.

WHEREFORE, Plaintiff Veridyne Corporation respectfully requests judgment against Defendant on Count I in the amount of $2,267,163.96, together with CDA interest from July 14, 2005 through the date of payment, and such other relief as the Court deems just and proper.

Count II

56. Veridyne hereby incorporates paragraphs 1-46 of this Complaint as if set forth in full.

57. Following suspension of contract performance by MARAD's General Counsel Veridyne was forced to engage outside counsel 1) to represent it in connection with a criminal investigation instigated by MARAD, and 2) in an effort to convince MARAD to pay Invoices 260 through 267.

58. In connection with the criminal investigations, Veridyne incurred (and paid) a total of $23,400 in legal fees.

59. In connection with its efforts aimed at getting invoices 260 through 267, Veridyne incurred (and paid) a total of $59,017.36.

60. By letter dated February 14, 2006 Veridyne submitted another claim to MARAD, pursuant to the CDA, seeking 80% of the legal fees spent in connection with the criminal investigation wherein prosecution was declined ($18,720.00), pursuant to 48 CFR § 31.205-47(e)(3) and all of the legal fees spent in connection with the effort to have MARAD pay invoices 260 through 267 ($59,017.36) as "contract administration" expenses; the total sought was $77.737.36.

61. Veridyne's February 14 claim requested a Final Decision by the contracting officer.

62. More than sixty (60) days have passed without a Final Decision by the Contracting officer on Veridyne's claim for reimbursement of legal expenses; it is, therefore, deemed denied.

63. Veridyne is entitled to the $77,737.36 sought as reimbursement of legal fees.

WHEREFORE, Plaintiff Veridyne, Inc. requests judgment on Count II in the amount of $77,737.36, together with CDA interest from February 17, 2006, and such other relief as the Court deems just and proper.

Count III

64. Veridyne hereby incorporates paragraphs 1-46 of this Complaint as if set forth on full.

65. The actions of MARAD's counsel in stopping Veridyne's performance put MARAD in breach of the Contract; as such, Veridyne is entitled to the lost profit it would have realized had the Contract not been breached.

66. In its February 14, 2006 letter, Veridyne also submitted a claim for breach damages pursuant to the CDA, seeking $246,394.13 in lost profits; a Final Decision was requested.

67. More than sixty (60) days have passed without a Final Decision by the Contracting officer on Veridyne's claim for lost profits; it is, therefore, deemed denied.

68. Veridyne is entitled to the $246,394.13 sought as lost profits.

WHEREFORE, Plaintiff Veridyne, Inc. requests judgment against Defendant on Count III in the amount of $246,394.13 together with CDA interest from February 17, 2006 and such other relief as the Court deems just and proper.

Respectfully submitted,

s/ Marc Lamer

**MARC LAMER**
Attorney for Veridyne Corporation

Kostos and Lamer, P.C.
1608 Walnut Street, Suite 1300
Philadelphia, Pennsylvania 19103
(215) 545-0570

Date: May 16, 2006