## SECTION E - INSPECTION AND ACCEPTANCE

E.1 **52.252-2 CLAUSES INCORPORATED BY REFERENCE. (JUN 1988)**

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

(a) Applies to the Contract:

| | |
|---|---|
| 52.246-3 | Inspection of Supplies - Cost Reimbursement (APR 1984) |
| 52.246-5 | Inspection of Services - Cost Reimbursement (APR 1984) |

E.2 **DELEGATION OF INSPECTION AND ACCEPTANCE. (MARAD) (AUG 1991)**

The Contracting Officer's Technical Representative shall be delegated the responsibility and authority to conduct inspection and acceptance duties for this contract. (See COTR Clause in Section G).

E.3 **QUALITY ASSURANCE**

Quality assurance will be performed in accordance with J-1 through J-7, unless otherwise specified on the work order. Errors in excess of the Acceptable Quality Level (AQL) will require the service to be re-performed by the contractor at no cost to the Government.

## SECTION F - DELIVERIES OR PERFORMANCE

### F.1 M1252.212-01 PERIOD OF PERFORMANCE (MARAD) (AUG 1991)

The incumbent contractor will work with the awardee of this procurement for a phase-in/phase-out period not to exceed 90 days after the date of contract execution. The period of performance for this contract is 12 months, inclusive of the phase-in period and may be extended by as many as four (4) of the 12-month options contained in the contract. The total period of performance of this contract if all options are exercised shall be sixty (60) months.

### F.2 WORK ORDER PERIOD OF PERFORMANCE

The performance period and time of delivery for individual tasks shall be specified in each work order issued under this contract.

### F.3 CLAUSES INCORPORATED BY REFERENCE (FAR 52.252-2)(JUN 1988)

This contract incorporates the following clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

I. Federal Acquisition Regulation (48 CFR Chapter 1) Clauses

| CLAUSE | Title |
|---|---|
| 52.212-13 | STOP-WORK ORDER (AUG 1989) -ALTERNATE I (APR 1984) |
| 52.247-34 | F.O.B. DESTINATION (NOV 1991) |
| 52.247-54 | DIVERSION OF SHIPMENT UNDER F.O.B. DESTINATION CONTRACTS (MAR 1989) |

II. Transportation Acquisition Regulation (48 CFR Chapter 12) Clauses

| | |
|---|---|
| 1252.212-71 | NOTICE OF DELAY (APR 1984) |

## F.4 M1252.212-05 MONTHLY PROGRESS REPORTS (MARAD)(AUG 1991)

A monthly progress report is required and shall be prepared in 2 copies. As a minimum, the report will cover the following items:

(1) The work performed during the previous month.

(2) Significant findings, problems, delays, inclusions, events, and/or trends of the reporting period which result from or affect the performance of the contract.

(3) Detailed technical description of the work planned for the next reporting period.

(4) Specific action required by the Government to assist in the resolution of a problem or to effect the timely progression of the contract.

(5) An up-to-date schedule of the work performed and work to be performed on the contract. Two charts shall be presented; one reflecting planned expenditures of manhours; the other reflecting planned project accomplishments versus actual accomplishments in terms of time.

(6) The funds committed during the reporting period.

(7) A comparison of the actual and planned accumulated costs through the reporting period, and finally the actual costs versus the planned cost to date (from the beginning of the contract through the cost of the previous month). **See G.5**

## F.5 M1252.212-07 DELIVERABLE REPORTS (MARAD) (AUG 1991)

Reports called for hereunder shall be delivered in accordance with the following schedule: Work shall be delivered as required by the specific work order. Monthly reports are to be submitted to the Contracting Officer (MAR-380) and the Contracting Officer's Technical Representative (MAR-614).

## F.6 M1252.212-08 DELIVERY LOCATION (MARAD) (AUG 1991) ALTERNATE I (AUG 1991)

Unless otherwise stated in an individual work order, all deliverables are to be delivered to the COTR as stated in Section G.

## F.7 WORK ORDER PROCEDURES

(a) Authority to develop a statement of work is provided to the COTR in the Contracting officers Letter of Appointment. A draft Statement of Work (SOW) will be written as a technical directive, detailing the work to be accomplished, during a stated period of time, and deliverables desired and/or the results expected.

(b) The COTR may begin preliminary discussions with the contractor. These discussions should be informative in nature, pertaining to the technical aspects of the task and thereby providing the contractor with enough information in which to develop a cost estimate and finalize the SOW.

(c) The COTR will prepare a MA 949 in accordance with Maritime Administration Acquisition Procedures (MAAP), obtaining the required signatures of the Fund Control Officer; Requisitioner and Approving Officer prior to submission to the contracting officer. The contracting officer upon receipt of the signed finalized SOW with cost estimate and signed MA 949 will issue to the contractor a written work order.

(d) The Contractor shall perform work under this contract as specified in the written work orders issued by the Contracting Officer. A work order will be issued only after the COTR and the Program Manager, have agreed on the terms of the statement of work, and a written estimate is received by the Contracting Officer.

(e) The Contractor shall acknowledge receipt of each work order by returning to the Contracting Officer a signed copy of the task order within 7 calendar days after its receipt. The Contractor shall begin work immediately upon receipt of a work order. Upon completion of a task the contracting officer shall be notified in writing within 30 days. If additional time is required notify the contracting officer in writing.

(f) If the Contractor considers the estimated labor hours or specified work completion date to be unreasonable, the Contractor shall promptly notify the Ordering Officer and Contracting Officer in writing within 10 calendar days, stating why the estimated labor hours or specified completion date is considered unreasonable.

(g) Each delivery order will have a ceiling price, which the Contractor may not exceed. When the Contractor has reason to believe that the labor payment and support costs for the order, which will accrue in the next thirty (30) days, will bring total cost to over 85 percent of the ceiling price specified in the order, the Contractor shall notify the Ordering Officer.

(h) This clause does not change the requirements of clause 52.212-70 "Level of Effort--Cost Reimbursement Term Contract", nor the notification requirements of either clause 52.232-20 "Limitation of Cost" or clause 52.232-22 "Limitation of Funds".

(i) Work orders shall not change any terms or conditions of the contract. Where any language in the work assignment may suggest a change to the terms or conditions, the Contractor shall immediately notify the Contracting Officer.

## F.8 ENGLISH LANGUAGE REQUIREMENT OF TEAM LEADER

The Contractor's on-site team leader must be able to speak, read and write English for ease of communication with Government personnel.

## F.9 DELIVERIES

All transportation charges will be paid by the contractor. The articles to be furnished hereunder shall be delivered as follows:

Express Mail or Hand Carry to:

(Unless otherwise specified in the Work Orders)

Director, Division of Reserve Fleet
DOT/Maritime Administration (MAR-614)
400 Seventh Street, S.W.
Washington, DC 20590

Regular Mail:

DOT/Maritime Administration (MAR-614)
400 Seventh Street, S.W.
Washington, DC 20590

## F.10 GOVERNMENT FURNISHED INFORMATION/EQUIPMENT

The Government will furnish the hardware and software for the resident ECSMIS program and the Novell network, see attachment J.7. A listing of Government furnished hardware and software is discussed below, however hardware and software required for day-to day operations are the responsibility of the contractor. The Government will provide required:

a. Shipboard Allowance List (SAL) and/or Builders Allowance List (BAL) for each vessel if available.

b. Identification of "Mission Essential" Equipment, See Section J.

c. Identification of "Non-Mission Essential" Equipment, See Section J.

d. Instructions for "Machine Readable" formats for Tapes, Reports, Listings and SAL.

e. Unit of Issue Abbreviations (See Section J).

f. List of vessels for Validation and Inventory.

g. MARAD Master Equipment Index (See Section J).

h. Commercial and Government Entity (CAGE)H4-1 and H4-2 microfiche.

i. QA Procedures for HM&E Equipment (See Section J).

j. QA Procedures for spare part inventory (See Section J).

k. Contractor Validation/Inventory Team Work area i.e. the vessels crew lounge, vessel officer's lounge, vessels engineering office etc...

l. Locks and seals

m. Determination of ADP equipment being leased or procured, See attachment J.7, or it will be available prior to award.

## SECTION G - CONTRACT ADMINISTRATION DATA

### G.1 M1252.242-01 CONTRACTING OFFICER'S TECHNICAL REPRESENTATIVE (COTR) (MARAD) (AUG 1991)

a. The Contracting Officer's Technical Representative (COTR) is responsible for the technical aspects of the project and technical liaison with the Contractor. The COTR is also responsible for the final inspection and acceptance of all reports, and such other responsibilities as may be specified in the contract.

b. The COTR is not authorized to make any commitments or otherwise obligate the Government or authorize any changes which affect the contract price, terms or conditions. Any Contractor request for changes shall be referred to the Contracting Officer directly or through the COTR. No such changes shall be made without the expressed prior authorization of the Contracting Officer. The COTR may designate assistant COTR(s) to act for him by naming such assistant in writing and transmitting a copy of such designation through the Contracting Officer to the Contractor.

c. The COTR for this contract will be:

Richard Williams
MAR-614
Maritime Administration
400 Seventh Street, S.W.
Washington, D.C. 20590

The COTR may be changed by the Government at any time, but notification of the change, including the name and address of the successor COTR, will be promptly provided to the Contractor by the Contracting Officer in writing.

### G.2 M1252.242-02 ADDRESS OF CORRESPONDENCE (MARAD) (AUG 1991)

All correspondence except as otherwise specified shall be directed to the Contracting Officer at the following address:

Department of Transportation
Maritime Administration, MAR-380
Attn: Wayne A. Cutrell
400 Seventh Street, S.W., Room 7310
Washington, DC 20590

G.3 M1252.245-01 GOVERNMENT-FURNISHED PROPERTY (MARAD) (AUG 1991)

The Government will provide the following item(s) of Government property to the Contractor for use in the performance of this contract. This property shall be used and maintained by the Contractor in accordance with provisions of the "Government Property" clause. (See GFE, Attachment J.7)

G.4 M1252.245-02 CONTROL OF GOVERNMENT FURNISHED PROPERTY (MARAD) (AUG 1991)

Control of Government property shall be accomplished in accordance with the Government Property clause of this contract (See Section I) and Transportation Acquisition Regulations (TAR) 1245.5 "Management of Government Property in the Possession of Contractors". The designated Property Administrator for this contract is:

Patrick Carlton, MAR-614
DOT/Maritime Administration
(202) 366-5082

G.5 M1252.232-01 INVOICE REQUIREMENTS (MARAD) (AUG 1991)

(a) Invoices shall be submitted, semi-monthly, in an original and 3 copies to: U. S. Department of Transportation, Maritime Administration, Division of Accounting Operations MAR-333, Room 7322, 400 Seventh Street, S.W., Washington, DC 20590. To constitute a proper invoice, the invoice must include the following information and/or attached documentation:

(1) Name of the business concern and invoice date.

(2) Contract number, or other authorization for delivery of property or services.

(3) Description, price, and quantity of property and services actually delivered or rendered.

(4) Shipping and payment terms.

(5) Name (where practicable), title, phone number, and complete mailing address of responsible official to whom payment is to be sent.

(6) Other substantiating documentation or information as required by the contract.

a. Time Sheets for all personnel and totals.

b. Each invoice shall have attached a summary sheet which indicates the funded amount for each task order, current amount expended, cumulative billed to date, estimated cost, estimated cost to complete, percentage completed to funded amount and percentage completed to estimate.

c. Each invoice submitted must state the period of performance. Each invoice submitted must request payment for only those manhour or cost expenditures reflected in the monthly report for that period of performance. The invoicing period and the monthly expenditure report period must coincide. The aggregate totals invoiced for a specific period of time shall be identical to the information contained in the Monthly Manhour/Cost Expenditure Reports and reflect identical manhours and direct costs expended for the same period of time.

d. The information contained in the Monthly Manhour/Cost Reports shall be organized to permit the COTR to quickly and easily correlate the reported manhour and cost expenditure data with contractor invoices.

(7) The Government will pay the contractor in accordance with the required clause entitled "Allowable Cost and Payment" and "Award Fee".

(8) All invoices will be subject to audit by the cognizant Defense Contract Audit Agency (DCAA).

## G.6 PAYMENT OF PROVISIONAL AWARD FEE

The contractor's overall performance hereunder shall be evaluated every three months. The award fee will be based upon the fee allocation matrix developed by the Performance Evaluation Board (PEB). The award fee available will be for those tasks completed during the three month evaluation period. The maximum award fee under the performance period is 8%. Pending quarterly and or final award fee determinations of the amount of award fee earned, the Government shall make available for payment semi-monthly a provisional award fee of 4%, on all properly documented and accepted invoices by the Contracting Officer. Based on the criteria established by the PEB the Government will arrive at an actual evaluation of the award fee at the end of each quarter. In the event the award fee is in excess of the provisional fee (4%) the government will pay the contractor, once invoiced, the amount due. Should the award fee be less than the provisional fee, the contractor will credit

the Government the difference and subtract it from the next invoice. All sums of provisional payment made in accordance with this Article will be credited against the accumulative total of award fee available, to ensure the provisional award fee does not exceed the actual award fee available for the period(s).

G.7 **M1252.231-02 TRAVEL REQUIREMENTS (MARAD) (AUG 1991)**

Travel required by and performed by the Contractor in direct performance of this contract will be reimbursed on a reasonable, actual, allowable basis in accordance with the Federal Travel Regulations. Travel costs may include transportation, subsistence and lodging. The Contractor shall use only economy fare accommodations (coach or tourist) while performing travel under this contract, unless otherwise authorized.

All required travel will be identified within a general or specific work authorization issued by the COTR.

For travel performed on a cost reimbursable basis all costs documentation must accompany invoices for reimbursement.

G.8 **M1252.204-01 PREPARATION AND SUBMISSION OF CONTRACTOR'S CUMULATIVE AND RECONCILIATION STATEMENT (MARAD)(AUG 1991)**

The Contractor shall prepare and submit MARAD's Contractor's Cumulative and Reconciliation Statement (Form MA-979) for review and approval by the Contracting Officer. This form shall be submitted as part of the required documentation necessary for contract close-out and as a contract performance for final payment.

G.9 **M1252.231-04 USE OF CONTRACT AIR SERVICE UNDER COST-REIMBURSEMENT CONTRACT (MARAD)(AUG 1991)**

Cost-reimbursement Contractors are encouraged to use U.S. Government contracted air service city-pairs. Information on use of such service is contained in the Federal Travel Directory, to include listings of city-pairs contract airlines, carriers allowing use by cost-reimbursable Contractors, identification required and methods of payment. Particular note should be taken of the transportation guidelines section of the directory which explains the use of carriers offering lower fare rates on a promotional or transitory basis. Savings or other benefits accrue to the account of the Government; any special benefits offered as a discount

must be submitted to the Government when reimbursement is requested. An agency-provider letter of identification is available on request to the administrative contracting officer. The Federal Travel Directory is published monthly by GSA and is available from the Superintendent of Documents, U.S. Government Printing Office, Washington, D.C. 20402.

G.10 **M1252.232-28 METHOD OF PAYMENT (MARAD) (AUG 1991)**

(a) Payments under this contract will be made either by check or by wire transfer through the Treasury Financial Communications System at the option of the Government.

(b) The contractor shall forward the following information in writing to (U. S. Department of Transportation, Maritime Administration, Division of Accounting Operations, MAR-333, Room 7322, 400 Seventh Street, S.W., Washington, DC 20590) not later than 7 days after receipt of notice of award.

(1) Contract or Purchase Order Number

(2) Full name, title, phone number, company's IRS Taxpayer ID number, and complete mailing address of responsible official(s), (i) to whom checks are to be sent, and (ii) who may be contacted concerning the bank account information requested below.

(3) The following bank account information to accomplish wire transfers:

(i) Name, address, and telegraphic abbreviation of the receiving financial institution.

(ii) Receiving financial institution's 9-digit American Bankers Association (ABA) identifying number for routing transfer funds.

(iii) Recipient's name and account number at the receiving financial institution to be credited with the funds.

(iv) If the receiving financial institution does not have access to the Federal Reserve Communications System, provide the name of the correspondent financial institution through which the receiving financial institution receives electronic funds transfer messages. If a correspondent financial institution is specified, provide:

(a) Address and telegraphic abbreviation of the correspondent financial institution.

(b) The correspondent financial institution's 9-digit ABA identifying number for routing transfer of funds.

G.11 SUBMISSION OF INVOICES FOR PAYMENT OF AWARD FEE

Invoices for the payment of award fee shall be submitted independent of invoices for payment of labor and or cost. Award fee invoices shall set forth the amount of total fee awarded for the performance period evaluated and reference each prior invoice by number and amount and the amount invoiced for the provisional fee. In a clear and cohesive fashion indicate the difference between the provisional fee and the awarded fee resulting the a total amount due.

G.12 ADJUSTMENT OF POTENTIAL AWARD FEES

Prompt notification will be furnished to the contractor in the event of revisions to this contract, during its period of performance, that are of such magnitude that the Government determines an adjustment to the potential award fee pool is required. Promptly after receipt by the contractor of this notification of desired revisions to the award fee and provisions, the parties hereto shall enter into negotiations and such adjustments and revisions as may be subsequently agreed upon shall be evidenced by a supplemental agreement to this contract.

## SECTION H - SPECIAL CONTRACT REQUIREMENTS

### H.1 M1252.204-02 NONDISCLOSURE OF DATA AND INFORMATION (MARAD) (AUG 1991)

The Contractor, and any of its subcontractors in performance of this contract, may have need for access to and use of various types of data and information in the possession of the Government which the Government obtained under conditions which restrict the Government's right to use and disclose the data and information, or which may be of such a nature that its dissemination or use other than in the performance of this contract, would be adverse to the interests of the Government or other parties. Therefore, the Contractor and its subcontractors agree to abide by any restrictive use conditions on such data and not to:

(a) Knowingly disclose such data and information to others without written authorization from the Contracting Officer, unless the Government has made the date and information available to the public; and

(b) Use for any purpose other than the performance of the contract that data which bears a restrictive marking or legend.

Except as the Contracting Officer specifically authorizes in writing, upon completion of all work under this contract the Contractor shall return all such data and information, including all copies, modifications, adaptations, or combinations thereof, to the Contracting Officer. The Contractor shall further certify in writing to the Contracting Officer that all copies, modifications, adaptations or combinations of such data or information which cannot reasonably be returned to the Contracting Officer, have been deleted from the Contractor's (and any subcontractor's) records.

These restrictions do not limit the Contractor's or subcontractor's right to use and disclose any data and information obtained from another source without restriction.

As used herein, the term "data" has the meaning set forth in Department of Transportation Procurement Regulations, 48 CFR 1252.227-71, "Rights in Data - General", and includes, but is not limited to, computer software, as also defined in 48 CFR 1252.227-71.

## H.2 M1252.209-04 STANDARDS OF EMPLOYEE CONDUCT (MARAD) (AUG 1991)

The Contractor shall be responsible for maintaining satisfactory standards of employee competency, conduct and integrity, and shall be responsible for taking such disciplinary action with respect to its employees as may be necessary.

## H.3 M1252.209-05 CHANGE-OVER AGREEMENT (MARAD) (AUG 1991)

The Contractor recognizes that it may be replaced by a successor contractor in the performance of work of the kind and type provided herein. The Contractor agrees to use its best efforts to effect an orderly and efficient transition from the contractor to such successor contractor and its employees during a transition period to be specified by the Contracting Officer.

The Contractor also recognizes the importance to the Government of retention of personnel experienced in the work provided herein. Therefore, in the event that the Contractor is replaced in the performance of the work provided herein by a successor contractor, the Contractor agrees to cooperate in the releasing of any of its employees who desire to continue with such work.

The Contractor also recognizes that the ability to retain such experienced personnel on the work may be significantly enhanced if such personnel can remain without appreciable loss of earned fringe benefits to those previously mentioned. In this regard, the Contractor agrees to make available to the Government any and all records or other data which may be required to properly ascertain earned benefits of such employees and/or their relative position with the fringe benefits program of the Contractor.

## H.4 M1252.209-06 ORGANIZATIONAL CONFLICTS OF INTEREST (MARAD) (AUG 1991)

(a) The Contractor warrants that, to the best of the Contractor's knowledge and belief, there are no relevant facts or circumstances which could give rise to an organizational conflict of interest, as defined in FAR Subpart 9.5, or that the Contractor has disclosed all such relevant information.

(b) The Contractor agrees that if an actual or potential organizational conflict of interest is discovered after award, the Contractor will make a full disclosure in writing to the

Contracting Officer. This disclosure shall include a description of actions which the Contractor has taken or proposes to take, after consultation with the Contracting Officer, to avoid, mitigate, or neutralize the actual or potential conflict.

(c) Remedies - The Government may terminate this contract for convenience, in whole or in part, if it deems such termination necessary to avoid an organizational conflict of interest. If the Contractor was aware of a potential organizational conflict of interest prior to award or discovered an actual or potential conflict after award and did not disclose or misrepresented relevant information to the Contracting Officer, the Government may terminate the contract for default, debar the Contractor from Government contracting, or pursue such other remedies as may be permitted by law or this contract.

(d) The Contractor further agrees to insert provisions which shall conform substantially to the language of this clause, including this paragraph (d) in any subcontract or consultant agreement hereunder.

H.5 M1252.228-01 INDEMNITY AND INSURANCE (MARAD) (AUG 1991)

See Section I - Contract Clauses -Clause No. 52.228-5 - Insurance - Work On A Government Installation (Sep 1989)

The contractor shall indemnify and save and keep harmless the Government against any or all loss, cost, damage, claim, expense or liability whatsoever because of accident or injury to persons or property to others occurring in connection with the operations under this contract.

The contractor shall secure, pay the premiums for and keep in force until the expiration of this contract, and any renewal thereof, adequate insurance as provided below, such insurance to specifically include liability assumed by the contractor under this contract.

(a) Workman's compensation insurance as required by law of the State.

(b) Comprehensive bodily injury liability insurance with limits of not less than $500,000 for each accident.

(c) Property damage liability with a limit of not less than $100,000 for each accident.

(d) Automotive bodily injury liability insurance with limits of not less than $200,000 for

each person and $500,000 for each accident, and property damage liability insurance, with a limit of not less than $20,000 for each accident.

Each policy of insurance shall contain an endorsement that any cancellation or material change in the coverage adversely affecting the Government's interest shall not be effective unless the insurer or the Contractor gives written notice of cancellation or change as required by the Contracting Officer. When the coverage is provided by self-insurance, the Contractor shall not change or decrease the coverage without the Administrative Contracting Officer's prior approval (see 28.308 (c)).

A certificate of each policy of insurance shall be furnished to the Contracting Officer within ten (10) days after notice of award certifying, among other things, that the policy contains the aforesaid endorsement. The Insurance Companies providing the above insurance shall be satisfactory to the Government. Notices of policy changes shall be furnished to the Contracting Officer.

## H.6 M1252.215-01 KEY PERSONNEL (MARAD) (AUG 1991)

(a) The Contractor shall assign to this contract the following key personnel:

Channing E. Jones
Steve Murphy
Joseph E. Coneys
Donald Colley
John C. Spears

(b) During the first ninety (90) days of performance, the Contractor shall make no substitutions of key personnel unless the substitution is necessitated by illness, death, or termination of employment. The Contractor shall notify the Contracting Officer within 15 calendar days after the occurrence of any of these events and provide the information required by paragraph (c) below. After the initial 90-day period, the Contractor shall submit the information required by paragraph (c) to the Contracting Officer at least 15 days prior to making any permanent substitutions.

(c) The Contractor shall provide a detailed explanation of the circumstances necessitating the proposed substitutions, compete resumes for the proposed substitutes, and any additional information requested by the Contracting Officer. Proposed substitutes should have comparable qualifications to those of the persons being replaced. The Contracting Officer will notify the Contractor within 15 calendar days after receipt of all required information of the decision on substitutions. The contract will be modified to reflect any approved changes of key personnel.

(d) See also TAR clause 1252.215-71, Key Personnel and Facilities.

H.7 **M1252.223-02 SAFETY (MARAD) (AUG 1991)**

All contract or subcontractor personnel working at MARAD's National Defense Reserve Fleet (NDRF) work sites and onboard MARAD's outported ships shall follow safe work practices and abide by the NDRF's Safety and health rules, as applicable, in the performance of their duties.

H.8 **M1252.243-01 CONTRACT NOT AFFECTED BY ORAL AGREEMENT (MARAD) (AUG 1991)**

No oral agreement of any person shall modify or otherwise affect the Scope of Work or other terms and conditions, as herein stated. All modifications shall be in writing by the Contracting Officer.

H.9 **DUPLICATION OF EFFORT (MARAD) (AUG 1991)**

The Contractor hereby certifies that cost for work to be performed under this contract and any subcontract hereunder are not duplicative of any costs charged against any other Government contract, subcontract, or other Government source. The contractor will include the provisions of this paragraph in every subcontract issued hereunder which exceeds $2,500. The contractor agrees to advise the Contracting Officer, in writing, of any other Government contract or subcontract it has performed or is performing which involves work directly related to the purpose of this contract.

H.10 **SPECIAL CONTRACT REQUIREMENTS (MARAD) (AUG 1991)**

Until such time as this contract is fully funded, clause 52.232-20 "Limitation of Cost" shall be ineffective and clause 52.232-22, "Limitation of Funds" shall apply. At such time as this contract is fully funded, said clause 52.232-20 shall become fully effective and applicable in lieu of clause 52.232.22.

H.11 **SUPERVISION (MARAD) (AUG 1991)**

The contractor shall provide at all times the quantity and quality of supervision necessary for the effective and efficient management of the operation. All supervisors shall have an

intimate knowledge of the various tasks, equipment and materials so as to be able to properly train and direct the workers in their individual tasks and to maintain and control an effective operation.

H.12 **WAGE DETERMINATION**

A wage determination from the U.S. Department of Labor has been received and a copy provided under this solicitation and shall be incorporated into this contract.

H.13 **INCREMENTAL FUNDING OF TASK ORDERS**

It may be necessary for the Government to issue Task Orders not fully funded at the time of award (eg. Task Orders that cross fiscal years). These orders will be issued with the following clause:

"The total amount of this task order is (Insert Amount), however, only (Insert Amount) is funded with this task order and work is only authorized until (Insert Date). If and when funds are available they shall be added to this task order by unilateral action of the Government. The contractor is notified that the Government is not obligated to reimburse for costs exceeding the funds obligated in this order and the contractor exceeds the ceiling at his own risk. The task order incorporates by reference the clause LIMITATION OF FUNDS (APR 1984) - FAR 52.232-22 which replaces the LIMITATION OF COST (APR 1984) - FAR 52.232-20. This clause applies to the task order amount."

H.14 **PERMIT AND WAIVER FORMS**

Prior to access on any vessel, each of the contractor's personnel who require access to the vessel shall sign the appropriate permit and waiver forms provided by MARAR.

H.15 **FAR 52.237-3 CONTINUITY OF SERVICES (JAN 1991)**

(a) The Contractor recognizes that the services under this contract are vital to the Government and must be continued without interruption and that, upon contract expiration, a successor, either the Government or another contractor, may continue them. The Contractor agrees to (1) furnish phase-in training and (2) exercise its best efforts and cooperation to effect an orderly and efficient transition to a successor.

(b) The Contractor shall, upon the Contracting Officer's written notice, (1) furnish phase-in, phase-out services for up to 90 days after this contract expires and (2) negotiate in

good faith a plan with a successor to determine the nature and extent of phase-in, phase-out services required. The plan shall specify a training program and a date for transferring responsibilities for each division of work described in the plan, and shall be subject to the Contracting Officer's approval. The Contractor shall provide sufficient experienced personnel during the phase-in, phase-out period to ensure that the services called for by this contract are maintained at the required level of proficiency.

(c) The Contractor shall allow as many personnel as practicable to remain on the job to help the successor maintain the continuity and consistency of the services required by this contract. The Contractor also shall disclose necessary personnel records and allow the successor to conduct onsite interviews with these employees. If selected employees are agreeable to the change, the Contractor shall release them at a mutually agreeable date and negotiate transfer of their earned fringe benefits to the successor.

(d) The Contractor shall be reimbursed for all reasonable phase-in, phase-out costs (i.e., cost incurred within the agreed period after contract expiration that results from phase-in, phase-out operations) and a fee (profit) not to exceed a pro rata portion of the fee (profit) under this contract.

H.16 **PHASE-IN/PHASE-OUT TRANSITION**

(1) After selection by the Government of any successor contractor, the contractor and such successor contractor shall jointly prepare mutual detailed plans for phase-out and phase-in operations. Such plans should specify a training and orientation program for the successor contractor to cover each phase of the scope of work covered by the contract.

A proposed date by which the successor contractor shall assume full responsibility for such work shall be established. The contractor shall assume full responsibility for such work until assumption thereof by the successor contractor. Execution of the proposed plan or any part thereof shall be accomplished in accordance with the Contracting Officer's direction and approval.

(2) The contractor shall be reimbursed for all reasonable phase-in and phase-out costs, i.e., costs incurred within the agreed period after contract expiration that result from phase-in, phase-out operations.

(3) The contractor shall provide in all subcontracts a clause permitting such subcontracts to be assigned to a successor contractor at the expiration of this contract term or earlier termination thereof.

## SECTION I - CONTRACT CLAUSES

### I.1 52.252-2 CLAUSES INCORPORATED BY REFERENCE. (JUN 1988)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

I. FEDERAL ACQUISITION REGULATION (48 CFR CHAPTER 1)

| NUMBER | TITLE | DATE |
|---|---|---|
| 52.202-1 | DEFINITIONS | SEP 1991 |
| 52.203-1 | OFFICIALS NOT TO BENEFIT | APR 1984 |
| 52.203-3 | GRATUITIES | APR 1984 |
| 52.203-5 | COVENANT AGAINST CONTINGENT FEES | APR 1984 |
| 52.203-6 | RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT | JUL 1985 |
| 52.203-7 | ANTI-KICKBACK PROCEDURES | OCT 1988 |
| 52.203-10 | PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY | SEP 1990 |
| 52.203-11 | CERTIFICATION AND DISCLOSURE REGARDING PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS | APR 1991 |
| 52.203-12 | LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS | JAN 1990 |
| 52.204-2 | SECURITY REQUIREMENTS | APR 1984 |
| 52.209-6 | PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT | NOV 1992 |
| 52.215-1 | EXAMINATION OF RECORDS BY COMPTROLLER GENERAL | FEB 1993 |
| 52.215-2 | AUDIT - NEGOTIATION | FEB 1993 |
| 52.215-22 | PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA | JAN 1991 |
| 52.215-24 | SUBCONTRACTOR COST OR PRICING DATA | DEC1991 |
| 52.215-30 | FACILITIES CAPITAL COST OF MONEY | SEP 1987 |
| 52.215-31 | WAIVER OF FACILITIES CAPITAL COST OF MONEY | SEP 1987 |

Contract No. DTMA91-95-C-00024

| | | |
|---|---|---|
| 52.215-33 | ORDER OF PRECEDENCE | JAN 1986 |
| 52.216-7 | ALLOWABLE COST AND PAYMENT | JUL 1991 |
| 52.219-8 | UTILIZATION OF SMALL BUSINESS CONCERNS AND SMALL DISADVANTAGED BUSINESS CONCERNS | FEB 1990 |
| 52.219-11 | SPECIAL 8(a) CONDITIONS<br>(c) Maritime Administration (MARAD), MARAD<br>(d) MARAD (f) MARAD | FEB 1990 |
| 52.219-12 | SPECIAL 8(a) SUBCONTRACT<br>(a) Contract No.____________ with MARAD<br>(b) [Shepard Patterson]<br>(b)(1) [DTMA91-95-C-00024]<br>(b)(2) MARAD (b)(3) MARAD (b)(4) MARAD<br>(c) MARAD | FEB 1990 |
| 52.219-13 | UTILIZATION OF WOMEN-OWNED SMALL BUSINESSES | AUG 1986 |
| 52.219-14 | LIMITATIONS ON SUBCONTRACTING | JAN 1991 |
| 52.220-3 | UTILIZATION OF LABOR SURPLUS AREA CONCERNS | APR 1984 |
| 52.220-4 | LABOR SURPLUS AREA SUBCONTRACTING PROGRAM | APR 1984 |
| 52.222-2 | PAYMENT OF OVERTIME PREMIUMS | JUL 1990 |

(a) The use of overtime is authorized under this contract if the overtime premium does not exceed (Amount authorized by individual work authorization)

| | | |
|---|---|---|
| 52.222-3 | CONVICT LABOR | APR 1984 |
| 52.222-26 | EQUAL OPPORTUNITY | APR 1984 |
| 52.222-28 | EQUAL OPPORTUNITY PREAWARD CLEARANCE OF SUBCONTRACTS | APR 1984 |
| 52.222-35 | AFFIRMATIVE ACTION FOR SPECIAL DISABLED AND VIETNAM ERA VETERANS | APR 1984 |
| 52.222-36 | AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS | APR 1984 |
| 52.222-37 | EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA | JAN 1988 |
| 52.223-2 | CLEAN AIR AND WATER | APR 1984 |
| 52.223-6 | DRUG-FREE WORKPLACE | JUL 1990 |
| 52.224-1 | PRIVACY ACT NOTIFICATION | APR 1984 |
| 52.224-2 | PRIVACY ACT | APR 1984 |
| 52.225-11 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES | MAY 1992 |

| | | |
|---|---|---|
| 52.227-2 | NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT | APR 1984 |
| 52.227-3 | PATENT INDEMNITY | APR 1984 |
| 52.227-14 | RIGHTS IN DATA - GENERAL | JUN 1987 |
| 52.227-16 | ADDITIONAL DATA REQUIREMENTS | JUN 1987 |
| 52.228-7 | INSURANCE - LIABILITY TO THIRD PERSONS | APR 1984 |
| 52.232-9 | LIMITATION ON WITHHOLDING OF PAYMENTS | APR 1984 |
| 52.232-17 | INTEREST | JAN 1991 |
| 52.232-18 | AVAILABILITY OF FUNDS | APR 1984 |
| 52.232-20 | LIMITATION OF COST<br>(a) Substitute "work authorization" for "Schedule" wherever the word appears | APR 1984 |
| 52.232-22 | LIMITATION OF FUNDS | APR 1984 |
| 52.232-23 | ASSIGNMENT OF CLAIMS | JAN 1986 |
| 52.232-25 | PROMPT PAYMENT<br>(b)(2) 30th | MAR 1994 |
| 52.232-28 | ELECTRONIC FUNDS TRANSFER PAYMENT METHODS | APR 1989 |
| 52.233-1 | DISPUTES<br>-- ALTERNATE I DEC 1991 | DEC 1991 |
| 52.233-3 | PROTEST AFTER AWARD<br>-- ALTERNATE I (JUN 1985) | AUG 1989 |
| 52.237-2 | PROTECTION OF GOVERNMENT BUILDINGS EQUIPMENT, AND VEGETATION. | APR1984 |
| 52.237-3 | CONTINUITY OF SERVICES | JAN 1991 |
| 52.242-1 | NOTICE OF INTENT TO DISALLOW COSTS | APR 1984 |
| 52.242-13 | BANKRUPTCY | APR 1991 |
| 52.243-2 | CHANGES - COST-REIMBURSEMENT<br>-- ALTERNATE I (APR 1984) | AUG 1987 |
| 52.244-2 | SUBCONTRACTS (COST-REIMBURSEMENT AND LETTER CONTRACTS.) | JUL 1985 |
| 52.244-5 | COMPETITION IN SUBCONTRACTING | APR 1984 |
| 52.245-5 | GOVERNMENT PROPERTY (COST-REIMBURSEMENT, TIME-AND-MATERIAL, OR LABOR-HOUR CONTRACTS) | JAN 1986 |
| 52.248-1 | VALUE ENGINEERING | MAY 1989 |
| 52.249-6 | TERMINATION (COST-REIMBURSEMENT) | MAY 1986 |
| 52.249-14 | EXCUSABLE DELAYS | APR 1984 |
| 52.253-1 | COMPUTER GENERATED FORMS | JAN 1991 |

II. TRANSPORTATION ACQUISITION REGULATION (48 CFR CHAPTER 12) CLAUSES

1252.212-71 NOTICE OF DELAY APR 1984

**I.2 52.203-9 REQUIREMENT FOR CERTIFICATE OF PROCUREMENT INTEGRITY-MODIFICATION. (NOV 1990)**

(a) Definitions. The definitions set forth in FAR 3.104-4 are hereby incorporated in this clause.

(b) The Contractor agrees that it will execute the certification set forth in paragraph (c) of this clause when requested by the Contracting Officer in connection with the execution of any modification of this contract.

(c) Certification. As required in paragraph (b) of this clause, the officer or employee responsible for the modification proposal shall execute the following certification:

CERTIFICATE OF PROCUREMENT INTEGRITY-MODIFICATION (NOV 1990)

(1) I, ______________________________ (Name of certifier) am the officer or employee responsible for the preparation of this modification proposal and hereby certify that, to the best of my knowledge and belief, with the exception of any information described in this certification, I have no information concerning a violation or possible violation of subsection 27(a), (b), (d), or (f) of the Office of Federal Procurement Policy Act, as amended* (41 U.S.C. 423), (hereinafter referred to as "the Act"), as implemented in the FAR, occurring during the conduct of this procurement ______________ ________ (contract and modification number).

(2) As required by subsection 27(e)(1)(B) of the Act, I further certify that to the best of my knowledge and belief, each officer, employee, agent, representative, and consultant of ______________________ (Name of Offeror) who has participated personally and substantially in the preparation or submission of this proposal has certified that he or she is familiar with, and will comply with, the requirements of subsection 27(a) of the Act, as implemented in the FAR, and will report immediately to me any information concerning a violation or possible violation of subsections 27(a), (b), (d), or (f) of the Act, as implemented in the FAR, pertaining to this procurement.

(3) Violations or possible violations: (Continue on plain bond paper if necessary and label Certificate of Procurement Integrity-Modification (Continuation Sheet), ENTER NONE IF NONE EXISTS)

_______________________________________________

_______________________________________________

_______________________________________________

_______________________________________________

(Signature of the officer or employee responsible for the modification proposal and date)

_______________________________________________

(Typed name of the officer or employee responsible for the modification proposal)

* Subsections 27 (a), (b), and (d) are effective on December 1, 1990. Subsection 27(f) is effective on June 1, 1991.

THIS CERTIFICATION CONCERNS A MATTER WITHIN THE JURISDICTION OF AN AGENCY OF THE UNITED STATES AND THE MAKING OF A FALSE, FICTITIOUS, OR FRAUDULENT CERTIFICATION MAY RENDER THE MAKER SUBJECT TO PROSECUTION UNDER TITLE 18, UNITED STATES CODE, SECTION 1001.

(End of certification)

(d) In making the certification in paragraph (2) of the certificate, the officer or employee of the competing Contractor responsible for the offer or bid, may rely upon a one-time certification from each individual required to submit a certification to the competing Contractor, supplemented by periodic training. These certifications shall be obtained at the earliest possible date after an individual required to certify begins employment or association with the contractor. If a contractor decides to rely on a certification executed prior to the suspension of section 27 (i.e., prior to December 1, 1989), the Contractor shall ensure that an individual who has so certified is notified that section 27 has been reinstated. These certifications shall be maintained by the Contractor for a period of 6 years from the date a certifying employee's employment with the company ends or, for an agency, representative, or consultant, 6 years from the date such individual ceases to act on behalf of the contractor.

(e) The certification required by paragraph (c) of this clause is a material representation of fact upon which reliance will be placed in executing this modification.

**I.3 52.219-17 SECTION 8(A) AWARD. (FEB 1990)**

(a) By execution of a contract, the Small Business Administration (SBA) agrees to the following:

(1) To furnish the supplies or services set forth in the contract according to the specifications and the terms and conditions by subcontracting with the Offeror who has been determined an eligible concern pursuant to the provisions of section 8(a) of the Small Business Act, as amended (15 U.S.C. 637(a)).

(2) Except for novation agreements and advance payments, delegates to the MARAD the responsibility for administering the contract with complete authority to take any action on behalf of the Government under the terms and conditions of the contract; provided, however that the contracting agency shall give advance notice to the SBA before it issues a final notice terminating the right of the subcontractor to proceed with further performance, either in whole or in part, under the contract.

(3) That payments to be made under the contract will be made directly to the subcontractor by the contracting activity.

(4) To notify the MARAD Contracting Officer immediately upon notification by the subcontractor that the owner or owners upon whom 8(a) eligibility was based plan to relinquish ownership or control of the concern.

(b) The offeror/subcontractor agrees and acknowledges that it will, for and on behalf of the SBA, fulfill and perform all of the requirements of the contract.

**I.4 52.219-18 NOTIFICATION OF COMPETITION LIMITED TO ELIGIBLE 8(A) CONCERNS. (FEB 1990)**

(a) Offers are solicited only from small business concerns expressly certified by the Small Business Administration (SBA) for participation in the SBA's 8(a) Program and which meet the following criteria at the time of submission of offer -

(1) SIC code 7376 is specifically included in the Offeror's approved business plan;

(2) The Offeror is in conformance with the 8(a) support limitation set forth in its approved business plan; and

(3) The Offeror is in conformance with the Business Activity Targets set forth in its approved business plan or any remedial action directed by the SBA.

(b) By submission of its offer, the Offeror certifies that it meets all of the criteria set forth in paragraph (a) of this clause.

(c) Any award resulting from this solicitation will be made to the Small Business Administration, which will subcontract performance to the successful 8(a) offeror selected through the evaluation criteria set forth in this solicitation.

(d)(1) Agreement. A manufacturer or regular dealer submitting an offer in its own name agrees to furnish, in performing the contract, only end items manufactured or produced by small business concerns inside the United States, its territories or possessions, the Commonwealth of Puerto Rico, or the Trust Territory of the Pacific Islands. However, this requirement does not apply in connection with construction or service contracts.

(2) The contractor, Shepard Patterson will notify the MARAD Contracting Officer in writing immediately upon entering an agreement (either oral or written) to transfer all or part of its stock or other ownership interest to any other party.

**I.5 52.220-1 PREFERENCE FOR LABOR SURPLUS AREA CONCERNS. (APR 1984)**

(a) This acquisition is not a set aside for labor surplus area (LSA) concerns. However, the offeror's status as such a concern may affect (1) entitlement to award in case of tie offers or (2) offer evaluation in accordance with the Buy American Act clause of this solicitation. In order to determine whether the offeror is entitled to a preference under (1) or (2) above, the offeror must identify, below, the LSA in which the costs to be incurred on account of manufacturing or production (by the offeror or the first-tier subcontractors) amount to more than 50 percent of the contract price.

________________________________________

________________________________________

(b) Failure to identify the locations as specified above will preclude consideration of the offeror as an LSA concern. If the offeror is awarded a contract as an LSA concern and would not have otherwise qualified for award, the offeror shall perform the contract or cause the contract to be performed in accordance with the obligations of an LSA concern.

**I.6 52.222-41 SERVICE CONTRACT ACT OF 1965, AS AMENDED. (MAY 1989)**

(a) Definitions. "Act," as used in this clause, means the Service Contract Act of 1965, as amended (41 U.S.C. 351, et seq.).

"Contractor," as used in this clause or in any subcontract, shall be deemed to refer to the subcontractor, except in the term Government Prime Contractor.

"Service employee," as used in this clause, means any person engaged in the performance of this contract other than any person employed in a bona fide executive, administrative, or professional capacity, as these terms are defined in part 541 of title 29, Code of Federal Regulations, as revised. It includes all such persons regardless of any contractual relationship that may be alleged to exist between a Contractor or subcontractor and such persons.

(b) Applicability. This contract is subject to the following provisions and to all other applicable provisions of the Act and regulations of the Secretary of Labor (29 CFR part 4). This clause does not apply to contracts or subcontracts administratively exempted by the Secretary of Labor or exempted by 41 U.S.C. 356, as interpreted in subpart C of 29 CFR part 4.

(c) Compensation. (1) Each service employee employed in the performance of this contract by the Contractor or any subcontractor shall be paid not less than the minimum monetary wages and shall be furnished fringe benefits in accordance with the wages and fringe benefits determined by the Secretary of Labor, or authorized representative, as specified in any wage determination attached to this contract.

(2)(i) If a wage determination is attached to this contract, the Contractor shall classify any class of service employee which is not listed therein and which is to be employed under the contract (i.e., the work to be performed is not performed by any classification listed in the wage determination) so as to provide a reasonable relationship (i.e., appropriate level of skill comparison) between such unlisted classifications and the classifications listed in the wage determination. Such conformed class of employees shall be paid the monetary wages and furnished the fringe benefits as are determined pursuant to the procedures in this paragraph (c).

(ii) This conforming procedure shall be initiated by the Contractor prior to the performance of contract work by the unlisted class of employee. The Contractor shall submit Standard Form (SF) 1444, Request for Authorization of Additional Classification and Rate, to the Contracting Officer no later than 30 days after the unlisted class of employee performs any contract work. The Contracting Officer shall

review the proposed classification and rate and promptly submit the completed SF 1444 (which must include information regarding the agreement or disagreement of the employees' authorized representatives or the employees themselves together with the agency recommendation), and all pertinent information to the Wage and Hour Division, Employment Standards Administration U.S. Department of Labor. The Wage and Hour Division will approve, modify, or disapprove the action or render a final determination in the event of disagreement within 30 days of receipt or will notify the Contracting Officer within 30 days of receipt that additional time is necessary.

(iii) The final determination of the conformance action by the Wage and Hour Division shall be transmitted to the Contracting Officer who shall promptly notify the Contractor of the action taken. Each affected employee shall be furnished by the Contractor with a written copy of such determination or it shall be posted as a part of the wage determination.

(iv)(A) The process of establishing wage and fringe benefit rates that bear a reasonable relationship to those listed in a wage determination cannot be reduced to any single formula. The approach used may vary from wage determination to wage determination depending on the circumstances. Standard wage and salary administration practices which rank various job classifications by pay grade pursuant to point schemes or other job factors may, for example, be relied upon. Guidance may also be obtained from the way different jobs are rated under Federal pay systems (Federal Wage Board Pay System and the General Schedule) or from other wage determinations issued in the same locality. Basic to the establishment of any conformable wage rate(s) is the concept that a pay relationship should be maintained between job classifications based on the skill required and the duties performed.

(B) In the case of a contract modification, an exercise of an option, or extension of an existing contract, or in any other case where a Contractor succeeds a contract under which the classification in question was previously conformed pursuant to paragraph (c) of this clause, a new conformed wage rate and fringe benefits may be assigned to the conformed classification by indexing (i.e., adjusting) the previous conformed rate and fringe benefits by an amount equal to the average (mean) percentage increase (or decrease, where appropriate) between the wages and fringe benefits specified for all classifications to be used on the contract which are listed in the current wage determination, and those specified for the corresponding classifications in the previously applicable wage determination. Where conforming actions are accomplished in accordance with this paragraph prior to the performance of contract work by the unlisted class of employees, the Contractor shall advise the Contracting Officer of the action taken but the other procedures in subdivision (c)(2)(ii) of this clause need not be followed.

(C) No employee engaged in performing work on this contract shall in any event be paid less than the currently applicable minimum wage specified under section 6(a)(1) of the Fair Labor Standards Act of 1938, as amended.

(v) The wage rate and fringe benefits finally determined under this subparagraph (c)(2) of this clause shall be paid to all employees performing in the classification from the first day on which contract work is performed by them in the classification. Failure to pay the unlisted employees the compensation agreed upon by the interested parties and/or finally determined by the Wage and Hour Division retroactive to the date such class of employees commenced contract work shall be a violation of the Act and this contract.

(vi) Upon discovery of failure to comply with subparagraph (c)(2) of this clause, the Wage and Hour Division shall make a final determination of conformed classification, wage rate, and/or fringe benefits which shall be retroactive to the date such class or classes of employees commenced contract work.

(3) Adjustment of Compensation. If the term of this contract is more than 1 year, the minimum monetary wages and fringe benefits required to be paid or furnished thereunder to service employees under this contract shall be subject to adjustment after 1 year and not less often than once every 2 years, under wage determinations issued by the Wage and Hour Division.

(d) Obligation to Furnish Fringe Benefits. The Contractor or subcontractor may discharge the obligation to furnish fringe benefits specified in the attachment or determined under subparagraph (c)(2) of this clause by furnishing equivalent combinations of bona fide fringe benefits, or by making equivalent or differential cash payments, only in accordance with subpart D of 29 CFR part 4.

(e) Minimum Wage. In the absence of a minimum wage attachment for this contract, neither the Contractor nor any subcontractor under this contract shall pay any person performing work under this contract (regardless of whether the person is a service employee) less than the minimum wage specified by section 6(a)(1) of the Fair Labor Standards Act of 1938. Nothing in this clause shall relieve the Contractor or any subcontractor of any other obligation under law or contract for payment of a higher wage to any employee.

(f) Successor Contracts. If this contract succeeds a contract subject to the Act under which substantially the same services were furnished in the same locality and service employees were paid wages and fringe benefits provided for in a collective bargaining agreement, in the absence of the minimum wage attachment for this contract setting forth such collectively bargained wage rates and fringe benefits, neither the

Contractor nor any subcontractor under this contract shall pay any service employee performing any of the contract work (regardless of whether or not such employee was employed under the predecessor contract), less than the wages and fringe benefits provided for in such collective bargaining agreement, to which such employee would have been entitled if employed under the predecessor contract, including accrued wages and fringe benefits and any prospective increases in wages and fringe benefits provided for under such agreement. No Contractor or subcontractor under this contract may be relieved of the foregoing obligation unless the limitations of 29 CFR 4.1b(b) apply or unless the Secretary of Labor or the Secretary's authorized representative finds, after a hearing as provided in 29 CFR 4.10 that the wages and/or fringe benefits provided for in such agreement are substantially at variance with those which prevail for services of a character similar in the locality, or determines, as provided in 29 CFR 4.11, that the collective bargaining agreement applicable to service employees employed under the predecessor contract was not entered into as a result of arm's length negotiations. Where it is found in accordance with the review procedures provided in 29 CFR 4.10 and/or 4.11 and parts 6 and 8 that some or all of the wages and/or fringe benefits contained in a predecessor Contractor's collective bargaining agreement are substantially at variance with those which prevail for services of a character similar in the locality, and/or that the collective bargaining agreement applicable to service employees employed under the predecessor contract was not entered into as a result of arm's length negotiations, the Department will issue a new or revised wage determination setting forth the applicable wage rates and fringe benefits. Such determination shall be made part of the contract or subcontract, in accordance with the decision of the Administrator, the Administrative Law Judge, or the Board of Service Contract Appeals, as the case may be, irrespective of whether such issuance occurs prior to or after the award of a contract or subcontract (53 Comp. Gen. 401 (1973)). In the case of a wage determination issued solely as a result of a finding of substantial variance, such determination shall be effective as of the date of the final administrative decision.

(g) Notification to Employees. The Contractor and any subcontractor under this contract shall notify each service employee commencing work on this contract of the minimum monetary wage and any fringe benefits required to be paid pursuant to this contract, or shall post the wage determination attached to this contract. The poster provided by the Department of Labor (Publication WH 1313) shall be posted in a prominent and accessible place at the worksite. Failure to comply with this requirement is a violation of section 2(a)(4) of the Act and of this contract.

(h) Safe and Sanitary Working Conditions. The Contractor or subcontractor shall not permit any part of the services called for by this contract to be performed in buildings or surroundings or under working conditions provided by or under the control or supervision of the Contractor or subcontractor which are unsanitary, hazardous, or

dangerous to the health or safety of the service employees. The Contractor or subcontractor shall comply with the safety and health standards applied under 29 CFR part 1925.

(i) Records. (1) The Contractor and each subcontractor performing work subject to the Act shall make and maintain for 3 years from the completion of the work, and make them available for inspection and transcription by authorized representatives of the Wage and Hour Division, Employment Standards Administration, a record of the following:

(i) For each employee subject to the Act -

(A) Name and address and social security number;

(B) Correct work classification or classifications, rate or rates of monetary wages paid and fringe benefits provided, rate or rates of payments in lieu of fringe benefits, and total daily and weekly compensation;

(C) Daily and weekly hours worked by each employee; and

(D) Any deductions, rebates, or refunds from the total daily or weekly compensation of each employee.

(ii) For those classes of service employees not included in any wage determination attached to this contract, wage rates or fringe benefits determined by the interested parties or by the Administrator or authorized representative under the terms of paragraph (c) of this clause. A copy of the report required by subdivision (c)(2)(ii) of this clause will fulfill this requirement.

(iii) Any list of the predecessor Contractor's employees which had been furnished to the Contractor as prescribed by paragraph (n) of this clause.

(2) The Contractor shall also make available a copy of this contract for inspection or transcription by authorized representatives of the Wage and Hour Division.

(3) Failure to make and maintain or to make available these records for inspection and transcription shall be a violation of the regulations and this contract, and in the case of failure to produce these records, the Contracting Officer, upon direction of the Department of Labor and notification to the Contractor, shall take action to cause suspension of any further payment or advance of funds until the violation ceases.

(4) The Contractor shall permit authorized representatives of the Wage and Hour

Division to conduct interviews with employees at the worksite during normal working hours.

(j) Pay Periods. The Contractor shall unconditionally pay to each employee subject to the Act all wages due free and clear and without subsequent deduction (except as otherwise provided by law or Regulations, 29 CFR part 4), rebate, or kickback on any account. These payments shall be made no later than one pay period following the end of the regular pay period in which the wages were earned or accrued. A pay period under this Act may not be of any duration longer than semi-monthly.

(k) Withholding of Payments and Termination of Contract. The Contracting Officer shall withhold or cause to be withheld from the Government Prime Contractor under this or any other Government contract with the Prime Contractor such sums as an appropriate official of the Department of Labor requests or such sums as the Contracting Officer decides may be necessary to pay underpaid employees employed by the Contractor or subcontractor. In the event of failure to pay any employees subject to the Act all or part of the wages or fringe benefits due under the Act, the Contracting Officer may, after authorization or by direction of the Department of Labor and written notification to the Contractor, take action to cause suspension of any further payment or advance of funds until such violations have ceased. Additionally, any failure to comply with the requirements of this clause may be grounds for termination of the right to proceed with the contract work. In such event, the Government may enter into other contracts or arrangements for completion of the work, charging the Contractor in default with any additional cost.

(l) Subcontracts. The Contractor agrees to insert this clause in all subcontracts subject to the Act.

(m) Collective Bargaining Agreements Applicable to Service Employees. If wages to be paid or fringe benefits to be furnished any service employees employed by the Government Prime Contractor or any subcontractor under the contract are provided for in a collective bargaining agreement which is or will be effective during any period in which the contract is being performed, the Government Prime Contractor shall report such fact to the Contracting Officer, together with full information as to the application and accrual of such wages and fringe benefits, including any prospective increases, to service employees engaged in work on the contract, and a copy of the collective bargaining agreement. Such report shall be made upon commencing performance of the contract, in the case of collective bargaining agreements effective at such time, and in the case of such agreements or provisions or amendments thereof effective at a later time during the period of contract performance such agreements shall be reported promptly after negotiation thereof.

(n) Seniority List. Not less than 10 days prior to completion of any contract being performed at a Federal facility where service employees may be retained in the performance of the succeeding contract and subject to a wage determination which contains vacation or other benefit provisions based upon length of service with a Contractor (predecessor) or successor (29 CFR 4.173), the incumbent Prime Contractor shall furnish the Contracting Officer a certified list of the names, of all service employees on the Contractor's or subcontractor's payroll during the last month of contract performance. Such list shall also contain anniversary dates of employment on the contract either with the current or predecessor Contractors of each such service employee. The Contracting Officer shall turn over such list to the successor Contractor at the commencement of the succeeding contract.

(o) Rulings and Interpretations. Rulings and interpretations of the Act are contained in Regulations, 29 CFR part 4.

(p) Contractor's Certification. (1) By entering into this contract, the Contractor (and officials thereof) certifies that neither it (nor he or she) nor any person or firm who has a substantial interest in the Contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of the sanctions imposed under section 5 of the Act.

(2) No part of this contract shall be subcontracted to any person or firm ineligible for award of a Government contract under section 5 of the Act.

(3) The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001.

(q) Variations, Tolerances, and Exemptions Involving Employment. Notwithstanding any of the provisions in paragraphs (b) through (o) of this clause, the following employees may be employed in accordance with the following variations, tolerances, and exemptions, which the Secretary of Labor, pursuant to section 4(b) of the Act prior to its amendment by Pub. L. 92-473, found to be necessary and proper in the public interest or to avoid serious impairment of the conduct of Government business.

(1) Apprentices, student-learners, and workers whose earning capacity is impaired by age, physical or mental deficiency or injury may be employed at wages lower than the minimum wages otherwise required by section 2(a)(1) or 2(b)(1) of the Act without diminishing any fringe benefits or cash payments in lieu thereof required under section 2(a)(2) of the Act, in accordance with the conditions and procedures prescribed for the employment of apprentices, student-learners, handicapped persons, and handicapped clients of sheltered workshops under section 14 of the Fair Labor

Standards Act of 1938, in the regulations issued by the Administrator (29 CFR parts 520, 521, 524, and 525).

(2) The Administrator will issue certificates under the Act for the employment of apprentices, student-learners, handicapped persons, or handicapped clients of sheltered workshops not subject to the Fair Labor Standards Act of 1938, or subject to different minimum rates of pay under the two acts, authorizing appropriate rates of minimum wages (but without changing requirements concerning fringe benefits or supplementary cash payments in lieu thereof), applying procedures prescribed by the applicable regulations issued under the Fair Labor Standards Act of 1938 (29 CFR parts 520, 521, 524, and 525).

(3) The Administrator will also withdraw, annul, or cancel such certificates in accordance with the regulations in 29 CFR parts 525 and 528.

(r) Apprentices. Apprentices will be permitted to work at less than the predetermined rate for the work they perform when they are employed and individually registered in a bona fide apprenticeship program registered with a State Apprenticeship Agency which is recognized by the U.S. Department of Labor, or if no such recognized agency exists in a State, under a program registered with the Bureau of Apprenticeship and Training, Employment and Training Administration, U.S. Department of Labor. Any employee who is not registered as an apprentice in an approved program shall be paid the wage rate and fringe benefits contained in the applicable wage determination for the journeyman classification of work actually performed. The wage rates paid apprentices shall not be less than the wage rate for their level of progress set forth in the registered program, expressed as the appropriate percentage of the journeyman's rate contained in the applicable wage determination. The allowable ratio of apprentices to journeymen employed on the contract work in any craft classification shall not be greater than the ratio permitted to the Contractor as to his entire work force under the registered program.

(s) Tips. An employee engaged in an occupation in which the employee customarily and regularly receives more than $30 a month in tips may have the amount of these tips credited by the employer against the minimum wage required by section 2(a)(1) or section 2(b)(1) of the Act, in accordance with section 3(m) of the Fair Labor Standards Act and Regulations 29 CFR part 531. However, the amount of credit shall not exceed $1.34 per hour beginning January 1, 1981. To use this provision -

(1) The employer must inform tipped employees about this tip credit allowance before the credit is utilized;

(2) The employees must be allowed to retain all tips (individually or through a

pooling arrangement and regardless of whether the employer elects to take a credit for tips received);

(3) The employer must be able to show by records that the employee receives at least the applicable Service Contract Act minimum wage through the combination of direct wages and tip credit; and

(4) The use of such tip credit must have been permitted under any predecessor collective bargaining agreement applicable by virtue of section 4(c) of the Act.

(t) Disputes Concerning Labor Standards. The U.S. Department of Labor has set forth in 29 CFR parts 4, 6, and 8 procedures for resolving disputes concerning labor standards requirements. Such disputes shall be resolved in accordance with those procedures and not the Disputes clause of this contract. Disputes within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.

**I.7 1252.215-71 KEY PERSONNEL AND FACILITIES. (APR 1985)**

The personnel and/or facilities as specified in the Schedule of this contract are considered essential to the work being performed hereunder. Prior to removing, replacing, or diverting any of the specified individuals or facilities, the Contractor shall notify the Contracting Officer reasonably in advance and shall submit justification (including proposed substitutions) in sufficient detail to permit evaluation of the impact on this contract. No diversion shall be made by the Contractor without the written consent of the contracting Officer; provided, that the Contracting

Officer may ratify in writing the change and such ratification shall constitute the consent of the Contracting Officer required by this clause. The personnel and/or facilities as specified in the Schedule of this contract may, with the consent of the contracting parties' be amended from time to time during the course of the contract to either add or delete personnel and/or facilities, as appropriate.

**I.8 1252.216-72 ESTIMATED COST, BASE FEE, AND AWARD FEE. (APR 1984)**

The estimated cost of this contract is $<u>19,559,527.00</u>. A base fee of $0.00, no base fee and a maximum Award Fee of $<u>1,564,762.15</u> are payable in accordance with 1252.216-73 "Payment of Base and Award Fee."

## I.9 PAYMENT OF AWARD FEE

The Government will promptly make payment of any Award Fee upon the submission by the Contractor to the Contracting Officer, or his authorized representative, of a public voucher or invoice in the amount of the total fee earned for the period evaluated as specified in the clause 1252.216-74 "Determination of Award Fee Earned." Payment shall be made without the need for a contract modification.

## I.10 1252.216-74 DETERMINATION OF AWARD FEE EARNED. (APR 1985)

(a) The Government shall at the conclusion of each specified evaluation period(s), evaluate the Contractor's performance for a determination of award fee earned. The Contractor agrees that the determination as to the amount of award fee earned will be made by the Government Fee Determination Official (FDO) and such determination concerning the amount of award fee earned is binding on both parties and shall not be subject to appeal under the "Disputes" clause or to any board or court.

(b) It is agreed that the evaluation of Contractor performance shall be in accordance with the Performance Evaluation Plan referenced in the clause entitled "Performance Evaluation Plan," and that the contractor shall be promptly advised in writing of the determination and the reasons why it was or was not earned. It is further agreed that the Contractor may submit a self-evaluation of performance of each period under consideration. While it is recognized that the basis for determination of the fee shall be the evaluation by the Government, any self-evaluation which is received within [10] days after the end of the period being evaluated may be given such consideration, if any, as the FDO shall find appropriate.

(c) The FDO may, in his/her discretion, specify in any fee determination that fee not earned during the period evaluated may be accumulated and be available for allocation to one or more subsequent periods. In that event, the clause 1252.216-76 "Distribution of Award Fee" shall be adjusted to reflect such allocations.

## I.11 1252.216-75 PERFORMANCE EVALUATION PLAN. (APR 1984)

(a) A Contractor Performance Evaluation Plan, upon which the determination of award fee shall be based (including the criteria to be considered under each area evaluated and the percentage of award fee, if any, available for each area), will be unilaterally established by the Government. A copy of the plan shall be provided to the Contractor 10 calendar days prior to the start of the first evaluation period.

(b) The Performance Evaluation Plan shall set forth the criteria upon which the

Contractor will be evaluated for performance relating to any: (1) Technical (including Schedule) requirements if appropriate; (2) Management; and (3) Cost Functions selected for evaluation.

(c) The Performance Evaluation Plan may, consistent with the contract, be revised unilaterally by the Government at any time during the period of performance. Notification of such changes shall be provided to the Contractor [15] calendar days prior to the start of the evaluation period to which the change will apply.

## I.12 DISTRIBUTION OF AWARD FEE

(a) The total amount, of award fee available under this contract is assigned to the following evaluation periods in the following amounts:

Evaluation Period: Every Three Months

Available Award Fee: The amount of award fee available will be based on the performance of those tasks completed during the evaluation period. A maximum of 8% of the cost of the work performed is allowable.

(b) Payment of the base fee: No base fee under this contract.

(c) In the event of contract termination, either in whole or in part, the amount of award fee available shall represent a pro-rata distribution associated with evaluation period activities or events as determined by the Fee Determination Official.

## I.13 M1252.212-18 DISSEMINATION OF CONTRACT INFORMATION (MARAD) (AUG 1991)

The Contractor shall not publish, permit to be published, or distribute for public consumption, any information, oral or written, concerning the results or conclusions made pursuant to the performance of this Contract, without prior written consent of the Contracting Officer. (Two copies of any material proposed to be published shall be submitted to the Contracting Officer).

## I-14 52.217-9 OPTION TO EXTEND THE TERM OF THE CONTRACT. (MAR 1989)

(a) The Government may extend the term of this contract by written notice to the Contractor within 15 days; provided, that the Government shall give the Contractor a preliminary written notice of its intent to extend at least 60 days before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option provision.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed 60 months.

(End of clause)

Contract No. DTMA91-95-C-00024

PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACHMENTS

SECTION J - LIST OF ATTACHMENTS

| ATTACHMENT NO. | TITLE/DESCRIPTION |
|---|---|
| J.1 | PC-SAL User Handbook<br>Release date: 11/19/93 |
| J.2 | RRF-ECSMIS User Handbook<br>Print Date: 27 Apr 94 |
| J.3 | RRF Logistics Management Manual<br>(Part I, Supply Management Program) |
| J.4 | RRF Logistics Management Manual<br>(Part II, Configuration Management Program) |
| J.5 | Lashing Gear, Field Identification and<br>Inventory Guide November 1993 |
| J.6 | MARAD's Validation and Inventory Guide |
| J.7 | List of Government Furnished Equipment |

# AWARD/CONTRACT

1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350) | RATING | PAGE A2 OF PAGES A2

2. CONTRACT (Proc. Inst. Ident.) NO. 2303-95-1-00255

3. EFFECTIVE DATE: See Blk 20C

4. REQUISITION/PURCHASE REQUEST/PROJECT NO.

5. ISSUED BY — CODE
U.S. Small Business Administration
Philadelphia Regional Office
475 Allendale Road, Suite 201
King of Prussia, Pennsylvania 19406

6. ADMINISTERED BY (If other than Item 5) — CODE
Department of Transportation
Maritime Administration, MAR-380
Office of Acquisition
400 Seventh St., S.W.
Washington, DC 20590

7. NAME AND ADDRESS OF CONTRACTOR (No., street, city, county, State and ZIP Code)
Shepard-Patterson & Associates, Inc.
15 East Ridge Pike, Suite 220
Conshohocken, PA 19428

CODE | FACILITY CODE

8. DELIVERY
☐ FOB ORIGIN ☐ OTHER (See below)

9. DISCOUNT FOR PROMPT PAYMENT

10. SUBMIT INVOICES (4 copies unless otherwise specified) TO THE ADDRESS SHOWN IN: ITEM 12

11. SHIP TO/MARK FOR — CODE
See Section F

12. PAYMENT WILL BE MADE BY — CODE
See Section G

13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION:
☐ 10 U.S.C. 2304(c)( ) ☐ 41 U.S.C. 253(c)( )

14. ACCOUNTING AND APPROPRIATION DATA
Subject to FAR 52.232-18 AVAILABILITY OF FUNDS (APR 1984) Cited on Delivery Orders

| 15A. ITEM NO | 15B. SUPPLIES/SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| | This is an indefinite delivery, indefinite quantity, Cost Plus Award Fee Contract. Contractual contents are as shown in number 16 below. Funds are obligated by delivery orders and work will be authorized by work orders issued against the delivery orders. | | | | |
| | Govt. Guarantee is 10% | | | | |

15G. TOTAL AMOUNT OF CONTRACT ▶ $ 21,124,289.17

## 16. TABLE OF CONTENTS

| (✓) | SEC. | DESCRIPTION | PAGE(S) | (✓) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | PART I — THE SCHEDULE | | | | PART II — CONTRACT CLAUSES | |
| x | A | SOLICITATION/CONTRACT FORM | A1 | x | I | CONTRACT CLAUSES | I1-I19 |
| x | B | SUPPLIES OR SERVICES AND PRICES/COSTS | B1-B6 | | | PART III — LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH. | |
| x | C | DESCRIPTION/SPECS./WORK STATEMENT | C1-C11 | x | J | LIST OF ATTACHMENTS | J1 |
| x | D | PACKAGING AND MARKING | D1 | | | PART IV — REPRESENTATIONS AND INSTRUCTIONS | |
| x | E | INSPECTION AND ACCEPTANCE | E1 | | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| x | F | DELIVERIES OR PERFORMANCE | F1-F5 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| x | G | CONTRACT ADMINISTRATION DATA | G1-G6 | | M | EVALUATION FACTORS FOR AWARD | |
| x | H | SPECIAL CONTRACT REQUIREMENTS | H1-H7 | | | | |

*CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE*

17. ☐ CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return ______ copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

18. ☐ AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number ______ including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary.

19A. NAME AND TITLE OF SIGNER (Type or print)
Samuel J. Patterson, President

20A. NAME OF CONTRACTING OFFICER
DELORES ELLIS
CONTRACTING OFFICER

19B. NAME OF CONTRACTOR
BY Samuel J. Patterson, President
(Signature of person authorized to sign)

19C. DATE SIGNED 3/14/95

20B. UNITED STATES OF AMERICA
BY Delores Ellis
(Signature of Contracting Officer)

20C. DATE SIGNED 3/27/95

B

**52.203-11 Certification and Disclosure Regarding Payments to Influence Certain Federal Transactions.**

As prescribed in 3.808, insert the following provision:

CERTIFICATION AND DISCLOSURE REGARDING PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (APR 1991)

(a) The definitions and prohibitions contained in the clause, at FAR 52.203-12, Limitation on Payments to Influence Certain Federal Transactions, included in this solicitation, are hereby incorporated by reference in paragraph (b) of this certification.

(b) The offeror, by signing its offer, hereby certifies to the best of his or her knowledge and belief that on or after December 23, 1989,—

(1) No Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress on his or her behalf in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment or modification of any Federal contract, grant, loan, or cooperative agreement;

(2) If any funds other than Federal appropriated funds (including profit or fee received under a covered Federal transaction) have been paid, or will be paid, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress on his or her behalf in connection with this solicitation, the offeror shall complete and submit, with its offer, OMB standard form LLL, Disclosure of Lobbying Activities, to the Contracting Officer; and

(3) He or she will include the language of this certification in all subcontract awards at any tier and require that all recipients of subcontract awards in excess of $100,000 shall certify and disclose accordingly.

(c) Submission of this certification and disclosure is a prerequisite for making or entering into this contract imposed by section 1352, title 31, United States Code. Any person who makes an expenditure prohibited under this provision or who fails to file or amend the disclosure form to be filed or amended by this provision, shall be subject to a civil penalty of not less than $10,000, and not more than $100,000, for each such failure.

52.219-11 Special 8(a) Contract Conditions.

As prescribed in 19.811-3(a), insert the following clause:

SPECIAL 8(a) CONTRACT CONDITIONS
(FEB 1990)

The Small Business Administration (SBA) agrees to the following:

(a) To furnish the supplies or services set forth in this contract according to the specifications and the terms and conditions hereof by subcontracting with an eligible concern pursuant to the provisions of section 8(a) of the Small Business Act, as amended (15 U.S.C. 637(a)).

(b) That in the event SBA does not award a subcontract for all or a part of the work hereunder, this contract may be terminated either in whole or in part without cost to either party.

(c) Except for novation agreements and advance payments delegates to the MARAD the responsibility for administering the subcontract to be awarded hereunder with complete authority to take any action on behalf of the Government under the terms and conditions of the subcontract; provided, however, that the MARAD shall give advance notice to the SBA before it issues a final notice terminating the right of a subcontractor to proceed with further performance, either in whole or in part, under the subcontract for default or for the convenience of the Government.

(d) That payments to be made under any subcontract awarded under this contract will be made directly to the subcontractor by the MARAD.

(e) That the subcontractor awarded a subcontract hereunder shall have the right of appeal from decisions of the Contracting Officer cognizable under the "Disputes" clause of said subcontract.

(f) To notify the MARAD Contracting Officer immediately upon notification by the subcontractor that the owner or owners upon whom 8(a) eligibility was based plan to relinquish ownership or control of the concern.

(End of clause)

52.219-12 Special 8(a) Subcontract Conditions.

As prescribed in 19.811-3(b), insert the following clause:

SPECIAL 8(a) SUBCONTRACT CONDITIONS
(FEB 1990)

(a) The Small Business Administration (SBA) has entered into Contract No. DTMA91-95-C-00024 with the MARAD to furnish the supplies or services as described therein. A copy of the contract is attached hereto and made a part hereof.

(b) The Shepard-Patterson, hereafter referred to as the subcontractor, agrees and acknowledges as follows:

(1) That it will, for and on behalf of the SBA, fulfill and perform all of the requirements of Contract No. MARAD for the consideration stated therein and that it has read and is familiar with each and every part of the contract.

(2) That the SBA has delegated responsibility, except for novation agreements and advance payments, for the administration of this subcontract to the MARAD with complete authority to take any action on behalf of the Government under the terms and conditions of this contract.

(3) That it will not subcontract the performance of any of the requirements of this subcontract to any lower tier subcontractor without the prior written approval of the SBA and the designated Contracting Officer of the MARAD.

(4) That is will notify the MARAD Contracting Officer in writing immediately upon entering an agreement (either oral or written) to transfer all or part of its stock or other ownership interest to any other party.

(c) Payments, including any progress payments under this subcontract, will be made directly to the subcontractor by the MARAD.

(End of clause)