**Shepard-Patterson and Associates certifies that no Federal appropriated funds have been paid.**

**K.3 TAXPAYER IDENTIFICATION (FAR 52.204-3) (MAR 1994)**

(a) Definitions.

"Common parent," as used in the solicitation provision, means that corporate entity that owns or controls an affiliated group of corporations that files its Federal income tax returns on a consolidated basis, and of which the offeror is a member.

"Corporate status," as used in this solicitation provision, means a designation as to whether the offeror is a corporate entity, an unincorporated entity (e.g., sole proprietorship or partnership), or a corporation providing medical and health care services.

"Taxpayer Identification Number (TIN)," as used in this solicitation provision, means the number required by the IRS to be used by the offeror in reporting income tax and other returns.

(b) All offerors are required to submit the information required in paragraphs (c) through (e) of this solicitation provision in order to comply with reporting requirements of 26 U.S.C. 6041, 6041A, and 6050M and implementing regulations issued by the Internal Revenue Service (IRS). If the resulting contract is subject to the reporting requirements described in FAR 4.903, the failure or refusal by the offeror to furnish the information may result in a 31 percent reduction of payments otherwise due under the contract.

(c) Taxpayer Identification Number (TIN).

[X] **TIN: 23-2429521**

[ ] TIN: has been applied for.

[ ] TIN: is not required because:

[ ] Offeror is a nonresident alien, foreign corporation, or foreign partnership that does not have income effectively connected with the conduct of a trade or business in the U.S. and does not have an office or place of business or a fiscal paying agent in the U.S;

[ ] Offeror is an agency or instrumentality of a foreign government;

[ ] Offeror is an agency or instrumentality of a Federal, state or local government;

[ ] Other. State basis.

______________________________

(d) Corporate Status.

[ ] Corporation providing medical and health care services, or engaged in the billing and collecting of payments for such services;

[ ] Other corporate entity;

[ ] Not a corporate entity:

[ ] Sole proprietorship;

[ ] Partnership;

[ ] Hospital or extended care facility described in 26 CFR 501(c)(3) that is exempt from taxation under 26 CFR 501(a).

(e) Common Parent.

**[X] Offeror is not owned or controlled by a common parent as defined in paragraph (a) of this clause.**

[ ] Name and TIN of common parent;

Name ______________________________

TIN ______________________________

**K.4 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, PROPOSED DEBARMENT, AND OTHER RESPONSIBILITY MATTERS (FAR 52.209-5) (MAY 1989)**

(a)(1) The Offeror certifies, to the best of its knowledge and belief, that -

(i) The Offeror and/or any of its Principals -

(A) Are ( ) **are not (X)** presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency;

(B) Have ( ) **have not (X)**, within a 3-year period preceding this offer, been convicted of or had a civil judgment rendered against them for: commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, state, or local)

contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property; and

(C) Are ( ) **are not (X)** presently indicted for, or otherwise criminally or civilly charged by a governmental entity with, commission of any of the offenses enumerated in subdivision (a)(1)(i)(B) of this provision.

(ii) The Offeror has ( ) has not (X), within a 3-year period preceding this offer, had one or more contracts terminated for default by any Federal agency.

(2) "Principals," for the purposes of this certification, means officers; directors; owners; partners; and, persons having primary management or supervisory responsibilities within a business entity (e.g., general manager; plant manager; head of a subsidiary, division, or business segment, and similar positions).

THIS CERTIFICATION CONCERNS A MATTER WITHIN THE JURISDICTION OF AN AGENCY OF THE UNITED STATES AND THE MAKING OF A FALSE, FICTITIOUS, OR FRAUDULENT CERTIFICATION MAY RENDER THE MAKER SUBJECT TO PROSECUTION UNDER SECTION 1001, TITLE 18, UNITED STATES CODE.

(b) The Offeror shall provide immediate written notice to the Contracting Officer if, at any time prior to contract award, the Offeror learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

(c) A certification that any of the items in paragraph (a) of this provision exists will not necessarily result in withholding of an award under this solicitation. However, the certification will be considered in connection with a determination of the Offeror's responsibility. Failure of the Offeror to furnish a certification or provide such additional information as requested by the Contracting Officer may render the Offeror nonresponsible.

(d) Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render, in good faith, the certification required by paragraph (a) of this provision. The knowledge and information of an Offeror is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

(e) The certification in paragraph (a) of this provision is a material representation of fact upon which reliance was placed when making award. If it is later determined that the Offeror knowingly rendered an erroneous certification, in addition to other remedies available to the Government, the Contracting Officer may terminate the contract resulting from this solicitation for default.

**K.5 TYPE OF BUSINESS ORGANIZATION (FAR 52.215-6) (JUL 1987)**

The offeror or quoter, by checking the applicable box, represents that--

(a) It **operates as [X] a corporation incorporated under the laws of the State of Pennsylvania ,** [ ] an individual, [ ] a partnership, [ ] a nonprofit organization, or [ ] a joint venture; or

(b) If the offeror or quoter is a foreign entity, it operates as [ ] an individual, [ ] a partnership, [ ] a nonprofit organization, [ ] a joint venture, or [ ] a corporation, registered for business in ________________________ (country).

**K.6 PLACE OF PERFORMANCE (FAR 52.215-20) (APR 1984)**

(a) The offeror or quoter, in the performance of any contract resulting from this solicitation, **[X] intends,** [ ] does not intend (check applicable box) to use one or more plants or facilities located at a different address from the address of the offeror or quoter as indicated in this proposal or quotation.

(b) If the offeror or quoter checks "intends" in paragraph (a) above, it shall insert in the spaces provided below the required information:

| Place of Performance (Street or Address, City, County, State, Zip Code) | Name and Address of Owner and Operator of the Plant Facility if Other than Offeror or Quoter |
|---|---|
| 2001 Jefferson Davis Highway | |
| Suite 209 | |

Arlington, VA 22202

**K.7 ANNUAL REPRESENTATIONS AND CERTIFICATIONS--NEGOTIATION (FAR 52.215-35) (DEC 1989)**

The Offeror certifies that annual representations and certifications (check the appropriate block):

**[ X ]** (a) Dated **3/30/98** (insert date of signature on submission) which are incorporated herein by reference, have been submitted to the contracting office issuing this solicitation and that the submittal is current, accurate, and complete as of the date of this bid, except as follows (insert changes that affect only this solicitation; if "none," so state): **None**

[ ] (b) Are enclosed.

**K.8 SMALL BUSINESS CONCERN REPRESENTATION (FAR 52.219-1) (FEB 1995)**

(a) *Representation.* The offeror represents and certifies as part of its offer that it is: [X] a small business concern, [ ] not a small business concern.

(b) *Definition.*
"Small business concern," as used in this provision, means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria and size standards in this solicitation.

(c) *Notice.*

(1) If this solicitation is for supplies and has been set aside, in whole or in part, for small business concerns, then the clause in this solicitation providing notice of the set-aside contains restrictions on the source of the end items to be furnished.

(2) Under 15 U.S.C. 645(d), any person who misrepresents a firm's status as a small business concern in order to obtain a contract to be awarded under the preference programs established pursuant to sections 8(a), 8(d), 9, or 15 of the Small Business Act or any other provision of Federal law that specifically references

section 8(d) for a definition of program eligibility, shall--

(i) Be punished by imposition of fine, imprisonment, or both;

(ii) Be subject to administrative remedies, including suspension and debarment; and

(iii) Be ineligible for participation in programs conducted under the authority of the Act.

**K.9 SMALL DISADVANTAGED BUSINESS CONCERN REPRESENTATION (FAR 52.219-2) (FEB 1990)**

(a) Representation. The offeror represents that **it [X] is**, [ ] is not a small disadvantaged business concern.

(b) Definitions.

"Asian Pacific Americans," as used in this provision, means a United States citizens whose origins are in Japan, China, the Philippines, Vietnam, Korea, Samoa, Guam, the U.S. Trust Territory of the Pacific Islands (Republic of Palau), the Northern Mariana Islands, Laos, Kampuchea (Cambodia), Taiwan, Burma, Thailand, Malaysia, Indonesia, Singapore, Brunei, Republic of the Marshall Islands, or the Federated States of Micronesia.

"Indian tribe," as used in this provision, means any Indian tribe, band, nation, or other organized group or community of Indians, including any Alaska Native Corporation as defined in 13 CFR 124.100 which is recognized as eligible for the special programs and services provided by the U.S. to Indians because of their status as Indians, or which is recognized as such by the State in which such tribe, band, nation, group, or community resides.

"Native Americans," as used in this provision, means American Indians, Eskimos, Aleuts, and native Hawaiians.

"Small business concern," as used in this provision, means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria and size standards in 13 CFR 121.

"Small disadvantaged business concern," as used in this provision, means a small business concern that (a) is at

least 51 percent unconditionally owned by one or more individuals who are both socially and economically disadvantaged, or a publicly owned business having at least 51 percent of its stock unconditionally owned by one or more socially and economically disadvantaged individuals and (b) has its management and daily business controlled by one or more such individuals. This term also means a small business concern that is at least 51 percent unconditionally owned by an economically disadvantaged Indian tribe or Native Hawaiian Organization, or a publicly owned business having at least 51 percent of its stock unconditionally owned by one of the entities which has its management and daily business controlled by members of an economically disadvantaged Indian tribe or Native Hawaiian Organization, and which meets the requirements of 13 CFR 124.

"Subcontinent Asian Americans," as used in the provision, means United States citizens whose origins are in India, Pakistan, Bangladesh, Sri Lanka, Bhutan, or Nepal.

(c) Qualified groups. The offeror shall presume that socially and economically disadvantaged individuals include Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, Subcontinent Asian Americans, and other individuals found to be qualified by SBA under 13 CFR 124. The offeror shall presume that socially and economically disadvantaged entities also include Indian tribes and Native Hawaiian Organizations.

**K.10 WOMEN-OWNED SMALL BUSINESS REPRESENTATION (FAR 52.219-3) (APR 1984)**

(a) Representation. The offeror represents that it [ ] is, **[X] is not** a women-owned small business concern.

(b) Definitions.

"Small business concern," as used in this provision, means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria and size standards in 13 CFR 121.

"Women-owned," as used in this provision, means a small business that is at least 51 percent owned by a woman or women who are U.S. citizens and who also control and operate the business.

**K.11 SMALL BUSINESS PROGRAM REPRESENTATIONS (FAR 52.219-1 )**

**(OCT 1995)**

(a)(1) The standard industrial classification (SIC) code for this acquisition is **7379**.

(2) The small business size standard is (insert size standard).

(3) The small business size standard for a concern which submits an offer in its own name, other than on a construction or service contract, but which proposes to furnish a product which it did not itself manufacture, is 500 employees.

(b) *Representations.* (1) The offeror represents and certifies as part of its offer that it [X]is, [ ]is not a small business concern.

(2) (Complete only if offeror represented itself as a small business concern in block (b)(1) of this section.) The offeror represents as part of its offer that it [X]is, [ ]is not a small disadvantaged business concern.

(3) (Complete only if offeror represented itself as a small business concern in block (b)(1) of this section.) The offeror represents as part of its offer that it [ ]is, **[X]is not** a women-owned small business concern.

(c) *Definitions.* Small business concern, as used in this provision, means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria in 13 CFR Part 121 and the size standard in paragraph (a) of this provision.

Small disadvantaged business concern, as used in this provision, means a small business concern that (1) is at least 51 percent unconditionally owned by one or more individuals who are both socially and economically disadvantaged, or a publicly owned business having at least 51 percent of its stock unconditionally owned by one or more socially and economically disadvantaged individuals, and (2) has its management and daily business controlled by one or more such individuals. This term also means a small business concern that is at least 51 percent unconditionally owned by an economically disadvantaged Indian tribe or Native Hawaiian Organization, or a publicly owned business having at least 51 percent of its stock unconditionally

owned by one or more of these entities, which has its management and daily business controlled by members of an economically disadvantaged Indian tribe or Native Hawaiian Organization, and which meets the requirements of 13 CFR Part 124.

Women-owned small business concern, as used in this provision, means a small business concern-

(1) Which is at least 51 percent owned by one or more women or, in the case of any publicly owned business, at east 51 percent of the stock of which is owned by one or more women; and

(2) Whose management and daily business operations are controlled by one or more women.

(d) Notice. (1) If this solicitation is for supplies and has been set aside, in whole or in part, for small business concerns, then the clause in this solicitation providing notice of the set-aside contains restrictions on the source of the end items to be furnished.

(2) Under 15 U.S.C. 645(d), any person who misrepresents a firm's status as a small or small disadvantaged business concern in order to obtain a contract to be awarded under the preference programs established pursuant to sections 8(a), 8(d), 9, or 15 of the Small Business Act or any other provision of Federal law that specifically references section 8(d) for a definition of program eligibility, shall-

(i) Be punished by imposition of fine, imprisonment, or both;

(ii) Be subject to administrative remedies, including suspension and debarment; and

(iii) Be ineligible for participation in programs conducted under the authority of the Act.

**K.12 SMALL BUSINESS SIZE REPRESENTATION FOR TARGETED INDUSTRY CATEGORIES UNDER THE SMALL BUSINESS COMPETITIVENESS DEMONSTRATION PROGRAM (FAR 52.219-21) (JUL 1991)**

(Complete only if the Offeror has certified itself under

the provision at 52.219-1 as a small business concern under the size standards of this solicitation.)

Offeror represents and certifies as follows:

Offeror's number of employees for the past 12 months (check this column if size standard stated in solicitation is expressed in terms of number of employees) or Offeror's average annual gross revenue for the last 3 fiscal years (check this column if size standard stated in solicitation is expressed in terms of annual receipts). (Check one of the following.)

| | No. of Employees | | Avg. Annual Gross Revenues |
|---|---|---|---|
| ____ | 50 or fewer | ____ | $1 million or less |
| ____ | 51 - 100 | ____ | $1,000,001 - $2 million |
| X | 101 - 250 | ____ | $2,000,001 - $3.5 million |
| ____ | 251 - 500 | ____ | $3,500,001 - $5 million |
| ____ | 501 - 750 | X | $5,000,001 - $10 million |
| ____ | 751 - 1,000 | ____ | $10,000,001 - $17 million |
| ____ | Over 1,000 | ____ | Over $17 million. |

**K.13 PREFERENCE FOR LABOR SURPLUS AREA CONCERNS (FAR 52.220-1) (APR 1984)**

(a) This acquisition is not a set aside for labor surplus area (LSA) concerns. However, the offeror's status as such a concern may affect (1) entitlement to award in case of tie offers or (2) offer evaluation in accordance with the Buy American Act clause of this solicitation. In order to determine whether the offeror is entitled to a preference under (1) or (2) above, the offeror must identify, below, the LSA in which the costs to be incurred on account of manufacturing or production (by the offeror or the first-tier subcontractors) amount to more than 50 percent of the contract price.

NONE ________________________________________________

________________________________________________

(b) Failure to identify the locations as specified above will preclude consideration of the offeror as an LSA concern. If the offeror is awarded a contract as an LSA

concern and would not have otherwise qualified for award, the offeror shall perform the contract or cause the contract to be performed in accordance with the obligations of an LSA concern.

**K.14 CERTIFICATION OF NONSEGREGATED FACILITIES (FAR 52.222-21) (APR 1984)**

(a) "Segregated facilities," as used in this provision, means any waiting rooms, work areas, rest rooms and wash rooms, restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees, that are segregated by explicit directive or are in fact segregated on the basis of race, color, religion, or national origin because of habit, local custom, or otherwise.

(b) By the submission of this offer, the offeror certifies that it does not and will not maintain or provide for its employees any segregated facilities at any of its establishments, and that it does not and will not permit its employees to perform their services at any location under its control where segregated facilities are maintained. The offeror agrees that a breach of this certification is a violation of the Equal Opportunity clause in the contract.

(c) The offeror further agrees that (except where it has obtained identical certifications from proposed subcontractors for specific time periods) it will--

(1) Obtain identical certifications from proposed subcontractors before the award of subcontracts under which the subcontractor will be subject to the Equal Opportunity clause;

(2) Retain the certifications in the files; and

(3) Forward the following notice to the proposed subcontractors (except if the proposed subcontractors have submitted identical certifications for specific time periods):

NOTICE TO PROSPECTIVE SUBCONTRACTORS OF REQUIREMENT FOR CERTIFICATIONS OF NONSEGREGATED FACILITIES

A Certification of Nonsegregated Facilities must be

submitted before the award of a subcontract under which the subcontractor will be subject to the Equal Opportunity clause. The certification may be submitted either for each subcontract or for all subcontracts during a period (i.e., quarterly, semiannually, or annually).

NOTE: The penalty for making false statements in offers is prescribed in 18 U.S.C. 1001.

**K.15 PREVIOUS CONTRACTS AND COMPLIANCE REPORTS (FAR 52.222-22) (APR 1984)**

The offeror represents that--

(a) It [X] has, [ ] has not participated in a previous contract or subcontract subject either to the Equal Opportunity clause of this solicitation, the clause originally contained in Section 310 of Executive Order No. 10925, or the clause contained in Section 201 of Executive Order No. 11114;

(b) It **[X] has**, [ ] has not filed all required compliance reports; and

(c) Representations indicating submission of required compliance reports, signed by proposed subcontractors, will be obtained before subcontract awards.

**K.16 AFFIRMATIVE ACTION COMPLIANCE (FAR 52.222-25) (APR 1984)**

The offeror represents that--

(a) It **[X] has** developed and has on file, [ ] has not developed and does not have on file, at each establishment, affirmative action programs required by the rules and regulations of the Secretary of Labor (41 CFR 60-1 and 60-2), or (b) It [ ] has not previously had contracts subject to the written affirmative action programs requirement of the rules and regulations of the Secretary of Labor.

**K.17 CLEAN AIR AND WATER CERTIFICATION (FAR 52.223-1) (APR 1984)**

The Offeror certifies that--

(a) Any facility to be used in the performance of this proposed contract is [ ], **is not [X]** listed on the

Environmental Protection Agency (EPA) List of Violating Facilities;

(b) The Offeror will immediately notify the Contracting Officer, before award, of the receipt of any communication from the Administrator, or a designee, of the EPA, indicating that any facility that the Offeror proposes to use for the performance of the contract is under consideration to be listed on the EPA List of Violating Facilities; and

(c) The Offeror will include a certification substantially the same as this certification, including this paragraph (c), in every nonexempt subcontract.

**K.18 CERTIFICATION REGARDING A DRUG-FREE WORKPLACE (FAR 52.223-5) (JUL 1995)**

(a) Definitions. As used in this provision, "Controlled substance" means a controlled substance in schedules I through V of section 202 of the Controlled Substances Act (21 U.S.C. 812) and as further defined in regulation at 21 CFR 1308.11-1308.15.

"Conviction" means a finding of guilt (including a plea of nolo contendere) or imposition of sentence, or both, by any judicial body charged with the responsibility to determine violations of the Federal or State criminal drug statutes.

"Criminal drug statute" means a Federal or non-Federal criminal statute involving the manufacture, distribution, dispensing, possession or use of any controlled substance.

"Drug-free workplace" means the site(s) for the performance of work done by the Contractor in connection with a specific contract at which employees of the Contractor are prohibited from engaging in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance.

"Employee" means an employee of a Contractor directly engaged in the performance of work under a Government contract. "Directly engaged" is defined to include all direct cost employees and any other Contractor employee who has other than a minimal impact or involvement in contract performance.

"Individual" means an offeror/contractor that has no more than one employee including the offeror/contractor.

(b) By submission of its offer, the offeror, (other than an individual) responding to a solicitation that is expected to exceed the simplified acquisition threshold, certifies and agrees, that with respect to all employees of the offeror to be employed under a contract resulting from this solicitation, it will--no later than 30 calendar days after contract award (unless a longer period is agreed to in writing), for contracts of 30 calendar days or more performance duration; or as soon as possible for contracts of less than 30 calendar days performance duration, but in any case, by a date prior to when performance is expected to be completed--

(1) Publish a statement notifying such employees that the unlawful manufacture, distribution, dispensing, possession or use of a controlled substance is prohibited in the Contractor's workplace and specifying the actions that will be taken against employees for violations of such prohibition;

(2) Establish an ongoing drug-free awareness program to inform such employees about-

(I) The dangers of drug abuse in the workplace;

(ii) The Contractor's policy of maintaining a drug-free workplace;

(iii) Any available drug counseling, rehabilitation, and employee assistance programs; and

(iv) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(3) Provide all employees engaged in performance of the contract with a copy of the statement required by subparagraph (b)(1) of this provision;

(4) Notify such employees in writing in the statement required by subparagraph (b)(1) of this provision that, as a condition of continued employment on the contract resulting from this solicitation, the employee will--

(I) Abide by the terms of the statement; and

(ii) Notify the employer in writing of the employee's conviction under a criminal drug statute for a violation occurring in the workplace no later than 5 calendar days after such conviction;

(5) Notify the Contracting Officer in writing within 10 calendar days after receiving notice under subdivision (b)(4)(ii) of this provision, from an employee or otherwise receiving actual notice of such conviction. The notice shall include the position title of the employee; and

(6) Within 30 calendar days after receiving notice under subdivision (b)(4)(ii) of this provision of a conviction, take one of the following actions with respect to any employee who is convicted of a drug abuse violation occurring in the workplace;

(I) Take appropriate personnel action against such employee, up to and including termination; or

(ii) Require such employee to satisfactorily participate in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency.

(7) Make a good faith effort to maintain a drug-free workplace through implementation of subparagraphs (b)(1) through (b)(6) of this provision.

(c) By submission of its offer, the offeror, if an individual who is making an offer of any dollar value, certifies and agrees that the offeror will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in the performance of the contract resulting from this solicitation.

(d) Failure of the offeror to provide the certification required by paragraph (b) or (c) of this provision, renders the offeror unqualified and ineligible for award. (See FAR 9.104-1(g) and 19.602-1(a)(2)(I).)

(e) In addition to other remedies available to the Government, the certification in paragraphs (b) and (c) of this provision concerns a matter within the jurisdiction of an agency of the United States and the making of a false, fictitious, or fraudulent certification may render the maker subject to prosecution under Title 18, United States Code, Section 1001.

**K.19 COST ACCOUNTING STANDARDS NOTICES AND CERTIFICATION (FAR 52.230-1) (NOV 1993)**

Note: This notice does not apply to small businesses or foreign governments. This notice is in three parts,

identified by Roman numerals I through III.

Offerors shall examine each part and provide the requested information in order to determine Cost Accounting Standards (CAS) requirements applicable to any resultant contract.

I. DISCLOSURE STATEMENT -- COST ACCOUNTING PRACTICES AND CERTIFICATION

(a) Any contract in excess of $500,000 resulting from this solicitation, except contracts in which the price negotiated is based on (1) established catalog or market prices of commercial items sold in substantial quantities to the general public, or (2) prices set by law or regulation, will be subject to the requirements of 48 CFR, Parts 9903 and 9904, except for those contracts which are exempt as specified in 48 CFR, Subpart 9903.201-1.

(b) Any offeror submitting a proposal which, if accepted, will result in a contract subject to the requirements of 48 CFR, Parts 9903 and 9904 must, as a condition of contracting, submit a Disclosure Statement as required by 48 CFR, Subpart 9903.202. The Disclosure Statement must be submitted as a part of the offeror's proposal under this solicitation unless the offeror has already submitted a Disclosure Statement disclosing the practices used in connection with the pricing of this proposal. If an applicable Disclosure Statement has already been submitted, the offeror may satisfy the requirement for submission by providing the information requested in paragraph (c) of Part I of this provision.

CAUTION: In the absence of specific regulations or agreement, a practice disclosed in a Disclosure Statement shall not, by virtue of such disclosure, be deemed to be a proper, approved, or agreed- to practice for pricing proposals or accumulating and reporting contract performance cost data.

(c) Check the appropriate box below:

|__| (1) Certificate of Concurrent Submission of Disclosure Statement.

The offeror hereby certifies that, as a part of the offer, copies of the Disclosure Statement have been submitted as follows: (i) Original and one copy to the cognizant Administrative Contracting Officer (ACO), and (ii) One copy to the cognizant contract auditor.

(Disclosure must be on Form No. CASB DS-1. Forms may be obtained from the cognizant ACO or from the loose leaf version of the Federal Acquisition Regulation.)

Date of Disclosure Statement: ______________________

Name and Address of Cognizant ACO where filed:

______________

______________________________________________

______________________________________________

______________________________________________

The offeror further certifies that practices used in estimating costs in pricing this proposal are consistent with the cost accounting practices disclosed in the Disclosure Statement.

|__| (2) Certificate of Previously Submitted Disclosure Statement.

The offeror hereby certifies that Disclosure Statement was filed as follows:

Date of Disclosure Statement: ______________________

Name and Address of Cognizant ACO where filed:

______________

______________________________________________

______________________________________________

______________________________________________

The offeror further certifies that the practices used in estimating costs in pricing this proposal are consistent with the cost accounting practices disclosed in the applicable disclosure statement.

**|_X_| (3) Certificate of Monetary Exemption.**

The offeror hereby certifies that the offeror, together with all divisions, subsidiaries, and affiliates under

common control, did not receive net awards of negotiated prime contracts and subcontracts subject to CAS totaling more than $25 million (of which at least one award exceeded $1 million) in the cost accounting period immediately preceding the period in which this proposal was submitted. The offeror further certifies that if such status changes before an award resulting from this proposal, the offeror will advise the Contracting Officer immediately.

[__] (4) Certificate of Interim Exemption.

The offeror hereby certifies that (i) the offeror first exceeded the monetary exemption for disclosure, as defined in (3) of this subsection, in the cost accounting period immediately preceding the period in which this offer was submitted and (ii) in accordance with 48 CFR, Subpart 9903.202-1, the offeror is not yet required to submit a Disclosure Statement. The offeror further certifies that if an award resulting from this proposal has not been made within 90 days after the end of that period, the offeror will immediately submit a revised certificate to the Contracting Officer, in the form specified under subparagraph (c)(1) or (c)(2) of Part I of this provision, as appropriate, to verify submission of a completed Disclosure Statement.

CAUTION: Offerors currently required to disclose because they were awarded a CAS-covered prime contract or subcontract of $25 million or more in the current cost accounting period may not claim this exemption (4). Further, the exemption applies only in connection with proposals submitted before expiration of the 90-day period following the cost accounting period in which the monetary exemption was exceeded.

II. COST ACCOUNTING STANDARDS -- ELIGIBILITY FOR MODIFIED CONTRACT COVERAGE

If the offeror is eligible to use the modified provisions of 48 CFR, Subpart 9903.201-2(b) and elects to do so, the offeror shall indicate by checking the box below. Checking the box below shall mean that the resultant contract is subject to the Disclosure and Consistency of Cost Accounting Practices clause in lieu of the Cost Accounting Standards clause.

[__] The offeror hereby claims an exemption from the Cost Accounting Standards clause under the provisions of 48 CFR Subpart 9903.201-2(b) and certifies that the offeror is eligible for use of the Disclosure and Consistency of Cost

Accounting Practices clause because during the cost accounting period immediately preceding the period in which this proposal was submitted, the offeror received less than $25 million in awards of CAS-covered prime contracts and subcontracts, or the offeror did not receive a single CAS-covered award exceeding $1 million. The offeror further certifies that if such status changes before an award resulting from this proposal, the offeror will advise the Contracting Officer immediately.

CAUTION: An offeror may not claim the above eligibility for modified contract coverage if this proposal is expected to result in the award of a CAS-covered contract of $25 million or more or if, during its current cost accounting period, the offeror has been awarded a single CAS-covered prime contract or subcontract of $25 million or more.

III. ADDITIONAL COST ACCOUNTING STANDARDS APPLICABLE TO EXISTING CONTRACTS

The offeror shall indicate below whether award of the contemplated contract would, in accordance with subparagraph (a)(3) of the Cost Accounting Standards clause, require a change in established cost accounting practices affecting existing contracts and subcontracts.

|___| YES |_X_| NO

**K.20 ORGANIZATIONAL CONFLICT OF INTEREST CERTIFICATION (EPAAR 1552.209-72) (APR 1984)**

The Offeror [ ] is **[X] is not** aware of any information bearing on the existence of any potential organizational conflict of interest. If the Offeror is aware of information bearing on whether a potential conflict may exist, the Offeror shall provide a disclosure statement describing this information. (See Section L of the solicitation for further information.)

**K.21 GENERAL FINANCIAL AND ORGANIZATIONAL INFORMATION (EPAAR 1552.215-76) (APR 1984)**

Offerors or quoters are requested to provide information regarding the following items in sufficient detail to allow

a full and complete business evaluation. If the question indicated is not applicable or the answer is none, it should be annotated. If the Offeror has previously submitted the information, it should certify the validity of that data currently on file at EPA or update all outdated information on file.

(a) Contractor's Name: **Shepard-Patterson and Associates .**

(b) Address (If financial records are maintained at some other location, show the address of the place where the records are kept): **15 East Ridge Pike, Suite 415, Conshohocken, PA, 19438**

(c) Telephone Number: **(610) 941-9010**

(d) Individual(s) to contact re this proposal: ............

**Michael C. Genna, Executive VP and CFO, (610)941-9010**
**Glenn I. Downer, Program Manager,(703)412-5072**

(e) Cognizant Government:

Audit Agency: **DCAA**.......................................

Address: **1421 Cherry Street, Philadelphia, PA 19102** ......

Auditor: **Bert Schackecnan Jr** ............................

(f) (1) Work Distribution for the Last Completed Fiscal Accounting Period:

Sales:

Government cost-reimbursement type prime contracts and subcontracts: **$7,800,000**

Government fixed-price prime contracts and subcontracts: **$1,000,000**

Commercial Sales:

**$2,000,000**

Total Sales:
**$10,800,000**

(2) Total Sales for first and second fiscal years immediately preceding last completed fiscal year.

Total Sales for First Preceding Fiscal Year
**$10,082,114**

Total Sales for Second Preceding Fiscal Year
**$6,005,624**

(g) Is company a separate rate entity or division?

**No**.....................................................

If a division or subsidiary corporation, name parent company:

**None**.....................................................

(h) Date Company Organized: **June 1986**...................

(i) Manpower:

Total Employees:
**128**.................................

Direct:
**111**.........................................

Indirect:
**17**.........................................

Standard Work Week (Hours):
**40**..........................

(j) Commercial Products: **Information Technology Support Services: Legacy Mainframe Programming, Client/Server/Network Services (including hotlines and Web page/database support), Information Security Services, Logistics Support Services, and Training Services**

(k) Attach a current organizational chart of the company

## Corporate Structure




(1) Description of Contractor's system of estimating and accumulating costs under Government contracts. (Check appropriate blocks.)

Estimated/

Standard
Actual Cost

Cost

Estimating System

Job Order ...X...

...X....

Process .......

........

Accumulating System

Job Order ...X...

...X....

Process .......

........

Has your cost estimating system been approved by any Government agency?

Yes ....... No ....X.....

If yes, give name and location of agency: ............

..........................................

Has your cost accumulation system been approved by any Government agency?

Yes .**X**...... No ..........

If yes, give name and address of agency:
**DCAA**..............

**615 Chestnut Street, Suite 1000, Philadelphia, PA, 19106-4498**

(m) What is your fiscal year period? (Give month-to-month dates):

**January through December.(Calendar Year)**...................

What were the indirect cost rates for your last completed fiscal year?

| Fiscal Year | Indirect Cost Rate | Basis of Allocation |
|---|---|---|
| Fringe Benefits | **28.09%.** | **Payroll $.** |
| Overhead | **Various *** | **Direct**.... |
| G&A Expense | **13.91%.** | **Cost Input** |
| Other | **N/A....** | **N/A.......** |

(n) Have the proposed indirect cost rate(s) been evaluated and accepted by any Government agency? Yes ..X...... No ...........

*** Multiple overhead pools**

If yes, name and location of the Government agency:

**DCAA,**
**Philadelphia,PA.**.....................................

Date of last preaward audit review by a Government agency:
.

(If the answer is no, data supporting the proposed rates must accompany the cost or price proposal. A breakdown of the items comprising overhead and G&A must be furnished.)

(o) Cost estimating is performed by:
Accounting Department ....................................

Contracting Department ..................................
Other ..............................................

(describe).

(p) Has system of control of Government property been approved by a Government agency?

Yes ..**X**..... No .........

If yes, name and location of the Government agency:

**Health Care Financing Administration, Baltimore, MD**

(q) Purchasing System:

FAR 44.302 requires EPA, where it is the cognizant Government agency, to conduct a Contractor Purchasing System Review for each contractor whose sales to the Government, using other than sealed bid procedures, are expected to exceed $10 million (annual billings) during the next twelve months. The $10 million sales threshold is comprised of prime contracts, subcontractors under Government prime contracts, and modifications (except when the negotiated price is based on established catalog or market prices or is set by law or regulation). Has your purchasing system been approved by a Government agency?

**N/A**, Yes ..... No .........

If yes, name and location of the Government agency:

..............................................................

Period of Approval:
........................................

If no, do you estimate that your negotiated sales to the Government during the next twelve months will meet the $10 million threshold?

**N/A**, Yes ..... No .........

If you respond yes to the $10 million threshold question, is EPA the cognizant agency for your organization based on the preponderance of Government contract dollars?

Yes ..... No .........

If EPA is not your cognizant Government agency, provide the name and location of the cognizant agency....................
..............................................................

Are your purchasing policies and procedures written?

Yes ..**X**... No ..........

(r) Does your firm have an established written incentive compensation or bonus plan?

Yes ..**X**... No ..........

**K.22 SOCIAL SECURITY NUMBERS OF CONSULTANTS AND CERTAIN SOLE PROPRIETORS AND PRIVACY ACT STATEMENT (EPAAR 1552.224-70) (APR 1984)**

(a) Section 6041 of Title 26 of the U.S. Code requires EPA to file Internal Revenue Service (IRS) Form 1099 with respect to individuals who receive payments from EPA under purchase orders or contracts. Section 6109 of Title 26 of the U.S. Code authorizes collection by EPA of the social security numbers of such individuals for the purpose of filing IRS Form 1099. Social security numbers obtained for this purpose will be used by EPA for the sole purpose of filing IRS Form 1099 in compliance with Section 6041 of Title 26 of the U.S. Code.

(b) If the offeror or quoter is an individual, consultant, or sole proprietor and has no Employer Identification Number, insert the offeror's or quoter's social security number on the following line.

..................................

**K.23 CONTROL AND SECURITY OF FEDERAL INSECTICIDE, FUNGICIDE, AND RODENTICIDE ACT CONFIDENTIAL BUSINESS INFORMATION (EPAAR 1552.235-72) (APR 1996)**

The offeror certifies that--

the Contractor and its employees have read and are familiar with the requirements for the control and security of Federal Insecticide, Fungicide, and Rodenticide Act confidential business information contained in the manual entitled "Federal Insecticide, Fungicide, and Rodenticide Act Confidential Business Information Security Manual."

(See also 1552.235-77 elsewhere in this solicitation.)

**Shepard-Patterson certifies that all full-time employees who will have contact with the public or Government agencies have read and are familiar with the FIFR Act confidential business information Security Manual.**

**K.24 CONTROL AND SECURITY OF TOXIC SUBSTANCES CONTROL ACT CONFIDENTIAL BUSINESS INFORMATION (EPAAR 1552.235-74) (APR 1996)**

The offeror certifies that--

--the Contractor and its employees have read and are familiar with the requirements for the control and security of Toxic Substances Control Act confidential business information contained in the manual entitled "Toxic Substances Control Act Confidential Business Information Security Manual." (See also 1552.235-78 elsewhere in this solicitation.)

**Shepard-Patterson certifies that all full-time employees who will have contact with the public or Government agencies have read and are familiar with the Toxic Substances Control Act.**

**K.25 SIGNATURE BLOCK (EP 52.299-900) (APR 1984)**

I hereby certify that the responses to the above Representations, Certifications and other statements are accurate and complete.

Signature: Michael C. G

**Michael C. Genna**

Title: **Executive VP and CFO**

Date: 3/30/98

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| | | | |
|---|---|---|---|
| 1. CONTRACT ID CODE | | | PAGE OF PAGES 1 of 7 |
| 2. AMENDMENT/MODIFICATION NO. .3 | 3. Effective Date SEE Page 1a | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |

6. ISSUED BY MAR-380 CODE:
U.S. DOT / MARITIME ADMINISTRATION
MAR-380 ROOM 7310
400 SEVENTH STREET S. W.
WASHINGTON, DC 20590

7. ADMINISTERED BY (If other than Item 6) CODE:
POC: R. JACKSON (202) 366-0284

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and Zip Code)
U.S. SMALL BUSINESS ADMINISTRATION
Philadelphia Regional Office
900 Market Street, 5th Floor
Philadelphia, Pennsylvania 19107

SHEPARD PATTERSON & ASSOCIATES, INC.
15 East Ridge Pike, Suite 220
Conshohocken, PA 19428

9B. DATED (SEE ITEM 11)

X 10A. MODIFICATION OF CONTRACT/ORDER NO.
DTMA91-95-C-00024

10B. DATED (SEE ITEM 13)
March 27, 1995

CODE | FACILITY CODE

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ___ is extended, ___ is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning ___ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X | D. OTHER (Specify type of modification an authority) Option to Extend the Terms of the Contract Services FAR 6.302-5 41 U.S.C. 253(c)(5) and 40 U.S.C. 253(c)(5). |

E. IMPORTANT: Contractor ___ is not, X is required to sign this document and return 4 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

SEE ATTACHED PAGES (Page 1a, Signature Page, through Page 7)

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| | |
|---|---|
| 15A. NAME AND TITLE OF SIGNER (Type or print) SAMUEL J. PATTERSON President | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) WAYNE A. CUTRELL Contracting Officer |
| 15B. CONTRACTOR/OFFEROR (Signature of person authorized to sign) — 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA BY (Signature of Contracting Officer) — 16C. DATE SIGNED |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-1

G

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53-243

TRIPARTITE AGREEMENT

MODIFICATION NO. 0023 TO
PRIME CONTRACT NO. DTMA91-95-C-00024
SUBCONTRACT SBA -0303-95-1-00055

SIGNATURE PAGE

SUBCONTRACTOR:

Shepard Patterson & Associates, Inc.

BY: [signature] 5/18/98
Date

Name & Title: Samuel J. Patterson
President/CEO

SMALL BUSINESS ADMINISTRATION
UNITED STATES OF AMERICA

BY: Ollie Adams 5/20/98
Date

OLLIE ADAMS
Name & Title: CONTRACTING OFFICER

MARITIME ADMINISTRATION
UNITED STATES OF AMERICA

BY: Wayne A. Cutrell 5/18/98
Date

Name & Title: Wayne A. Cutrell
Contracting Officer

1. This modification is issued to provide five additional (1) year option periods to this contract. The current contract has one option period remaining, Option Period Four, which begins March 27, 1998 through March 26, 2000. Upon the discretion of the Contracting Officer, a written notice will be provided to the contractor giving notification of the beginning of the first of five additional one year option periods. This first period is designated Option Year Five, beginning March 27, 2000 through March 26, 2001. The option periods will be exercised at the sole discretion of the Government.

2. Modification 0017, the rental for the contract facility located at 1005 48th Street, Newport News, VA., is also hereby extended for five additional one year option periods. The facility will simultaneously be included upon the execution of each option period extension. The facility terms and conditions are also unchanged. The rate/cost sheets "Schedule B" for the additional option periods are attached, Option Periods Five - Nine.

3. The scope of work and all terms and conditions of the contract are unchanged. Funds are obligated by Delivery Orders issued under this contract, therefore no funds are committed at this time.

Contract No. DTMA91-95-C-00024

## PART I - THE SCHEDULE
## SECTION B - SUPPLIES OR SERVICES AND PRICE/COSTS

The total labor hours listed below are the maximum estimated hours/cost requireded during the 12 month contract period. The minimum for the CLINs estimated below is 10%, which is the Total Government Guaranteed Amount.(**) **There is NO base fee. There is a provisional fee of 4%, allocated from the total award fee pool, see *Section G6*.**

### OPTION YEAR FIVE PERIOD

| CLIN | | | | |
|---|---|---|---|---|
| 0006 | **Option Year Five** - Non-personal Logistics Services in support of the Ready Reserve Force (RRF). Labor categories, services as specified in Section C. | | | |
| | **Total Hours** | **32,000 Hours** | 1 LOT | $ NSP* |
| 0006AA | **Total Estimated Cost For 32,000 Labor Hours** | | 1 LOT | $1,122,982.00 |
| 0006AB | **Other Direct Cost** (Includes G&A) | | | $ 80,000.00 |
| | **Total Estimated Cost** | | | $1,202,982.00 |
| 0006AC | **Total Award Fee Pool** | | | $ 87,783.00 |
| | **Total Option Year Five Amount** | | | **$1,290,765.00** |
| ** | Total Guarantee for Option Year Five | | | $ 129,076.50 |

*Not Separately Priced

Contract No. DTMA91-95-C-00024

## PART I - THE SCHEDULE
## SECTION B - SUPPLIES OR SERVICES AND PRICE/COSTS

The total labor hours listed below are the maximum estimated hours/cost requireded during the 12 month contract period. The minimum for the CLINs estimated below is 10%, which is the Total Government Guaranteed Amount.(**) **There is NO base fee. There is a provisional fee of 4%, allocated from the total award fee pool, see Section G6.**

### OPTION YEAR SIX PERIOD

| CLIN | | | |
|---|---|---|---|
| 0007 | **Option Year Six** - Non-personal Logistics Services in support of the Ready Reserve Force (RRF). Labor categories, services as specified in Section C. | | |
| | **Total Hours** 23,000 Hours | 1 LOT | $ NSP* |
| 0007AA | **Total Estimated Cost For 23,000 Labor Hours** | 1 LOT | $ 748,316.00 |
| 0007AB | **Other Direct Cost (Includes G&A)** | | $ 60,000.00 |
| | **Total Estimated Cost** | | $ 808,316.00 |
| 0007AC | **Total Award Fee Pool** | | $ 57,718.00 |
| | **Total Option Year Six Amount** | | **$ 866,034.00** |
| ** | Total Guarantee for Option Year Six | | $ 86,603.40 |

*Not Separately Priced

Contract No. DTMA91-95-C-00024

## PART I - THE SCHEDULE
## SECTION B - SUPPLIES OR SERVICES AND PRICE/COSTS

The total labor hours listed below are the maximum estimated hours/cost requireded during the 12 month contract period. The minimum for the CLINs estimated below is 10%, which is the Total Government Guaranteed Amount.(**) There is NO base fee. **There is a provisional fee of 4%, allocated from the total award fee pool, see Section G6.**

### OPTION YEAR SEVEN PERIOD

| CLIN | | | | |
|---|---|---|---|---|
| 0008 | **Option Year Seven** - Non-personal Logistics Services in support of the Ready Reserve Force (RRF). Labor categories, services as specified in Section C. | | | |
| | **Total Hours** | 17,000 Hours | 1 LOT | $ NSP* |
| 0008AA | **Total Estimated Cost For 17,000 Labor Hours** | | 1 LOT | $ 334,669.00 |
| 0008AB | **Other Direct Cost** (Includes G&A) | | | $ 45,000.00 |
| | **Total Estimated Cost** | | | $ 379,669.00 |
| 0008AC | **Total Award Fee Pool** | | | $ 27,528.00 |
| | **Total Option Year Seven Amount** | | | **$ 407,197.00** |
| ** | Total Guarantee for Option Year Seven | | | $ 40,719.70 |

*Not Separately Priced

Contract No. DTMA91-95-C-00024

## PART I - THE SCHEDULE
## SECTION B - SUPPLIES OR SERVICES AND PRICE/COSTS

The total labor hours listed below are the maximum estimated hours/cost requireded during the 12 month contract period. The minimum for the CLINs estimated below is 10%, which is the Total Government Guaranteed Amount.(**) **There is NO base fee. There is a provisional fee of 4%, allocated from the total award fee pool, see Section G6.**

### OPTION YEAR EIGHT PERIOD

| CLIN | | | | |
|---|---|---|---|---|
| 0009 | **Option Year Eight** - Non-personal Logistics Services in support of the Ready Reserve Force (RRF). Labor categories, services as specified in Section C. | | | |
| | **Total Hours** | **7,000 Hours** | 1 LOT | $ NSP* |
| 0009AA | **Total Estimated Cost For 7,000 Labor Hours** | | 1 LOT | $ 207,962.00 |
| 0009AB | **Other Direct Cost** (Includes G&A) | | | $ 23,000.00 |
| | **Total Estimated Cost** | | | $ 230,962.00 |
| 0009AC | **Total Award Fee Pool** | | | $ 18,400.00 |
| | **Total Option Year Eight Amount** | | | **$ 249,362.00** |
| ** | Total Guarantee for Option Year Eight | | | $ 24,936.20 |

*Not Separately Priced

Contract No. DTMA91-95-C-00024

## PART I - THE SCHEDULE
## SECTION B - SUPPLIES OR SERVICES AND PRICE/COSTS

The total labor hours listed below are the maximum estimated hours/cost requireded during the 12 month contract period. The minimum for the CLINs estimated below is 10%, which is the Total Government Guaranteed Amount.(**) _ **There is NO base fee. There is a provisional fee of 4%, allocated from the total award fee pool, see Section G6.**

### OPTION YEAR NINE PERIOD

| CLIN | | | | |
|---|---|---|---|---|
| 0010 | **Option Year Nine** - Non-personal Logistics Services in support of the Ready Reserve Force (RRF). Labor categories, services as specified in Section C. | | | |
| | **Total Hours** | **4,000 Hours** | 1 LOT | $ NSP* |
| 0010AA | **Total Estimated Cost For 4,000 Labor Hours** | | 1 LOT | $ 162,769.00 |
| 0010AB | **Other Direct Cost** (Includes G&A) | | | $ 10,000.00 |
| | **Total Estimated Cost** | | | $ 172,769.00 |
| 0010AC | **Total Award Fee Pool** | | | $ 13,821.00 |
| | **Total Option Year Nine Amount** | | | **$ 186,590.00** |
| ** | Total Guarantee for Option Year Nine | | | $ 18,590.00 |

*Not Separately Priced

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT**

| | |
|---|---|
| 1. CONTRACT ID CODE | PAGE OF PAGES 1 of 1 |
| 2. AMENDMENT/MODIFICATION NO. 0026 | 3. Effective Date See block 16C |
| 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (if applicable) |
| 6. ISSUED BY MAR-380 CODE: U.S. DOT / MARITIME ADMINISTRATION, MAR-380 ROOM 7310, 400 SEVENTH STREET S. W., WASHINGTON, DC 20590 | 7. ADMINISTERED BY (if other than Item 6) CODE: |

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and Zip Code)

U.S. SMALL BUSINESS ADMINISTRATION
Philadelphia Regional Office
900 market Street, 5th Floor
Philadelphia, PA 19107

SHEPARD PATTERSON & ASSOC INC
15 East Ridge Pike, Suite 220
Conshohocken, PA 19428

CODE | FACILITY CODE

9B. DATED (SEE ITEM 11)

X 10A. MODIFICATION OF CONTRACT/ORDER NO. DTMA91-95-C-00024

10B. DATED (SEE ITEM 13) March 27, 1995

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers __ is extended, __ is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning __ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED TO PURSUANT TO AUTHORITY OF: |
| X | D. OTHER (Specify type of modification an authority) Contract Clause I.4, Option to Extend the Terms of the Contract Services |

E. IMPORTANT: Contractor _X_is not, __ is required to sign this document and return__ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of this modification is to extend the term of the contract for the 12 month period identified in the contract as "Option Year Four." The period of performance is extended from March 27, 1999 through March 26, 2000.

Funds are obligated by individual Delivery Orders issued under this contract, therefore, no funds are committed for this option year period extension.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| | | | |
|---|---|---|---|
| 15A. NAME AND TITLE OF SIGNER (Type or print) Samuel J. Patterson, President/CEO | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) Erica L. Williams, Contracting Officer | |
| 15B. CONTRACTOR/OFFEROR [signature] (Signature of person authorized to sign) | 15C. DATE SIGNED 4/5/99 | 16B. UNITED STATES OF AMERICA BY [signature] (Signature of Contracting Officer) | 16C. DATE SIGNED 03/25/99 |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105

**STANDARD FORM 30** (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53-243

Blumberg No. 5132 — 14

U.S. Department
of Transportation
**MARITIME
ADMINISTRATION**

400 Seventh Street, S.W.
Washington, D.C. 20590

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

March 25, 1999

SHEPARD-PATTERSON & ASSOC, INC.
Attn: Mr. Samuel Patterson, President/CEO
2002 Sproul Road, Suite 206
Broomall, PA 19008

Subject: Contract DTMA91-95-C-00024
Logistics Support

Dear Mr. Patterson:

Enclosed is your executed, signed copy of Modification 0026 exercising **Option Year Four** of the subject contract.

Please acknowledge receipt below and return a copy of this letter to:

U.S. Department of Transportation
Maritime Administration, MAR-380
Office of Acquisition, Rm 7310
Attn: Erica L. Williams
400 – 7th Street, S.W.
Washington, D.C. 20590

Sincerely,

Erica L. Williams
Contracting Officer
Enclosure

Acknowledgement of receipt:

Samuel J. Patterson
Name

President / CEO
Title

4/5/99
Date