No. 06-150C - Corrected
(Judge Block)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

VERIDYNE CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT/COUNTER-CLAIMANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

STEVEN J. GILLINGHAM
Assistant Director

ROBERT E. CHANDLER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 514-4678
Fax: (202) 514-8624

Attorneys for Defendant

Of Counsel:
Janis Rodriguez
Office of Chief Counsel
Department of Transportation

March 26, 2007

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT/COUNTER-CLAIMANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II. The Contract Between The Government And Veridyne Is Void Ab Initio . . . . . . 8

III. Veridyne's Claims Pursuant To The Contract Are Forfeited As A Result Of Veridyne's Fraud In Procuring The Contract . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV. Veridyne May Not Recover Pursuant To A Theory Of Equitable Estoppel . . . . 17

V. The Contract Was Not Subject To Institutional Ratification . . . . . . . . . . . . . . . . 20

VI. The Court Should Grant Summary Judgment In Favor Of The Government With Respect To Veridyne's Claim For Breach Of Contract . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

APPENDIX

Declaration of Benedict Burnowski . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Exhibit 1 - Contract DTMA91-95-C-00024 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Exhibit 2 - Modification 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67
Exhibit 3 - Correspondence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75
Exhibit 4 - Notice that Contract is Void . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

Declaration of Kevin Durkin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86

## TABLE OF AUTHORITIES

### CASES

AT & T Co. v. United States,
177 F.3d 1368 (Fed. Cir. 1999) .......... 13

AT & T Communications, Inc. v. Wiltel, Inc.,
1 F.3d 1201 (Fed. Cir. 1993) .......... 3

Ab-Tech Construction, Inc. v. United States,
31 Fed. Cl. 429 (1994) .......... 8, 9, 15

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .......... 8

Arlington Trust Co. v. United States,
100 F. Supp. 817 (Ct. Cl. 1951) .......... 15

Atlantic National Bank v. United States,
536 F.2d 1354 (Ct. Cl. 1976) .......... 18

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .......... 8

Digicon v. United States,
56 Fed. Cl. 425 (2003) .......... 20

Furay v. United States,
34 Ct. Cl. 171, 173-74 (1899) .......... 15

Godley v. United States,
5 F.3d 1473 (Fed. Cir. 1993) .......... 8, 11

Godley v. United States,
26 Cl. Ct. 1075, 1081 (1992), rev'd on other grounds, 5 F.3d 1473
(Fed. Cir. 1993) .......... 20

Henry v. United States,
870 F.2d 634 (Fed. Cir. 1989) .......... 18

Ingalls Shipbuilding, Inc. v. United States,
13 Cl. Ct. 757, 760-67 (1987), rev'd on other grounds, 857 F.2d 1448 (Fed. Cir. 1988) .......... 14

Ingalls Shipbuilding, Inc. v. United States,
21 Cl. Ct. 117, 122 (1990) .......... 15

Janowski v. United States,
133 F.3d 888 (Fed. Cir. 1998) .......... 20

J.E.T.S., Inc. v. United States,
838 F.2d 1196 (Fed. Cir. 1988) .......... 9, 12

K&R Engineering Inc. v. United States,
616 F.2d 469 (Ct. Cl. 1980) .......... 9, 13, 14

Kamen Soap Prods. Co. v. United States,
124 F. Supp. 608 (Ct. Cl. 1954) .......... 15

Lipman v. Dickinson,
174 F.3d 1363 (Fed. Cir. 1999) .......... 16

Little v. United States,
138 Ct. Cl. 773 (1957) .......... 15

Long Island Savings Bank v. United States,
476 F.3d 917 (2007) .......... 16

Long v. Sears Roebuck & Co.,
105 F.3d 1529 (3rd Cir. 1997) .......... 20

Molins PLC v. Textron, Inc.,
48 F.3d 1172 (Fed. Cir. 1995) .......... 16

Noble v. National Mines Corp.,
774 F.2d 144 (6th Cir. 1985) .......... 20

O'Brien Gear & Machine Co. v. United States,
219 Ct. Cl. 187, 591 F.2d 666 (1979) .......... 14

Pan American Petroleum and Transport Co. v. United States,
273 U.S. 456 (1927) .......... 8

Precision Instrument Mfg. Co. V. Automotive Machinery Co.,
324 U.S. 806 (1945) ........................................ 20

Silverman v. United States,
679 F.2d 865 (1982) ........................................ 21

Smart Business Machines Inc. v. United States,
72 Fed. Cl. 706 (2006) ........................................ 19

SmithKline Beacham Corp. v. Apotex Corp.,
403 F.3d 1331 (Fed. Cir. 2005) ........................................ 8

Steel Box Co. V. United States,
49 Ct. Cl. 421, 440 (1914) ........................................ 9

Rockwell Int'l Corp. v. United States,
8 Cl. Ct. 662, 664 (1983) ........................................ 13

Teas v. Kimball,
257 F.2d 817 (5th Cir. 1958) ........................................ 20

United States v. Acme Process Equipment Co.,
385 U.S. 138 (1966) ........................................ 8

United States v. Mississippi Valley Generating Co.,
364 U.S. 520 (1961) ........................................ 8, 9, 11, 21

Walters v. Village of Colfax,
466 F. Supp.2d 1046 (C.D. Ill. 2006) ........................................ 20

Zacharin v. United States,
213 F.3d 1366 (Fed. Cir. 2000) ........................................ 18

## STATUTES

**Code for Federal Regulations**

13 C.F.R. 124.506(d) ........................................ 11, 12, 17

**United States Codes**

15 U.S.C. § 637(a)(1)(D) ........................................ 3, 11, 20

28 U.S.C. § 2514 .......................................................................................................... passim

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VERIDYNE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-150C |
| v. | ) | (Judge Block) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT/COUNTER-CLAIMANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

This case involves a claim by Veridyne Corporation ("Veridyne") for payment pursuant to a contract extension with the Government that Veridyne procured through fraud. Veridyne has filed a motion for summary judgment in the amount of $2,267,163.96 for unpaid invoices under the contract. Because of Veridyne's fraud, however, the contract was void ab initio. As a result, the United States is not liable for the amounts claimed by Veridyne and is entitled to recover from Veridyne the $31,134,931.12 it paid pursuant to the void contract. We therefore respectfully request that the Court find the contract void ab initio and grant summary judgment in favor of the United States on Counts I, II and III of Veridyne's complaint and on the United States' counterclaim in fraud in the amount of $31,134,931.12. In addition, we respectfully request that the Court find that Veridyne's claims have been forfeited pursuant to § 2514 and grant summary judgment in favor of the United States on Counts I, II and III of Veridyne's complaint.

The Government also moves for summary judgment with respect to Count III of Veridyne's complaint, for breach of contract, on the ground that, even if the contract were

deemed not to be void, the Government did not breach the contract. The contract called for the Government to purchase a minimum dollar amount of services in each year of its existence, and the summary judgment evidence reflects that the Government made the required purchases. As Veridyne acknowledges, the Government had no further obligation. We therefore respectfully request that the Court grant summary judgment in favor of the United States with respect to Count III of Veridyne's complaint.

## STATEMENT OF FACTS

On March 14, 1995, the Department of Transportation, Maritime Administration ("MARAD") awarded a logistics support contract to the Small Business Administration (the "SBA"). SBA, in turn, awarded a subcontract (the "contract") on March 27, 1995 to Veridyne (then doing business as Sheppard-Patterson and Associates) under the SBA 8(a) program, which sets aside government contracts for small businesses owned by socially and economically disadvantaged individuals. Burnowski Decl. ¶ 3, 4, Exh. 1.[1] Veridyne was a qualified contractor under section 8(a) at the time. Id. at ¶ 5. The contract was for supporting the Ready Reserve Force, a fleet of ships kept in a state of constant readiness for use in national emergencies. Id. at ¶ 6. The contract had one base year, 1995-1996, with four option years exerciseable at MARAD's discretion. Id. The contract was a combined indefinite delivery, indefinite quantity costs-plus-award-fee contract. Id.

The contract projected that the total payment to Veridyne for all five years of the contract

[1]References herein to "Decl." refer to the declaration of the named declarant, to "Exh." refer to exhibits to a declaration, to "Compl." refer to Plaintiff's Amended Complaint filed May 16, 2006, to "Pl. Mot." refer to Plaintiff's Motion for Partial Summary Judgment and Memorandum of Law filed November 13, 2006, to "Pl. Reply to Counterclaim" refers to the Plaintiff's Reply to Defendant's Amended Counterclaim filed November 29, 2006.

would be approximately $21 million. Id., Exh. 1, A5. In fact, the Government paid Veridyne $20,324,289.15 over the five years of the contract. Id. at ¶ 7. The Government paid $2,582,051.20 under the initial contract (1995-96), $3,774,669.32 in the first option year (1996-97), $4,316,679.61 in the second option year (1997-98), $4,036,100.25 in the third option year (1998-99) and $5,266,649.04 in the fourth option year (1999-2000). Id.

By early 1998, Veridyne recognized that it would soon “graduate” from the 8(a) program and, thus, would not be eligible for future contracts awarded pursuant to the program. Patterson Decl. ¶ 19. If the contract remained part of the 8(a) program and were competed during the last year of its performance (1999-2000), then Veridyne would not be eligible for the award. Burnowski Decl. ¶ 8. So that Veridyne could continue to perform contract services, Veridyne and MARAD officials agreed to execute a contract modification (“Modification 23") prior to Veridyne’s graduation from the 8(a) program that would extend the existing contract for five additional years. Patterson Decl. ¶ 19-20. By law, such a contract modification[2] may not be issued without competitive bidding unless the value of the modification is less than $3 million, or some other exemption from the competition requirements exists. 15 U.S.C. § 637(a)(1)(D). Veridyne was informed that the contract could only be extended if the value of the extension did not exceed $3 million. Pl. Reply to Counterclaim ¶ 73.

Veridyne submitted its proposal for Modification 23 to MARAD on March 30, 1998. Burnowski Decl. ¶ 10. In its proposal, Veridyne indicated that “[w]e understand that the scope

[2] Because Modification 23 required services beyond the scope of those that could be added to the original contract through its changes clause, it is deemed to be an “out of scope” contract modification. AT & T Communications, Inc. v. Wiltel, Inc., 1 F.3d 1201, 1205 (Fed. Cir. 1993). An out of scope contract modification is subject to the same competition requirements as the original contract. Id.

of the work will remain the same as is established in the current contract ... ." Id. at ¶ 10. Additionally, its proposal stated, "All contract terms and conditions are the same, and the original scope and technical content remain intact." Id. In order to stay below the sole source threshold, however, Veridyne submitted a certified proposal for the five year extension priced at $2,999,948, notwithstanding the fact that experience with the contract showed its costs for the same services to be about three to four million dollars annually. Burnowski Decl. ¶ 10. Veridyne accomplished this by significantly underestimating the amount of labor hours and other costs necessary for performance of the contract. Burnowski Decl. ¶ 11. The following compares Veridyne's estimate of labor hours and actual labor hours for the first five years of the contract to the same estimate contained in Veridyne's proposal for the five years covered by the extension:

| **Years 1-5** | | | **Years 6-10** | |
|---|---|---|---|---|
| | Est. | Act. | | Est. |
| Initial Contract | 46,000 | 36,505 | Option Year 5 | 31,826 |
| Option Year 1 | 58,800 | 40,819 | Option Year 6 | 20,124 |
| Option Year 2 | 69,920 | 47,253 | Option Year 7 | 8,892 |
| Option Year 3 | 69,920 | 57,568 | Option Year 8 | 6,084 |
| Option Year 4 | 69,920 | 58,340 | Option Year 9 | 3,944 |

Burnowski Decl. ¶ 12. Veridyne's proposal did not explain why its labor estimates for the contract extension years were so significantly lower than its previous estimates and actual experience, notwithstanding the fact that the proposal purportedly assumed the same scope of work.

Modification 23 was executed by Veridyne and MARAD on May 18, 1998 and by SBA on May 20, 1998; it became effective on March 27, 2000. Burnowski Decl. ¶ 13, Exh. 2, A68. Like Veridyne's proposal, Modification 23 reflected estimated costs of $2,999,948, but stated

that "[t]he scope of work and all terms and conditions of the contract are unchanged." Patterson Decl., Exh. F. Also like the proposal, Modification 23 contained a disproportionately low estimate of labor hours:

| | |
|---|---|
| Option Year 5 | 32,000 |
| Option Year 6 | 23,000 |
| Option Year 7 | 17,000 |
| Option Year 8 | 7,000 |
| Option Year 9 | 4,000 |

Burnowski Decl., Exh. 2, A70-74.

Within six months of the beginning of work under Modification 23, Veridyne had billed the Government more than the entire estimated cost of the modification for all five years. Burnowski Decl. ¶ 14. The amount of money spent pursuant to Modification 23 from its inception in March 2000 to December 2004 was $31,134,931.12. Id. On a year by year basis, the Government paid Veridyne:

| | | |
|---|---|---|
| Option Year 5 | 2000-2001 | $7,099,213.61 |
| Option Year 6 | 2001-2002 | $7,229,004.53 |
| Option Year 7 | 2002-2003 | $6,906,239.30 |
| Option Year 8 | 2003-2004 | $6,599,865.97 |
| Option Year 9 | 2004-2005 | $3,300,607.71 |

Burnowski Decl. ¶ 14.

As costs under the contract ran well in excess of the amounts set forth in Modification 23, Veridyne proposed to amend the contract to reflect more realistic amounts. Id. at ¶ 16, Exh. 3. When Veridyne and MARAD began negotiations over the proposed amendment ("Proposed Modification 35"), concerns arose within MARAD that the estimates provided by Veridyne may have been fraudulent. Id. at ¶ 17. The matter was referred to the Department of Transportation,

Officer of the Inspector General (the "Inspector General") for investigation in the summer of 2001. Id. at ¶ 17. Proposed Modification 35 was never executed by MARAD. Id. at ¶ 18.

The Inspector General's office interviewed, among others, Samuel Patterson, Veridyne's founder and CEO, and Michael Genna, the former CFO for the company. Durkin Decl. ¶ ¶ 4, 5, 6. In his first interview, Mr. Patterson disavowed any personal involvement in the estimate, asserted that it was all accomplished by Mr. Genna, and maintained that the $2.999 million estimate was a "good" estimate. Id. at ¶ 4. Mr. Genna, in contrast, informed Inspector General investigators that he was aware that the estimate was, in his words, "not a good faith estimate" and that "the [pricing] model had been constructed in a way to keep the bid under $3 million." Id. at ¶ 5. He told the investigators that the estimate was based solely upon Mr. Patterson's instruction to keep it under $3 million and that Mr. Patterson had made adjustments to the estimate in order to keep it below the threshold. Id. When Mr. Patterson was re-interviewed and confronted with Mr. Genna's statements, he acknowledged the accuracy of Mr. Genna's account. Id. at ¶ 6. He stated that he knew the estimate had been inaccurate. Id. at ¶ 6. In his words, "[a]t the end of the day, that estimate sucked." Id. at ¶ 6. He also told agents that he believed such false estimates were common practice in the 8(a) community, that he had provided other false estimates to the Government and that "It does not matter that [Veridyne] limited competition with a bad estimate because we provided a good service." Id. The Inspector General issued a report in September 2004 that concluded that the cost estimate submitted to MARAD by Veridyne for Modification 23 was fraudulent and only served to secure the contract under the sole source requirements of the SBA 8(a) program. Id. at ¶ 7. The Inspector General also noted nonfeasance or malfeasance on the part of several MARAD officials.

In December 2004, following the Inspector General's report, MARAD ordered a stoppage of work on the contract. Burnowski Decl. ¶ 21. At the time, Veridyne had six outstanding invoices for work already performed under the contract. Id. at ¶ 22. After MARAD ordered the work stoppage, Veridyne submitted two additional invoices. Id. MARAD refused to pay these invoices, asserting that the contract was void ab initio as a result of Veridyne's fraud. Id. at ¶ 23, Exh. 4. Veridyne then submitted a certified claim for payment of the outstanding invoices, which was deemed denied when the contracting officer did not issue a decision after 60 days. Id. at ¶ 24.

## SUMMARY OF ARGUMENT

Modification 23 was void ab initio as a result of Veridyne's fraudulent estimate of the labor and costs to be incurred pursuant to the contract extentsion. The United States, therefore, is not liable for the amounts claimed by Veridyne and is entitled to recover from Veridyne the $31,134,931.12 it paid pursuant to the void contract. In addition, pursuant to 28 U.S.C. § 2514, any claim Veridyne might have possessed pursuant to the contract is forfeited to the United States because its claim was established through fraud. In any event, MARAD did not breach any contract that it might have had with Veridyne.

Moreover, the Court should reject Veridyne's claims of estoppel and ratification. With respect to Veridyne's claim that the Government should be estopped to deny that it waived the sole source threshold, the facts demonstrate that Veridyne did not believe that the sole source threshold had been waived. In addition, any such belief held by Veridyne would not have been reasonable or the result of affirmative misconduct by the Government. Veridyne's claim that MARAD ratified the contract also should be rejected because a contract that is void ab initio

because it was procured through fraud cannot be ratified. And, even if this claim is not rejected, any claim pursuant to a ratified contract is deemed forfeited pursuant to 28 U.S.C. § 2514.

## ARGUMENT

### I. Standard Of Review

Summary judgment is appropriate if the evidence demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." RCFC 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SmithKline Beacham Corp. v. Apotex Corp., 403 F.3d 1331, 1337 (Fed. Cir. 2005). Once the moving party has established its initial burden, the opposing party must establish a genuine issue of material fact and cannot rest on mere allegations, but must present actual evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Issues of fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

### II. The Contract Between The Government And Veridyne Is Void Ab Initio

Under the common law doctrine of fraudulent procurement, contracts procured by fraud or in a manner otherwise contrary to law are not enforceable against the Government. United States v. Acme Process Equipment Co., 385 U.S. 138 (1966); United States v. Mississippi Valley Generating Co., 364 U.S. 520 (1961); Pan American Petroleum and Transport Co. v. United States, 273 U.S. 456 (1927). The primary purpose of this rule is "to guarantee the integrity of the Federal contracting process and to protect the public from the corruption which might lie undetectable beneath the surface of a contract conceived in a tainted transaction." Mississippi Valley, 364 U.S. at 565. Thus, contracts "tainted by fraud or wrong-doing" are generally void ab initio. Godley v. United States, 5 F.3d 1473, 1475 (Fed. Cir. 1993). So, too, are contracts

executed "in violation of statutory controls placed on the procurement process." Ab-Tech Construction, Inc. v. United States, 31 Fed. Cl. 429, 434, n.7 (1994).

Moreover, tainted contracts are void regardless of whether the particular taint to the contract has resulted in financial loss or damages to the Government. K&R Engineering Inc. v. United States, 616 F.2d 469, 475 (Ct. Cl. 1980) ("tainted contracts are disaffirmed because of 'the breach of the agent's ... duty toward those he has undertaken to represent ... and not (because of) the quantum of damage to the one or the amount of the benefit to the other.'"), quoting Steel Box Co. V. United States, 49 Ct. Cl. 421, 440 (1914). The Supreme Court has recognized that the doctrine may lead to harsh results in some cases, but has held that it is necessary in order to serve the paramount goal of maintaining the integrity of the federal procurement process. Mississippi Valley, 364 U.S. at 565. As the Court stated: "Were we to decree the enforcement of such a contract, we would be affirmatively sanctioning the type of infected bargain which the statute outlaws and we would be depriving the public of the protection which the Congress has conferred." Id. at 563.

Applying this rule, the United States Court of Appeals for the Federal Circuit has found that the making of false statements in the procurement of an 8(a) contract renders the contract void ab initio. J.E.T.S., Inc. v. United States, 838 F.2d 1196, 1200 (Fed. Cir. 1988) (award of contract to company misrepresenting itself as small business "tainted from its inception"). Fraud upon the 8(a) program is especially pernicious because it undermines not only the Federal procurement process, but also the integrity of the 8(a) program. Ab-Tech, 31 Fed. Cl. at 434. Such false statements, even when they do not result in overpayments by the Government, harm the Government and the public because they cause the Government to pay out funds in the

mistaken belief that it is furthering the aims of the 8(a) program. Id. They also harm law-abiding small and minority-owned contracting firms by denying them the opportunity to compete for work set aside as part of the 8(a) program.

Modification 23 clearly was tainted by Veridyne's false estimate for the five year extension of the contract at $2.999 million. The actual cost for the identical scope of work over the preceding five years had been $20,324,299.18, with more than $10 million of that being incurred in the first three years of the contract, prior to the execution of Modification 23. Burnowski Decl. at ¶ 7. Veridyne eclipsed its estimated cost for Modification 23 in six months, and billed over $31 million on the contract pursuant to Modification 23. Id. at ¶ 14. Mr. Genna, Veridyne's then-chief financial officer, was not able to explain how the bid could have been so much lower than the actual cost for the same work under the initial contract. Durkin Decl. ¶ 5. Moreover, he admitted that the estimate was "not a good faith estimate" and that it was designed solely with the purpose of satisfying the $3 million threshold. Id.

Mr. Patterson agreed with Mr. Genna's account and acknowledged that the estimate was not made in good faith. Id. at ¶ 6. He further acknowledged, in very strong terms, that the estimate was not accurate and that it had been designed to satisfy the $3 million threshold. Id. He indicated also that he believed Veridyne would be paid more than $2.999 million pursuant to Modification 23. Id. He also told agents that he believed such false estimates were common practice in the 8(a) community, that he had provided other false estimates to the Government and that "It does not matter that [Veridyne] limited competition with a bad estimate because we provided a good service." Id.

There clearly was a causal link between the false estimate and the award of the contract, as required by Godley in order to render a contract void ab initio. Godley, 5 F.3d at 1476. If Modification 23 had been anticipated to exceed $3 million, MARAD could not have, by law, awarded the contract extension to Veridyne. 15 U.S.C. § 637(a)(1)(D).

In addition to being tainted by fraud, the contract was awarded in violation of a statute; specifically, the contract violated 15 U.S.C. § 637(a)(1)(D), which prohibits the non-competitive award of 8(a) contracts anticipated to exceed $3 million. This violation of law is sufficient to void the contract from its inception. Section 637(a)(1)(D) is designed to ensure competition in contracting, and its purpose was defeated by Veridyne's submitting a false estimate of the amount of the contract extension in order to avoid the competition requirement triggered by the $3 million threshold. The Government, the public and 8(a) program participants can only have the benefit of competition conferred by Congress if contracts made in contravention of the statute are deemed to be void. Thus, pursuant to Mississippi Valley, a contract awarded in contravention of § 637(a)(1)(D) is void ab initio. Moreover, a causal link between the violation of the statute and the award of the contract clearly existed. Godley, 5 F.3d at 1476. If the statute had been complied with, Veridyne would not have been eligible for the award of the contract extension.

Veridyne argues that the contract is not void because the imposition of the $3 million threshold could have been waived pursuant to 13 C.F.R. 124.506(d). Pl. Mot. 5. That regulation permits the Government to award a contract without competition if there is not a reasonable expectation that there will be two bidders and the Government concludes that the sole bidder is capable of performing the requirement at a fair price. This argument fails for two

reasons. First, this argument does not change the fact that Veridyne submitted a false estimate; Veridyne's supposed lack of knowledge regarding a potential waiver relates only to Veridyne's intent to deceive the Government. But under J.E.T.S., the Government need not demonstrate that Veridyne intended to deceive MARAD by providing the false estimate. In J.E.T.S., the Court of Appeals for the Federal Circuit upheld summary judgment by this Court voiding a contract based upon the contractor's knowing false certification that it was a small business under the 8(a) program. J.E.T.S., 838 F.2d at 1201. The Court's decision was based entirely on the contractor's representation that it was a small business and the lack of record evidence that the contractor was, in fact, a small business. Id. Moreover, to the extent intent is relevant, Veridyne has failed to adduce any evidence that it actually believed that MARAD had waived the competition requirement pursuant to 13 C.F.R. 124.506(d). Indeed, its falsification of the estimate in order to remain below the sole source threshold powerfully suggests otherwise.

Veridyne also argues that it could not have known the amount of the orders MARAD would place pursuant to the contract. Pl. Mot. 5. In its cover letter submitting the proposal for Modification 23, however, Veridyne stated "This proposal is based on a representative sample of hours spread across the applicable labor categories. We understand that the scope of work will remain the same as is established in the current contract and, as is the case in the current contract, the specific tasking of work will be through issuance of Work Orders and Technical Directives." Patterson Decl., Exh. F. That contract had yielded payments to Veridyne of nearly $3 million to $4 million each year, and more than $20 million over five years. Id. at ¶ 7. Veridyne's argument that it could not have known that orders pursuant to the contract extension would exceed $3 million is unreasonable under these circumstances. It is also contradicted by

Mr. Patterson's statement to investigators that he expected to be paid more than $3 million on the contract extension. Durkin Decl. ¶ 6.

Finally, Veridyne notes that, in AT & T Co. v. United States, 177 F.3d 1368 (Fed. Cir. 1999) (en banc), the Court of Appeals for the Federal Circuit expressed reluctance to find contracts void ab initio. 177 F.3d at 1374-76. At issue in that case was an appropriation act that required the agency to certify to Congress the suitability of a firm fixed price contract before entering into such a contract to meet its research and development requirements. The agency failed to do so and a panel of the court found that the contract was void ab initio, and therefore supported the contractor's claim for damages in quasi-contract. In reversing the panel's decision, the en banc court reasoned that, "[i]nvalidation of the contract is not a necessary consequence when a statute or regulation has been contravened, but must be considered in light of the statutory or regulatory purpose, with recognition of the strong policy of supporting the integrity of contracts made by and with the United States." 177 F.3d at 1374. Here, however, policy considerations, including the preference for competition among contractors, see, e.g., Rockwell Int'l Corp. v. United States, 8 Cl. Ct. 662, 664 (1983), and against fraud, support setting aside this modification. In AT & T, there was no fraud and the statutory violation was related to a notification requirement meant to assist Congressional oversight, not forbid the contract.

Because the contract extension was void ab initio, the Government is entitled to recover consideration paid upon the contract extension without surrendering value or compensating the contractor. K & R Eng'g, 616 F.2d at 476-77. "The protection of the integrity of the federal procurement process from the fraudulent activities of unscrupulous Government contractors and

dishonest Government agents requires a refund to the Government of sums already paid to Plaintiff no less than it requires non-enforcement of contracts yet completed." Id. at 476. We respectfully request, therefore, that the Court grant summary judgment in favor of the Government on its counterclaim and award it the amount of consideration paid pursuant to Modification 23, $31,134,931.12.[3] Burnowski Decl. ¶ 15.

## III. Veridyne's Claims Pursuant To The Contract Are Forfeited As A Result of Veridyne's Fraud In Procuring The Contract

For reasons similar to those that support a claim that Modification 23 was void ab initio, Veridyne's claims are subject to forfeiture pursuant to 28 U.S.C. § 2514. Under the provisions of section 2514, "[a] claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance" of that claim. The Court of Federal Claims possesses jurisdiction to find fraud or attempted fraud, and to render judgment of forfeiture. See, e.g., O'Brien Gear & Machine Co. v. United States, 219 Ct. Cl. 187, 591 F.2d 666, 671-73 (1979); Ingalls Shipbuilding, Inc. v. United States, 13 Cl. Ct. 757, 760-67 (1987), rev'd on other grounds, 857 F.2d 1448 (Fed. Cir. 1988).

[3] Veridyne's complaint states "to the extent that Modification 0023 may have been outside the authority of the MARAD representative, Veridyne is still entitled to payment under the doctrine of quantum meruit;" Compl. ¶ 55(e). It appears, then, that Veridyne is not asserting a claim for quantum meruit relief in the event that the Court were to grant summary judgment in favor of the Government with respect to its fraud counterclaim or defense. If Veridyne contends, however, that its quantum meruit claim is applicable upon the Court's voiding the contract for reasons other than lack of authority, then we respectfully request that the Court grant summary judgment in favor of the United States with respect to Veridyne's quantum meruit claim. A plaintiff may not recover in quantum meruit for services rendered pursuant to a contract deemed void for fraud. K&R Eng'g, 616 F.2d at 475-6.

In order to prove fraud within the meaning of § 2514, the United States must show that (1) the plaintiff knowingly made false statements or claims to the United States and (2) the statements were made with the intent to deceive. Long Island Savings Bank v. United States, 476 F.3d 917, 927 (2007); Ingalls Shipbuilding, Inc. v. United States, 21 Cl. Ct. 117, 122 (1990). Fraud may be established through circumstantial evidence. Kamen Soap Prods. Co. v. United States, 124 F. Supp. 608, 620 (Ct. Cl. 1954). Establishment of these elements entitles the United States to forfeiture of the entire claim. Arlington Trust Co. v. United States, 100 F. Supp. 817, 818 (Ct. Cl. 1951); Furay v. United States, 34 Ct. Cl. 171, 173-74 (1899).

Importantly here, the fraud need not be in the actual claim submitted to the Government, but may be manifested elsewhere with regard to the contract. See Ab-Tech, 31 Fed. Cl. at 436-37 (section 2514 "requires the forfeiture of all claims arising from a contract tainted by fraud against the government."); see also Little v. United States, 138 Ct. Cl. 773 (1957). In Little, this Court stated:

> It is true that the forfeiture statute [28 U.S.C. § 2514] was not intended to forfeit an otherwise valid claim of a claimant merely because, in some other unrelated transaction, he had defrauded the Government. But where, as in the present case, fraud was committed in regard to the very contract upon which the suit is brought, this court does not have the right to divide the contract and allow recovery on part of it. Since plaintiff's claims are based entirely upon contract V3020V-241, a contract under which he practiced fraud against the Government, all of his claims under that contract will be forfeited pursuant to 28 U.S.C. § 2514.

Id. Thus, if Modification 23 is "tainted by fraud," Veridyne forfeits all of its claims arising under the contract.

Veridyne clearly submitted false estimates to the United States in its proposal and in Modification 23. As part of its proposal, Mr. Genna certified the accuracy and completeness of

the cost and pricing data. Patterson Decl., Exh. F. The pricing data submitted to the Government in Veridyne's proposal, however, was neither accurate nor complete. Moreover, Genna represented to the Government that Veridyne's proposal was based on the same scope of work established in the original contract. Id. at ¶ 10. In fact, however, Veridyne's proposal was based upon the false premise that the scope of work would significantly decrease over the years covered by Modification 23. Id. at ¶ 12. Genna's and Patterson's knowledge of the falsity of the proposal's representations is apparent from their statements to the Inspector General's agents. See pp. 5-6, 8-9, supra.

With respect to showing the intent to defraud, the Federal Circuit has stated: "'Intent need not be proven by direct evidence; it is most often proven by a showing of facts, the natural consequences of which are presumably intended by the actor. Generally, intent must be inferred from the facts and circumstances surrounding the applicant's conduct.'" Long Island Savings Bank, 476 F.3d at 931, quoting Molins PLC v. Textron, Inc., 48 F.3d 1172, 1180-81 (Fed. Cir. 1995). In addition:

> The fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent. Thus, circumstantial evidence may permit an inference of intent. In determining whether an inference of intent can be drawn from circumstantial evidence, it is proper to consider the degree of materiality of the information.

Lipman v. Dickinson, 174 F.3d 1363, 1370 (Fed. Cir. 1999).

Here, the record demonstrates that both Genna and Patterson had knowledge of the falsity of the assumptions presented in the proposal. Also, the circumstances provide powerful evidence that Patterson and Genna intended to defraud the Government. The stakes for Veridyne were extraordinarily high - if its proposal was over $3 million, Veridyne would not have been

eligible for the award of the contract extension. This was a critical contract for Veridyne. Between 1995 and 1999, Veridyne had received more than $14 million from the Government under the contract. Burnowski Decl. ¶ 7. Patterson described it as an "anchor" contract for the company, and told agents from the Inspector General's office that, "Without the [logistics support] contract, there is no Veridyne." Durkin Decl. ¶ 6. Thus, the company had a strong incentive to defraud the Government. In addition, the fact that the company's estimate was wholly out of proportion with its prior experience and just $51 below the $ 3million threshold suggests that Veridyne intended to mislead MARAD or SBA, or both, into believing that the contract satisfied the conditions for a directed award. Based upon these facts, we respectfully request that the Court grant summary judgment in favor of the Government with respect to its Special Plea in Fraud pursuant to 28 U.S.C. § 2514 and hold that all of Veridyne's claims pursuant to the contract, i.e. Counts I, II and III of Veridyne's complaint, are forfeited to the Government.

## IV. Veridyne May Not Recover Pursuant to a Theory of Equitable Estoppel

Veridyne argues that the Government should be estopped to deny that MARAD had waived the $3 million threshold pursuant to 13 C.F.R. § 124.506(d). Pl. Mot. 6-8. That section permits the award of an 8(a) contract without competition where there is not a reasonable expectation that at least two eligible 8(a) participants will submit offers at a fair price and the Government determines that an eligible participant in the 8(a) portfolio is capable of performing the requirement at a fair price. Veridyne contends that it could not have known that the Government did not waive the threshold pursuant to § 124.506(d) and that, therefore, the Government should be estopped to deny that it was waived. Id.

This argument fails for a number of reasons. First, in order to state a claim for equitable estoppel, a plaintiff must demonstrate that it lacked knowledge of the true facts. Atlantic National Bank v. United States, 536 F.2d 1354, 1359 (Ct. Cl. 1976). In this case, Veridyne is required to show that it did not know the "true fact" that the Government had not waived the threshold pursuant to § 124.506(d). Veridyne has presented no evidence, however, that it believed that the Government had done so. Veridyne does not claim that MARAD had communicated as much, or that MARAD employees engaged in conduct that reasonably led Veridyne to believe as much. Indeed, Veridyne has not even stated that it actually believed that the Government had waived the threshold. In fact, the facts suggest exactly the opposite was true - if Veridyne had believed that the $3 million threshold had been waived, then there would have been no need for Veridyne to submit a false estimate below the threshold. In addition, any contention that Veridyne believed the Government had waived the threshold is belied by its earlier contention that it believed the Government would not place orders in excess of $3 million. In other words, if Veridyne had believed that the Government would not place orders in excess of $3 million, then it would have no reason to believe that the Government had waived the $3 million threshold. Veridyne could not have believed both of those propositions, and the facts demonstrate that it believed neither of them.

Moreover, in the absence of a reason to believe the threshold had been waived, Veridyne's reliance on the fact of a waiver would have been unreasonable. Thus, it has failed to demonstrate reasonable reliance, as required in order to state a claim for equitable estoppel. Henry v. United States, 870 F.2d 634 (Fed. Cir. 1989).

In addition, in order to state a claim for equitable estoppel against the Government, a plaintiff must demonstrate that its lack of knowledge of the "true fact" resulted from affirmative misconduct by the Government. Zacharin v. United States, 213 F.3d 1366, 1371 (Fed. Cir. 2000). Veridyne has not demonstrated such affirmative misconduct. Its only allegation of misconduct is that the Government issued work orders in excess of $3 million and exercised its options with respect to the sixth through ninth years of the contract. The Government's ordering work and exercising options pursuant to the contract does not, however, amount to misconduct. These orders were placed during the time that the Inspector General's investigation was pending, and were made with the sole intention of fulfilling MARAD's logistics requirements, which were critical, given that many Ready Reserve Force vessels were activated in support of the wars in Afghanistan and Iraq. Burnowski Decl. ¶ 19. They were not, as Veridyne suggests, designed to obscure the fact that MARAD had not waived the sole source threshold. Moreover, these contract actions could not have led Veridyne to believe that the threshold had been waived because the Government's actions came after the time that any such waiver would have to have occurred. Thus, the Government has not engaged in affirmative misconduct that obscured the "true fact" that it had not waived the $3 million threshold. Nor may the Government be estopped to deny the waiver based on its silence. Smart Business Machines Inc. v. United States, 72 Fed. Cl. 706, 711 (2006).

Finally, Veridyne should not be permitted to seek any equitable remedy in this case, given that it comes to this Court with unclean hands as a result of its fraud. Precision Instrument Mfg. Co. v. Automotive Machinery Co., 324 U.S. 806 (1945). The evidence discussed in Sections II and III above demonstrates that Veridyne submitted an estimate it knew to be false in

order to remain below the $3 million threshold. Its fraud upon the Government and the public has been acknowledged by its chief executive officer and its chief financial officer. Veridyne is therefore not entitled to have this Court render equity on its behalf.

## V. The Contract Was Not Subject to Institutional Ratification

Veridyne argues that the contract was institutionally ratified by MARAD. Pl. Mot. 9-12. In support, Veridyne cites several cases for the proposition that a contract executed by a Government employee lacking contracting authority may be institutionally ratified if the agency accepts the products or services provided by the contractor. Id. at 9. In so arguing, Veridyne reflects its fundamental misunderstanding of the Government's defenses and counterclaims in this case. The Government does not contend that Modification 23 is void because the Government employees that executed it were not authorized to do so. Rather, Modification 23 is void, and Veridyne has forfeited any claim it might have had arising from the contract, because of Veridyne's fraud in procuring the contract and because the contract violates 15 U.S.C. 637(a)(1)(D).

A contract that is void ab initio may not be ratified. Long v. Sears Roebuck & Co., 105 F.3d 1529, 1535 fn. 10 (3rd Cir. 1997); Noble v. National Mines Corp., 774 F.2d 144, 147 fn. 3 (6th Cir. 1985); Teas v. Kimball, 257 F.2d 817, 825 (5th Cir. 1958); Walters v. Village of Colfax, 466 F.Supp.2d 1046, 1056 (C.D. Ill. 2006); Godley v. United States, 26 Cl. Ct. 1075, 1081 (1992) ("a contract that is obtained through the prime contractor's wrongful conduct is void ab initio and, therefore, cannot be ratified"), rev'd on other grounds, 5 F.3d 1473 (Fed. Cir. 1993). This Court and the Court of Appeals for the Federal Circuit have only found institutional ratification by the Government in cases where the plaintiff sought to overcome a lack of

contracting authority by the Government employee. Janowski v. United States, 133 F.3d 888, 892 (Fed. Cir. 1998); Silverman v. United States, 679 F.2d 865 (1982); Digicon v. United States, 56 Fed. Cl. 425, 426 (2003). Indeed, in Digicon, this Court stated that "institutional ratification occurs when the government seeks and receives benefits from an otherwise unauthorized contract." Digicon, 56 Fed. Cl. at 426 (emphasis added). Veridyne cites no cases, and the Government is not aware of any cases, where the Government has been found to have ratified a contract deemed to be void because it was procured through fraud.

If this contract is found to be ratified, it would be contrary to the rationale of the Supreme Court's decision in Mississippi Valley. The purpose behind the Mississippi Valley doctrine is to safeguard the integrity of the Federal procurement process. This goal would not be served if, as Veridyne has argued, a contractor could procure a contract through fraud and then enforce the contract on the basis that the Government had received some benefits pursuant to the contract.

Finally, pursuant to § 2514, Veridyne's claims pursuant to the contract are forfeited to the Government. Even if the contract were deemed to be ratified, then, any claim that Veridyne possessed pursuant to the ratified contract would be forfeited pursuant to § 2514. Thus, § 2514 operates as a complete defense to Veridyne's claims even if it could successfully argue that the contract has been ratified.

## VI. The Court Should Grant Summary Judgment In Favor of The Government With Respect To Veridyne's Claim for Breach of Contract

Veridyne alleges in Count III of its amended complaint that MARAD's decision to stop placing orders pursuant to the contract was a breach of that contract, and that Veridyne is entitled to lost profits resulting from the breach. Amended Compl. ¶ 65. For the reasons stated Section II of this brief, however, the contract was void ab initio and, therefore, Veridyne may not bring a

breach claim pursuant to the contract. For the reasons stated in Section III, any claim Veridyne might have had against the Government pursuant to the contract, including any breach claim, must be forfeited to the Government pursuant to 28 U.S.C. 2514 because of Veridyne's fraud in the procurement of Modification 23.

Even if the Court does not grant summary judgment based upon the arguments contained in Section II or Section III above, the Court should grant summary judgment in favor of the Government with respect to Count III of Veridyne's amended complaint because MARAD's decision not to place additional work orders is not a breach of the contract. Modification 23 required only that the Government place minimum orders totaling 10 percent of the estimated amount for each year. Burnowski Decl. ¶ 25, Exh. 2, A70-74. Indeed, Veridyne has acknowledged this in several instances. See Pl. Mot. 5, fn. 4; Pl. Prosposed Findings of Uncontroverted Fact, ¶ 27; Pl. Reply to Counterclaim ¶ ¶ 74, 75, 92 ("Modification 23 also stated that MARAD was only obligated to order TEN (10%) of each year's estimated amount, meaning the only work guaranteed to Veridyne under Modification [sic] was some $299,985.00; any additional work orders were totally discretionary on the part of MARAD."). MARAD placed, and paid Veridyne for, work orders totaling $31,134,931.12 after the execution of Modification 23. Moreover, MARAD placed orders exceeding the minimum guarantee amount for each year of Modification 23. Burnowski Decl. ¶ 25. Thus, MARAD fulfilled its requirement pursuant to Modification 23, and any additional orders were, in Veridyne's words, "totally discretionary." Accordingly, MARAD's decision to cease the issuance of further work orders, was not a breach of the contract.

**CONCLUSION**

Modification 23 was void ab initio as a result of Veridyne's fraudulent estimate of the labor and costs to be incurred pursuant to the contract extentsion. The United States is not liable for the amounts claimed by Veridyne and is entitled to recover from Veridyne the $31,134,931.12 it paid pursuant to the void contract. We therefore respectfully request that the Court find the contract void ab initio and grant summary judgment in favor of the United States on Counts I, II and III of Veridyne's complaint and on the United States' counterclaim in fraud in the amount of $31,134,931.12. We also respectfully request that the Court find that Veridyne's claims have been forfeited pursuant to 28 U.S.C. § 2514 and grant summary judgment in favor of the United States on Counts I, II and III of Veridyne's complaint. Any claim Veridyne possesses pursuant to the contract is forfeited to the United States because its claim was established through fraud.

The Government also is entitled to summary judgment with respect to Count III of Veridyne's complaint because it did not breach the contract. Modification 23 called for the Government to purchase a minimum dollar amount of services in each year, and the Government made the required purchases. As Veridyne has stated several times in its pleadings, the Government was not obligated to place any additional work orders. We therefore respectfully request that the Court grant summary judgment in favor of the United States with respect to Count III of Veridyne's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

s/ Robert E. Chandler
ROBERT E. CHANDLER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 514-4678

Attorneys for Defendant

Of Counsel:
Janis Rodriguez, Esq.
United States Department of Transportation

March 26, 2007

CERTIFICATE OF FILING

I hereby certify that on this 26th day of March 2007, a copy of the foregoing "Defendant/Counter-claimant's Response to Plaitniff's Motion for Partial Summary Judgment and Cross-motion for Summary Judgment" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Robert E. Chandler