Exhibit 1

SHEPARD PATTERSON™
MANAGING PEOPLE, SYSTEMS & INFORMATION

May 14, 2001

Mr. Benedict J. Burnowski
Contracting Officer
U.S. Department of Transportation
Maritime Administration
400 Seventh Street, S.W.
Washington, D.C. 20590

Subject: Contract DTMA91-95-C-00024, Estimates on Costs and Fee

Reference: MARAD Letter dated April 25, 2001, Same Subject

Dear Mr. Burnowski:

We appreciate your response to our proposals of October 18 and November 6, 2000 to revise cost and fee ceilings for option years 5-9 of the subject contract. We are pleased that you agree that the total estimated cost and fee for the contract should be adjusted. This letter will provide you with the information needed to satisfy your questions regarding the amounts for our proposed adjustments, and modifies our proposal where we agree with your comments.

**Topic One: Indirect Rates:**

In our October 18 and November 6 letter proposals we did not apply the rates offered by Shepard-Patterson in 1998, whereby we estimated that the overhead rate and G&A rate would decrease in each of the option years. Instead, we assumed a constant overhead of 65.4% and G&A of 14.9%. However, based on our current experience and projected expenses, we have adjusted our estimates of total costs and fees based on the reduced indirect rates in the table below, and have reflected them in the attached revised CLIN sheets. These rates were used in developing the attachments to this letter.

| | Option Year 5 | Option Year 6 | Option Year 7 | Option Year 8 | Option Year 9 |
|---|---|---|---|---|---|
| Overhead Rate: | 64.4% | 62.5% | 61.0% | 58.0% | 56.0% |
| G&A Rate: | 14.4% | 13.5% | 12.3% | 12.2% | 11.4% |



A1

6810 DEERPATH ROAD • SUITE 415 • ELKRIDGE, MD 21075 • (410) 579-1982 • FAX: (410) 579-1657

We also recognize that our 1998 proposal contained an offer to cap the indirect rates presented at that time; however, apparently after negotiations, that portion of the proposal was not made a part of Modification 23. The rates proposed in the above table are estimated rates based on our corporate experience and are not offered as capped rates.

**Topic Two: Basis for Estimates**

For a level-of-effort, term type contract with a very general scope of work, using actual costs and business projections is the most valid basis for estimating costs for the out-years. By taking this approach, Shepard-Patterson has been able to develop an extremely reliable projection for Option Years 5-9.

As noted in our letter proposal of October 18, our cost estimate for completion of Option Year 5 was basically a projection of actual costs through the first six months of the Year, multiplied times two, plus an additional amount ($879,630) for external and carry-over funding. This was derived based on planning estimates regarding the extent of the project from the MARAD program office. From our letter:

> "Now that Shepard - Patterson has been performing Option Year 5 for approximately 6 months, it appears that further upward revisions to Estimated Cost for Option Years 5 - 9 will also be required. For example, based upon actual costs (no fee) through September 15, 2000, total Option Year 5 Estimated Cost projects to approximately $7,000,000, a 27% INCREASE over the current calculated Estimated Cost funding allowance of $5,465,584 ($5,553,367 Total - $87,783 Award Fee)."

Option Year 5 is now complete and it should be noted that our actual billings of $6,956,315 of total cost vs. our original projection of $7,010,680 made in October 2000, is accurate within 0.8%. With that knowledge, we can view our additional option year cost estimates with a high degree of confidence.

We have discussed the likely level of out year service activity with MARAD Operations personnel. For option Year 6, we expect the level of activity to decrease about 1%, with less carry-over funding and no external funding, but with costs affected by an inflation rate of 4%. Activity in Option Year 7 is expected to decrease an additional 1% with no carry-over or external funding, but with costs affected by an inflation rate of 4%. Option years 8 and 9 are expected to remain constant at the level for year 7 with no carry-over or external funding, but with the 4% inflation rate continuing.

Our revised CLIN sheets reflecting the above indirect rates and our best estimate of workload are provided as an attachment. For completeness, we have also included Option Year 5 even though performance for that year has been completed.

**Topic Three: Labor Hour Estimates**

Since the Government provided no precise future workload data to use in our proposal, the labor hour estimates were derived from the cost information projected for option years 5-9 as follows:

During the first six month of Modification 23 (Period ending September 30, 2000) the cumulative hours billed equaled 32,148.5 @ $3,168,088. A ratio was established and projected for the entire option year 5, resulting in an estimate of 71,142 CLIN AA hours ($7,010,680 / $3,168,088 x 32,148.5).

Option year 6 was then computed using the same approach after removing the 4% inflation factor included in the cost. For example: $6,696,854 AA Cost / 1.04 equals $6,439,282; followed by ($6,439,282 / $7,010,680 x 71,142), which results in 65,343 CLIN AA hours. This same technique was used for option years 7,8, and 9.

**Topic Four: Maximum Award Fee Pool**

Your letter provides a counter proposal of $1,644,581 for the maximum fee for the five years vs. $2,690,490 that we proposed on October 18 (now adjusted to $2,606,551 in the attached matrix). Your position appears to be based on the following concerns, which we believe are not applicable.

1. **MARAD Concern:** Shepard-Patterson is proposing to charge the award fee on a percentage of contract cost.

   **Response:** We do not propose to "charge" award fee; rather, we have only proposed a maximum award fee pool based on an analysis of historical data, a reasonable projection of the anticipated future work and risk. We believe that this to be a legitimate and usual proposal process.

   Earned Award Fee is that amount awarded over the base fee solely at the discretion of the Government, and is totally dependent on our performance and not our cost. The earned award fee can therefore vary considerably. Since the base fee in the contract is 0%, your concern is not applicable in this instance.

2. **MARAD Concern:** The written Scope of Work has remained the same for the duration of the contract; thus the award fee pool should only rise at the same rate as inflation.

   **Response:** The fact that the written Scope of Work in the contract has not changed does not mean that the Government has not changed the work over time. In a term type, level-of-effort contract, where the written Scope is always general, the work is changed when the amount of work originally projected by the Government increases, even if the type of work does not.

We have seen that the amount of essential work has increased extensively, and that even the type of work has been changed beyond that originally contemplated. In our letter of October 18, we noted:

- Major logistics overhauls have been conducted or started on 5 RRF ships.
- Logistics overhauls are nearly completed on two school ships, and started on a third.
- Complete Logistics overhauls have been completed on the MCDS systems on all seven ships equipped with the system, bringing the system up to the support levels established by the US Navy.
- Support has been provided to the OPDS system and ships in both pre and post exercise logistics support activities.
- Logistics Local Area Networks (LANs) have been ordered and installed and supported in two of the Region Logistics Shore Based Spares warehouses.
- Modernization of the logistics information system applications has increased the number of program applications in design and development.

These factors all remain valid today and project so into the future. The scope of work in logistics overhauls remains well above that experienced in the early years of the contract. Where we typically had 2-3 ships in work at one time, we now have 4-5 ships undergoing active logistics overhauls simultaneously. We continue to provide exceptional performance in this area even while executing lesser tasks on other ships during the overhauls.

In the area of logistics information system development, both the scope and technical complexity have increased over the early years of the contract. Initially, the IS activity largely involved the maintenance of legacy systems such as PC-SAL 3.2, ECSMIS 3.2, and the Procurement Tracking System (PTS). Beginning in Option Year 5 and continuing now and into the future, Shepard Patterson has been tasked to design and develop new technology applications such as a WEB-based Excess Material Reporting System (EMS), MARAD Procurement System (MPS), Windows PC-SAL and ECSMIS modernization, and Palm OS scanner applications. Current and future tasking involves modernization of the entire MARAD Logistics Support System to provide Internet accessible Logistics tracking and reporting of all information under the Division of Logistics Support purview. In a recent briefing to the MARAD Information Technology Steering Group, made up of senior MARAD management, and the MARAD Business Process Review panel, MAR-614 was applauded for its forward thinking and planning, and its disciplined approach to system development.

These examples illustrate the increased scope of work that has been experienced which, by the nature of the work, increases the complexity of the management task and the performance risks that are appropriately a consideration in establishing and awarding reasonable and fair fees.

Since it was not possible for the Government to anticipate the magnitude and complexity of these tasks when Modification 23 was released, the Government has subsequently increased the work through new Task Orders.

You have noted in your letter of April 25, 2001 that the ceilings in Modification 23 are not appropriate as a basis for determining the maximum award fee amounts because the objective of that Modification was to meet an SBA goal rather than develop accurate cost estimates. Instead, you have returned to the estimates in the first 5 years of the Contract because these amounts reflect genuine estimated costs. We agree that your reasoning is sound in this area.

However, by focusing only on the labor hours in CLIN AA of the original contract as the sole measure of work content, you fail to include the extensive and detailed subcontract effort directed and managed by Shepard-Patterson. There is however a viable remedy.

Using your approach of returning to the award fee pool used in the first five years of the contract, and comparing the estimated cost then with that projected cost for option years 5-9, we can achieve a very accurate valuation of the new pool. Since we have already demonstrated above that our cost estimate of option year 5 was extremely accurate, we have a very reliable baseline. This approach takes into consideration all elements of the work scope of the contract, not simply the Shepard-Patterson direct labor portion, and accounts for growth in the scope of work throughout the entire contract performance base.

Applying your methodology and formula, we arrive at the following maximum award fee pool:

<u>AWARD FEE POOL</u>

| | |
|---|---|
| 1. Option Year 5 | $ 556,966 |
| 2. Option Year 6 | $ 525,241 |
| 3. Option Year 7 | $ 493,354 |
| 4. Option Year 8 | $ 508,597 |
| 5. Option Year 9 | $ 522,393 |
| 6. Total Pool | $2,606,551 |

We derive these fee objectives as follows - $1,564,762 (total award fee pool for first five years) X 1.666 (projected work estimates for the last five years ($32,581,872) / work estimates in the contract for first five years ($19,559,527)) = $2,606,549[1]. Then, computing the award fee pools for each individual year by dividing that year's work estimate by the total work estimate and multiplying that percentage by the total award fee pool.

[1] Value here differs from above table due to rounding

**Topic Five: Award Fee Execution**

We concur with your proposed methodology that the award fee pool should be divided into quarterly increments consistent with the performance evaluation periods. We will then bill a total of one half of the quarterly pool value spread equally among the six invoices submitted each quarter.

**Summary:**

We have demonstrated clearly that the level of work and the complexity of work has increased beyond that anticipated in Modification 23. Using the methodology you recommended, we developed an award fee pool based on estimates in the initial contract and those estimated for option years 5-9. Based on what we can observe regarding the estimated cost for option year 5 and the actual results of the year, we believe the cost estimate for all years to be highly credible. As a result of our joint efforts I believe that we have achieved an improved award fee pool for the new option years. It is one that considers contractor risks and reasonable profit objective. Beyond that, the review process has resulted in a 3.1% savings in total costs and fees from the proposal submitted in November 2000.

I am sure we share a common belief that the Government's interest is best served when the award fee pool provides proper contractor incentive to help MARAD pursue its Ready Reserve Force goals. For the past six years, Shepard-Patterson has responded to the incentive and on numerous occasions attained the maximum award fee through exemplary service and quality performance. Our response to the challenge means we have succeeded in supplying the level of service that MARAD required to meet its Logistics Readiness objectives. This is precisely the result envisioned in establishing a realistic award fee pool value. The incentive resulted in outstanding accomplishment at reasonable cost to the Government.

We look forward to quick resolution of the estimated cost and fee adjustments to the contract as we are currently performing in option year 6. I will contact you to provide any appropriate supporting information or clarifications you may require, and to answer any questions regarding this letter. In the meantime, feel free to contact me at (410) 579 – 1982 or on my cell phone at (443)- 994-2073.

Thank you for your time and consideration. Sincerely,

Leonard S. Freiberg Jr.
Vice President
Finance & Administration

Attachments

Exhibit 2

SHEPARD PATTERSON™

MANAGING PEOPLE, SYSTEMS & INFORMATION

October 18, 2000

U.S. Department of Transportation
Maritime Administration
400 7th Street, S.W., Room 7314
Washington, DC 20590

Attention: Mr. Benedict J. Burnowski, Contracting Officer

Subject: Funding, Contract DTMA91-95-C-00024, Option Years 5 - 9

Reference: 1. MARAD Letter Dated September 26, 20000, Invoice #150
2. MARAD Letter Dated September 26, 20000, Invoice #151

Dear Mr. Burnowski:

The reference letters disallow provisional fee amounts that were billed in excess of funding limitations. We did not realize that the May 1999 funding increases for the subject Option Years were only for Estimated Cost, with no commensurate increase for Award Fee. We understand these actions and we apologize for our oversight.

However, we believe that the May 1999 increases should have included increases in the Fee, because the scope of work associated with the increases had also grown substantially. Increased requirements for logistics services have been experienced in the full range of support provided. Examples of this increased scope of work are:

- Major logistics overhauls have been conducted or started on 5 RRF ships.
- Logistics overhauls are nearly completed on two school ships, and started on a third.
- Complete Logistics overhauls have been completed on the MCDS systems on all seven ships equipped with the system, bringing the system up to the support levels established by the US Navy.
- Support has been provided to the OPDS system and ships in both pre and post exercise logistics support activities.
- Logistics Local Area Networks (LANs) have been ordered and installed and supported in two of the Region Logistics Shore Based Spares warehouses.
- Modernization of the logistics information system applications has increased the number of program applications in design and development.

Now that Shepard - Patterson has been performing Option Year 5 for approximately 6 months, it appears that further upward revisions to Estimated Cost for Option Years 5 - 9 will also be required. For example, based upon actual costs (no fee) through September 15, 2000, total Option Year 5 Estimated Cost projects to approximately $7,000,000.

For these reasons, Shepard - Patterson & Associates hereby submits a proposal to re-fund the subject Option Years per the table attached. The fees proposed are based on the contract guidance of 8% of the revised Estimated Cost. The Estimated Costs for Option Years 7 through 9 assume an inflation factor of 4% per year applied to Estimated Cost from Option Year 6.

We request a new funding modification to the IDIQ that is formatted like Modification 23, which shows the breakouts of Estimated Cost and Fee per Option Year at a certain effective date. We will track and report

A7

(in accordance with 52.232-22) our funding status in accordance with those Option Years funding, as though the current Option Year was fully funded. If we discover that the funding values are not accurate, we will propose and negotiate new Estimated Cost and Fee for a new IDIQ funding modification, as necessary. Each Work Order then may continue to carry a single NTE value, just as now. The latest Provisional Fee will be billed to each existing Work Order as is currently done, and the remaining fee will be billed as authorized during the MARAD quarterly PEB review.

Sincerely,

Glenn I. Downer
Vice President

Cc:
Erica Williams
Richard H. Williams
Patrick Carlton
Sam Patterson
Len Freiberg
Lou Vanderhorst