# In the United States Court of Federal Claims

* * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| **VERIDYNE CORPORATION,** | * | |
| Plaintiff, | * | |
| v. | * | No. 06-150C |
| **THE UNITED STATES,** | * | (Filed Aug. 14, 2008) |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

## ERRATA

The memorandum opinion and order entered on January 24, 2008, contained two typographical errors. In the first line on page 13, the word "presented" was omitted after the Godley citation before "another." In the first line on page 16, an "s" was omitted after the word "constitute." Corrected copies of both pages are attached for substitution.

s/ Christine O.C. Miller
________________________________
**Christine Odell Cook Miller**
Judge

Although Godley v. United States, 5 F.3d 1473 (Fed. Cir. 1993), presented another conflict-of-interest scenario, the decision did not address forfeiture. The contract in Godley concerned a lease of a building to the United States Postal Service (the "USPS"). The USPS contracting officer was indicted for conspiracy and bribery stemming from his involvement with USPS projects. The charges implicated a subcontractor; the plaintiff contractor allegedly lacked any knowledge of the illegal activities. Five months after taking possession of the building and three months after entering a final lease agreement, the USPS informed the contractor that the contract "was not valid because it was tainted" by the contracting officer's illegal conduct. Id. at 1474. The USPS ceased paying the lease amount in the contract and offered, instead, to renegotiate. Id. The trial court granted summary judgment for the contractor, holding that the Government had failed "'to avoid the contract'" in a timely fashion. Id. (quoting Godley v. United States, 26 Cl. Ct. 1075 (1992)) The Federal Circuit, however, deemed significant the distinction that the contractor was not involved in the prohibited conflict of interest with the contracting officer and remanded for a determination of whether the facts rendered the underlying contract void *ab initio* or merely voidable. Id. at 1475-76. The appeals court held that, if the contract was voidable, the trial court could consider to what extent the Government's delay in cancelling the contract "within a reasonable time after discovery of the illegality" precluded such a cancellation, but that delay was irrelevant where a contract was void *ab initio*. Id. at 1476.

Defendant's citation to Godley seizes upon some of its strong language, particularly this infelicitous quotation: "In general, a Government contract tainted by fraud or wrong-doing is void *ab initio*." Id. at 1475. Although Godley cited J.E.T.S. for this assertion, the cited portion of J.E.T.S. only stands for the proposition that "[a] government contract *thus tainted from its inception by fraud* is void *ab initio*." J.E.T.S., 838 F.2d at 1200 (emphasis added). Godley is not authority, in any event, that a contract held void *ab initio*, without more, is the predicate for a forfeiture of monies paid – in other words, it does not speak to whether recovery is available under *quantum meruit* or *quantum valebat* for a contract void *ab initio* for fraud.

The Federal Circuit's comprehensive statement of the law concerning contracts that are either void *ab initio* or voidable and the possibility of relief under *quantum meruit* or *quantum valebat* appears in United States v. Amdahl Corp., 786 F.2d 387 (Fed. Cir. 1986).7/ Amdahl involved the purchase by the Department of Treasury of a used mainframe computer and related equipment from the Federal Home Loan Mortgage Corporation ("Freddie Mac") on a sole-source basis. See id. at 389. The award was held contrary to statute and regulation

---

7/ Neither plaintiff nor defendant cited to Amdahl; it was cited accurately by the court in Godley. See Godley, 5 F.3d at 1475 n.1.

Defendant did not allege that any of plaintiff's invoices constitutes claims for work not actually performed or that any invoice reflects other than an accurate number of hours. Defendant has cited to cases holding that violations of 28 U.S.C. § 2514 result in forfeiture of claims, but no cases applying 28 U.S.C. § 2514 in factual circumstances like those presented. Moreover, defendant has not cited to any Federal Circuit opinions interpreting the applicability of 28 U.S.C. § 2514. Defendant also has not proved a fraudulent claim by clear and convincing evidence. See Glendale Fed. Bank, 239 F.3d at 1378 (Government required to establish by clear and convincing evidence elements of forfeiture statute). Although the forfeiture contemplated by 28 U.S.C. § 2514 is broad, defendant has not established as a matter of fact or law that it is entitled to summary judgment in its favor on its amended counterclaim.

5. Plaintiff and defendant's cross-motions for summary judgment

Defendant does not dispute that plaintiff has rendered the services for which it invoiced. See Def.'s Resp. to Pl.'s Proposed Findings of Fact ¶¶ 73-79, filed Mar. 26, 2007. Defendant has not raised any objection to the number of hours or dollar amounts claimed in the invoices. See id. ¶¶ 73-79, 81-83. Nonetheless, defendant has raised genuine issues of material fact concerning how plaintiff obtained Mod 0023 and subsequent modifications to the Contract, so plaintiff's partial motion for summary judgment on Count I of its Amended Complaint must be denied. Defendant understands that, although plaintiff's actions will not be vitiated by the active, knowing participation of MARAD contracting personnel, trial will develop their roles in the procurement and continued performance of the contract — whether their actions constitute incompetence, or misfeasance, or even conflict of interest.

Pursuant to RCFC 56(d), no substantial controversy exists with respect to the amounts claimed by plaintiff in Count I of the Amended Complaint for services performed before MARAD terminated performance.

6. Count III of plaintiff's Amended Complaint

In Count III of its Amended Complaint, plaintiff alleges that the "actions of MARAD's counsel in stopping Veridyne's performance put MARAD in breach of the Contract; as such, Veridyne is entitled to the lost profit it would have realized had the Contract not been breached." Am. Compl. filed May 16, 2006, ¶ 65. Plaintiff asks for $246,394.13 in lost profits. Id. ¶¶ 64-68. The Contract was an ID/IQ contract, and the terms of Mod 0023 obligated MARAD only to order, at a minimum, 10% of the estimated amount for a given option year in the course of exercising that option. By the terms of Mod 0023, the estimated costs for Option Years Five through Eight, inclusive, totaled $2,621,929.00. MARAD's minimum order was $262,192.90. Defendant has shown that it has ordered (and