IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VERIDYNE CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-150C |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITE STATES | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT/COUNTERCLIAMANT'S RESPONSE TO PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGEMENT, PLAINTIFF'S RESPONSE TO DEFENDANT/COUNTERCLAIMANT'S MOTION TO REFUSE APPLICATION FOR JUDGEMENT**

## I. Plaintiff's Reply To Defendant/Counterclaimant's Response To Plaintiff's Renewed Motion For Partial Summary Judgment

### A. The Proposal and Modification 23

In its response to Plaintiff's Renewed Motion For Partial Summary Judgment ("Plaintiff's Renewed Motion"), Defendant portrays Plaintiff as arguing that the fact that no employee of the Maritime Administration ("MARAD") was deceived by its Plaintiff's extension proposal and responds by asserting that establishing that MARAD employees were actually deceived is not necessary to its Fraud Counterclaim. Defendant misreads Plaintiff's argument. Simply put, not only were no MARAD employees deceived by Plaintiff's extension proposal, neither they nor anyone else could have been deceived.

Whether one examines Plaintiff's extension proposal or Modification 23 itself, one cannot point to any falsity, and falsity is the sine qua non for an action grounded in fraud. Modification 23 and the proposal that led up to it are both clear on their faces as

to what performance was contemplated and what cost was to be expected for the stated maximum number of hours at the stated rates.

Defendant repeats, again and again, that its fraud counterclaim is based on the "misrepresentations" in Plaintiff's extension proposal that resulted in Modification 23. Yet, despite some 50 pages worth of briefs submitted to date, Defendant has yet to identify what specific misrepresentation(s) the extension proposal contained, as if repeating the bare assertion enough times would make it so. The closest Defendant has come to identifying a misstatement is to point to the statement in the transmittal letter that accompanied the proposal: "We understood the scope of work will remain the same as is established in the current contract. . . ." See Appendix to Plaintiff's Motion For Partial Summary Judgment, page 93. However, FAR (48 CFR) § 16.504(a)(4)(ii) and (iii) make clear that the "quantity" and "dollar value" of the "services to be acquired" ((a)(4)(ii)) are distinguished from the "general scope. . .of the services to be acquired" ((a)(4)(iii)).[1]

**B. The Limitation of Funds and Limitation of Costs Clauses**

Defendant's fraud theory du jour, as recited in its response to Plaintiff's Renewed Motion, is that Defendant's counterclaim can rest on allegedly false labor and cost

[1] At the oral argument in January, counsel for Defendant argued that the March 10, 1998 letter from Contracting Officer Rita Jackson, inviting Plaintiff's proposal to extend the contract (see Appendix to Plaintiff's Motion For Partial Summary Judgment, page 92), and including the statement, "The scope of work will remain the same as in establishing in the current contract," referred to the same amount of services (although counsel conceded that he had not yet spoken with Ms Jackson at that time). Trans., p. 48, l. 6 through p. 49, l. 11; p. 52, l. 4 through l. 7. Ms Jackson was deposed by Plaintiff on August 15, with counsel for Defendant present; Plaintiff's counsel would represent to the Court that Ms Jackson testified that the "scope of work" referred only to the types of services to be provided and not the amount.

estimates in Plaintiff's extension proposal and in the resulting, integrated, MARAD-drafted Modification 23. See footnote 3 on page 7 of Defendant's Response.

Defendant cites section (a) in the Limitation of Funds Clause (FAR 52.232.-22) ("the Funds clause") and the Limitation of Costs Clause (FAR 52.232-20) ("the Costs clause") as having placed on Plaintiff an affirmative obligation to verify, before signing, that "this contract" i.e., Modification 23, would not cost MARAD more than the estimated cost in the schedule ($2.99 million) for all the logistics support services that MARAD might require over the life of the five (5) year extension. The language to which Defendant looks appears in (a) in each clause: "The parties estimate that performance of this contract will not cost the Government mote that (1) the estimated cost specified in the schedule…." In making this new argument, however, Defendant necessarily requires that the Court ignore paragraph (g) of the Funds clause which clearly states:

> (g) the estimated cost shall be increased to the extent that the amount allotted to the Government . . . exceeds the estimated cost specified in the Schedules.

Thus the Funds clause specifically states that the $2.99 million estimated cost in Modification 23 is to be adjusted each and every time additional funds were allotted to the contract by MARAD. All of the unpaid vouchers which are the subject of the Plaintiff's Renewed Motion for Partial Summary Judgment were funded by additional funding authorizations added well after the $2.99 million figure was surpassed.[2]

The same is true of the Costs clause, especially inasmuch as MARAD modified the Costs clause so that wherever the word "schedule" appears "work authorization"

[2] Defendant's new argument also, of course, necessarily ignores the fact that the MARAD-drafted Modification 23 states that the estimated cost for each of the five additional years is "For" a specified number of labor hours. See, Appendix to Plaintiff's Motion For Partial Summary Judgment, pages 154-158.

was to be substituted. See page I-3 of the basic contract, Appendix To Plaintiff's Motion For Partial Summary Judgment, page 62. With that modification, the parties agreed that performance of each task would not cost more than what the "work authorization" for that task order provided. Once again, it is undisputed that the work covered by the invoices at issue in Plaintiff's Renewed Motion (Nos. 260 through 264) was within the amounts in the work authorizations.

Notwithstanding Defendant's arguments, Plaintiff's extension proposal and Modification 23 were designed to comply with, not evade, SBA Regulations (i.e., the $3,000,000 maximum). The Contract was an indefinite delivery, indefinite quantity ("IDIQ") contract which by regulation is to be used where the Government itself is unsure of its requirements. See FAR § 16.504(b). Defendant's new argument rooted in the Funds clause and the Costs clause demands an impossibility; namely that Plaintiff was under an obligation to forecast and certify MARAD's needs pursuant to the Contract's Funds clause and Costs clause, even if MARAD, in choosing the IDIQ contract vehicle, could not. It is a fact, almost too well accepted for case citation that a contractor operating under such an IDIQ contract cannot have a reasonable expectation that the Government will order more than the minimum quantity specified in the schedule. See, Travel Center v. Barram, 236 F.3d 1316, 1319 (Fed. Cir. 2001); see also, Transtar Metals, Inc., ASBCA No. 55039, 2007 BCA ¶ 33,482 at page 165,959, Deterline Corp., ASBCA No. 33090, 88-3 BCA ¶ 21, 132 at page 106, 688. In the instant case, under Modification 23 Plaintiff could never have had the reasonable expectation of task orders exceeding the stated minimum quantity; and that assumes MARAD exercised the options embodied in Modification 23 at all, since Modification 23

only provided options and the exercise of those options was totally within the discretion of MARAD.

Moreover, Defendant's interpretation of the language in the two clauses as being some sort of affirmative representation by Plaintiff is clearly not shared by the Federal Circuit. In Advanced Materials, Inc. v. Perry, 108 F.3d 307 (1999) the court discussed the Costs clause as follows:

> Under the unambiguous language of the cost limitation clause, the estimated cost shown in the contract constitutes a ceiling on the government's contractual liability. The contractor may obtain an increase in the estimated cost subject to the following conditions….
>
> * * *
>
> The requirements of the cost limitation provision protects both the contractor and the government. The ability to obtain government approval of additional costs before incurring them protects the contracter from discovering, after performing the contract at greater cost than anticipated, that its work has been financially disastrous because the government will not pay the additional costs. It also relieves the contractor, if such advance approval is not given, from its obligation to complete the contract or to incur costs in excess of the estimate. The limitation of the government's liability to the estimated cost stated in the contract (unless additional funds are authorized) protects the government from having to pay more than it had anticipated and set aside for the contract if the contractor's costs of performance exceed the estimate. It also gives the government the choice whether to incur additional costs for the contract or to have the contract terminated. It is therefore important that the requirements of the cost limitation be followed.
>
> The thrust of the cost limitation is prospective, i.e., the parties are to determine their course of future dealing before the estimated cost has been exceeded and, if the performance is to continue, to set the amount of the additional cost.

108 F.3d at 310-11 (emphasis supplied). While, the Advanced Materials decision involved only the Costs clause, the two clauses are identical in (a), i.e., the provision on which Defendant's new fraud theory relies.

As the Federal Circuit explained, the two clauses simply provide for a "ceiling," which can be exceeded as necessary, provided various requirements are followed. In other words, the two clauses allowed MARAD to expand the limits of Modification 23 to satisfy its needs, since under the two clauses, each time MARAD funded a task order over the $2.99 million stated in Modification 23, pursuant to the Funds clause the estimated cost in the contract was automatically increased. All of the unpaid vouchers which are the subject of Plaintiff Renewed Motion had MARAD's advance approval as a result of the "funding authorizations." [3]

**C. The Real Issue**

Defendant mistakes the issue presented to the Court in Plaintiff's renewed motion (See Defendant's Statement of Issues #1)

Plaintiff's has not based its Renewed Motion on the fact, uncontroverted by Defendant, that no MARAD agent having anything to do with Modification 23 was deceived by Plaintiff's proposal. Rather, the issue presented by Plaintiff's renewed motion is that there <u>could not have been fraud</u> under the uncontroverted facts since there was no misrepresentation or deception by Plaintiff in its extension proposal.

The purpose of the intra office memos and other writings offered by Plaintiff with its Renewed Motion is that the impetus for Plaintiff's extension proposal and the resulting Modification 23 and Modification 35 lay with MARAD. See, <u>e.g.</u>, Plaintiff's Second Supplemental Appendix, pages 1-2, 4. As set forth in Plaintiff's Additional Proposed Findings Of Uncontroverted Fact, by executing Modification 23 and subsequently working under Modification 35, MARAD put itself in a win-win position.

---

[3] Subsequently, of course, MARAD drafted Modification 35 under which, according to the Contracting Officer, MARAD was operating when it funded the task orders issued to Plaintiff.

Not only was it able to keep a known good contractor, it was also able to have the flexibility to procure services from Plaintiff or issue a new solicitation. In accordance with the Funds clause and the modified Costs clause, MARAD was free to go beyond the hours of services included the $2.99 million “ceiling recited in Modification 23.

**D. This lack of a nexus negates and dooms any theory that fraud caused MARAD to do what it did.**

Finally using the unreal subjective voice, even if there had been a misrepresentation by Plaintiff, that imaginary misrepresentation played no part in and had no effect on MARAD’s decision to order services from Plaintiff over the life of the extension. Because MARAD knew what its logistics services needs would be nearly a year prior to the time it exercised the first option under Modification 23, there could have been no nexus between the albeit-imagined misrepresentation and MARAD’s actions.

With the execution of Modification 23, which encompassed options only (and exercisable by MARAD only), Plaintiff had no guaranty, only a hope, that MARAD would exercise those options. Forty Two (42) weeks before the first option under Modification 23 had to be exercised, MARAD knew that its future need for logistics services would be far greater (perhaps ten times greater) than what MARAD had forecast in Modification 23. Despite this knowledge and despite the forty-two (42) week period, which would have permitted MARAD to solicit proposals for a new logistics support contract, MARAD consciously elected to procure its needed services under Modification 23 irrespective of any representation by Plaintiff.

**E. The Efficaciousness of Partial Summary Judgment**

Since the admissions garnered from MARAD’s own files demonstrate that the Modification 23 extension was MARAD’s objective, ab inito; that Modification 23 so

clearly sets forth a maximum number of service hours, that MARAD and only MARAD had the power to invoke; that MARAD activated its rights by exercising the first option under Modification 23 when it knew that its estimate of service hours stated in Modification 23, which it drafted, was far less than its now forecasted needs, there is no opportunity for fraud to have played any part in this situation.

Stated in terms of the standard of review on Summary Judgment there is no genuine issue as to a material fact where the evidence is such that no reasonable juror or, as here, a reasonable trier of fact, could return a verdict or finding for the nonmoving party. Aderson v. Liberty Lobby, Inc. 477 U.S. 242, 240 (1986).

**II. Defendant's Request For A Delay In A Ruling On Plaintiff's Renewed Motion For Summary Judgment While It Goes On a "Fishing Expedition" Via Discovery, Should Be Denied**

There is no question that Rule 56(f) serves a valid purpose and should be liberally construed. Nevertheless common sense and logic dictate that it has its limitations.

Here such a limitation exists, the alleged defraudees, the people in MARAD's Departments of Acquisition and Logistics involved in the Modification 23 extension, are all exclusively within Defendant's control. It is the writings of these people that Plaintiff has offered in its Renewed Motion. Defendant has submitted no affidavit from any of them suggesting that either Modification 23 or the dealings leading up to its execution were at anything less than open, above-board and at arms' length.[4]

What Defendant is seeking here goes beyond even a liberal interpretation of the rule. Defendant requests the Court refuse Plaintiff's renewed motion so that it can go

---

[4] Defendant saw no need for discovery when it originally opposed Plaintiff's Motion For Partial Summary Judgment and cross-moved for Summary Judgment on its Fraud Counterclaim.

on a "fishing expedition," even though it fails to state what facts it expects to elicit from an examination of the recited witnesses, all of whom are or were coplayed by Plaintiff. Defendant simply asks that the Court allow it to depose Plaintiff's employees and former employees, because it "need[s] to depose" them in order to respond to Plaintiff's Renewed Motion, because they are "likely to possess relevant information regarding misstatements in [Plaintiff's] proposal and in Mod[ification] 23, whether those misstatements were made with the intent to deceive" and, "whether the Government relied on those misstatements and the extent to which the Government was damaged as a result of the misstatements." Putting aside the fact the Defendant has repeatedly argued that it need not prove reliance and damages, Defendant fails to explain how knowledge of MARAD's reliance and damages lies within the exclusive knowledge of Plaintiff's employees and former employees. As to "misstatements," as noted, <u>supra</u>, Defendant has yet to point to any. In short, Defendant cannot seek delay in the ruling on Plaintiff's Renewed Motion by the simple assertion that it requires discovery to elicit information or assist in opposing Plaintiff's Renewed Motion. See, <u>Richardson v. Nat'l Rifle Ass'n</u>, 871 F. Supp 489 (D.C. D.C. 1994); <u>Container Mfg., Inc. v. CIBA-GEIGY Corp.</u>, 870 F. Supp 1225, 1236, n. 16 (D.C. N.J. 1994).

The late and esteemed Jude Albert Maris of the Third Circuit Court of Appeals reasoned as follows in <u>U.S. for Use of</u> <u>Kolton v. Halperm</u>, 260 F.2d 590, 591 (Third Cir. 1958):

> The plaintiffs were accordingly entitled to summary judgment in their favor and the expressed desire of the defendants' counsel for an opportunity to cross examine the plaintiffs' witnesses in the hope of turning up something in defense was not sufficient to prevent its entry * * * at least in the absence of a showing, such as is contemplated by Rule 56(f), that all of the facts were necessarily within the exclusive knowledge of the plaintiffs and not accessible

to the defendants.

Here the facts are clearly not in the hands of the Plaintiff. The facts were and are in the hands of those MARAD employees whose writings have been cited as part of the unconverted facts offered by Plaintiff. Denial of Defendant's request causes no injustice of any kind.

## III. Conclusion

It should be remembered that in the arena in which this contract was performed, there exists the judicially-created presumption that government employees "always act in good faith, subject only to an extremely difficult showing . . . to the contrary." Torncello v. U.S. 231 Ct. Cl. 20, 681 Fed. 756, 770 (1982) (emphasis supplied). Clearly, in such a setting Mr. Patterson's statements that, throughout the performance of the additional contract years Plaintiff reasonably believed that the MARAD officials who were directing Plaintiff's efforts did what was necessary to comply with SBA's regulations as well as MARAD's (e.g., the FAR), are eminently credible. It would be manifestly unfair if a small business should now be held to have subsidized the U.S. Government by providing, free of charge, services that MARAD wanted, needed, ordered, authorized and funded.

Plaintiff 's Renewed Motion For Partial Summary Judgment should be granted.

Respectfully submitted,

/s/ Marc Lamer
Marc Lamer
Attorney for Plaintiff

Dated: August 25, 2008