# In the United States Court of Federal Claims

Nos. 06-150C & 07-647C
(Filed December 5, 2011)

* * * * * * * * * * * * * * * * * * * * * *   *
                                               *

**VERIDYNE CORPORATION,**     *    Pleading and practice; motion *in*

                                *    *limine*; testimony of lay witness

            Plaintiff,         *    on detrimental effects of fraud

                                  *    on Small Business

        v.                 *    Administration 8(a) program;

                                  *    Fed. R. Evid. 403, 701, 702.

**THE UNITED STATES,**         *

                                  *

          Defendant.        *

                                  *

* * * * * * * * * * * * * * * * * * * * * *   *

Marc Lamer, Philadelphia, PA, for plaintiff.

Robert E. Chandler, Washington, DC, with whom was Assistant Attorney General Tony West, for defendant. David M. Finkelstein, U.S. Department of Justice and Janis Rodriguez, Department of Transportation, of counsel.

## ORDER ON MOTION *IN LIMINE*

**MILLER**, Judge.

These cases concern Modification 0023 ("Mod 0023") to Contract No. DTMA91-95-C-00024 ("the Contract") between Veridyne Corporation ("plaintiff") and the Department of Transportation, Maritime Administration ("MARAD"). In 1998 Mod 0023 extended the Contract for one year and four additional option years. Plaintiff was the incumbent contractor. In order to continue using plaintiff, both plaintiff and MARAD knew that the Contract would be opened to competition unless plaintiff satisfied a $3-million qualifying limitation to the Contract value. 1/ MARAD awarded the Contract to plaintiff on

---

1/ MARAD awarded the Contract to the Small Business Administration (the "SBA") pursuant to the 8(a) program. The 8(a) program directs the SBA to enter into contracts with government agencies for the provision of certain goods or services and to award subcontracts to qualifying economically disadvantaged business concerns that actually will provide the goods or perform the required services. See 15 U.S.C. § 637(a) (2006). Plaintiff was the

the basis of a proposal that the Government later deemed fraudulent.   Moreover, the Government also found material discrepancies in plaintiff's billing under the Contract.   In 2006 defendant pleaded fraud as both an affirmative defense against plaintiff's claims for amounts due and as a counterclaim, seeking statutory forfeiture of plaintiff's claims.   In 2009 this court granted defendant's motion to amend its answer to include additional fraud counterclaims.   Veridyne Corp. v. United States, 86 Fed. Cl. 668, 681 (2009) (order allowing defendant to file additional counterclaims, *inter alia*, for submitting false claims).  Defendant now alleges that plaintiff is liable for forfeiture of its claims because the Contract was entered into fraudulently and for statutory penalties and damages because plaintiff falsified invoices with the intent that MARAD pay plaintiff more than what plaintiff knew was due. Veridyne, 86 Fed. Cl. at 672.

On October 19, 2011, plaintiff filed a motion *in limine* seeking to preclude defendant from offering at trial testimony from Eugene Cornelius, who serves as the Deputy Associate Administrator for Field Operations for the United States Small Business Administration (the "SBA").  Defendant identified the substance of Mr. Cornelius's proposed testimony as the "SBA 8(a) program and the impact of contractor fraud and abuse on program goals and integrity."  Pl.'s Br. filed Oct. 19, 2011, at Ex. A.  Briefing was completed on November 14, 2011.

Plaintiff contends that Mr. Cornelius's testimony is necessarily opinion testimony. According to plaintiff, because Mr. Cornelius began his employment with the SBA after plaintiff and MARAD executed Mod 0023 in 1998, he cannot provide first-hand testimony of the events giving rise to the execution of the modification.   Consequently, plaintiff denominates Mr. Cornelius's testimony as either expert opinion testimony under Federal Rule of Evidence ("Fed. R. Evid.") 702 or lay opinion testimony under Fed. R. Evid. 701. Regardless of the label ascribed to Mr. Cornelius's testimony, plaintiff argues that the court should exclude it.

First, plaintiff contends that defendant should be precluded from offering Mr. Cornelius's expert opinion because defendant has failed to provide an expert witness report in compliance with RCFC 26(a)(2)(B).  Permitting defendant to offer such testimony after circumventing the requirements would reward defendant's noncompliance.  See Pl.'s Br. filed Oct. 19, 2011, at 3.  Plaintiff also notes that Mr. Cornelius's proposed testimony does

---

1/  (Cont'd from page 1.)

8(a) program participant designated to perform the Contract, and, although all relevant dealings were between plaintiff and MARAD, the SBA technically awarded Subcontract No. 0303-95-1-00055 to plaintiff.  In the interest of clarity, the Contract is referred to as between plaintiff and MARAD.

not comport with the United States Supreme Court's mandates in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999).   Taken together, <u>Daubert</u> and <u>Kumho</u> establish standards of relevance and reliability for admissibility of both scientific and non-scientific expert testimony and assign trial judges a gatekeeping function to ensure that the proposed testimony meets these standards.   <u>See Daubert</u>, 509 U.S. at 597; <u>Kumho</u>, 526 U.S. 141-42; <u>see also</u> <u>Seaboard Lumber Co. v. United States</u>, 308 F.3d 1283, 1302 (Fed. Cir. 2002) (noting that standards of relevance and reliability must be met in bench, as well as jury, trials).   Plaintiff challenges that, because Mr. Cornelius will be offering "generalized opinion testimony on the 8(a) Program and how 'fraud,' 'abuse' or 'manipulation' are detrimental to its 'goals,'" his testimony does not meet the standards for relevance.  Pl.'s Br. filed Oct. 19, 2011, at 4.  It is "ludicrous," plaintiff exhorts, "that the Court would . . . need expert testimony to understand" the impact of the alleged fraud on the program's aims.  <u>Id.</u>

Plaintiff also cites Federal Circuit precedent, which requires that "[e]xpert testimony . . . '*assist* the trier of fact to understand the evidence or to determine a *fact* in issue.'"  <u>Stobie Creek Invs., LLC v. United States</u>, 608 F.3d 1366, 1383 (Fed. Cir. 2010) (quoting Fed. R. Evid. 702).   Arguing that Mr. Cornelius's opinion regarding the effect of the alleged fraud on the goals of the 8(a) program in no way will assist the trier of fact in determining damages, plaintiff concludes that the expert testimony does not meet the standards for admissibility and should be barred.  <u>See</u> Pl.'s Br. filed Oct. 19, 2011, at 5.

Second, plaintiff insists that Mr. Cornelius's testimony is not admissible as lay opinion testimony.  <u>See id.</u> at 6.  Testimony offered pursuant to Fed. R. Evid. 701 must "not [be] based on scientific, technical, or other specialized knowledge . . . ."  Fed. R. Evid. 701.  Mr. Cornelius's opinion, however, is "the result of the specialized knowledge he has gained as an official of the Small Business [A]dministration."  Pl.'s Br. filed Oct. 19, 2011, at 7.  Plaintiff concludes that this renders Mr. Cornelius's testimony inadmissible under Fed. R. Evid. 701.

Plaintiff further challenges admissibility under Fed. R. Evid. 701 by asserting that the proposed testimony will not be helpful to the trier of fact.  Pl.'s Br. filed Nov. 14, 2011, at 1-2.  Acknowledging defendant's contention that the harm that occurred is intangible and that Mr. Cornelius's testimony is necessary to "assist the [c]ourt in fashioning a damage award," plaintiff retorts that "it is undisputed that Veridyne provided the Government with the services that it ordered.  <u>Id.</u> at 2, 3.  Therefore, plaintiff explains, these cases involve "'a tangible structure or asset *of ascertainable value*,'" <u>id.</u> at 4 (quoting <u>United States v. TDC Mgmt. Corp.</u>, 288 F.3d 421, 428 (D.C. Cir. 2002) (emphasis added)), such that Mr. Cornelius's testimony is not necessary to assist the trier of fact in calculating any damages award.

Defendant first responds that the court need not reach the issue of helpfulness to the trier of fact because Mr. Cornelius will be offering fact—not opinion—testimony. Def.'s Br. filed Nov. 1, 2011, at 1. Specifically, Mr. Cornelius will provide his personal knowledge of the 8(a) program "based upon his experience, and not statements of his belief or inferences regarding facts in dispute." Id. at 3. Defendant next contends that, to the extent the proposed testimony is deemed opinion testimony, it is admissible as lay opinion testimony pursuant to Fed. R. Evid. 701. Id. Contrary to plaintiff's contention that Mr. Cornelius's testimony is based on specialized knowledge derived from his status as an SBA official—and thus is not permitted by Fed. R. Evid. 701—defendant explains that the Advisory Committee Note to Fed. R. Evid. 701 expressly permits testimony "that the witness has by virtue of his or her position in the business." Fed. R. Evid. 701 advisory committee's note.

Finally, defendant argues that, if Mr. Cornelius's testimony is, in fact, opinion testimony, it will be helpful to the trier of fact in determining damages, thereby satisfying Fed. R. Evid. 701. See Def.'s Br. filed Nov. 1, 2011, at 6. Defendant supports its argument with cases that provide that intangible harm resulting from fraud—which by its nature is difficult to quantify—is relevant to an award of damages. See id. (citing U.S. ex rel. Longhi v. United States, 575 F.3d 458, 473 (5th Cir. 2009) (finding that, because Government was fraudulently induced to award grant, it was entitled to recover damages on False Claims Act claim despite fact that Government only received intangible benefit from awarding grant)). "Thus, Mr. Cornelius'[s] testimony will be 'helpful to . . . the determination of a fact in issue,' namely, the harm to the Government resulting from Veridyne's fraud." Id. (quoting Fed. R. Evid. 701).

To bring a claim under the False Claims Act, 31 U.S.C. § 3729(a)(1) (2006) (the "FCA"), the Government is not required to show that it incurred damages, although a showing of damages as a result of the fraudulent claim is required if the Government seeks to obtain an award of actual damages. See Daewoo Eng'g & Constr. Co. v. United States, 557 F.3d 1332, 1341 (Fed. Cir. 2009) ("Because the court did not find that the government incurred damages from [the contractor]'s false claim, the court properly assessed only the statutory penalty."); see also Young-Montenay, Inc. v. United States, 15 F.3d 1040, 1043 (Fed. Cir. 1994) (absent proof of harm, Government can recover penalties, but not damages). In these cases it is unclear whether defendant intends to show actual damages through Mr. Cornelius's testimony. Nonetheless, defendant's argument that Mr. Cornelius's proposed testimony is fact, not opinion, testimony is unavailing. Mr. Cornelius's testimony about the details and requirements of the 8(a) program is fact testimony derived from his first-hand knowledge of, and experience with, the program. The same, however, is not true of his testimony regarding the effect of plaintiff's alleged fraud on the 8(a) program. Defendant's counterclaim alleges that plaintiff fraudulently induced Mod 0023 and submitted false claims to the Government for payment. Mr. Cornelius was not involved in any aspect of the Contract's extension under Mod 0023 or in MARAD's payments upon plaintiff's invoices.

Mr. Cornelius is able to "offer generalized opinion testimony on the 8(a) Program and how fraud, abuse or manipulation are detrimental to its goals," Pl.'s Br. filed Oct. 19, 2011, at 4 (internal quotation marks omitted), but any testimony offered to support defendant's counterclaims and to explain the impact of plaintiff's actions on the modification or the 8(a) program amounts to a specific opinion based on the facts of the cases at bar.  Having elected not to make a showing that Mr. Cornelius's testimony satisfies the three requirements of Fed. R. Evid. 702 or the standards in Daubert and Kumho, defendant cannot offer it as expert opinion testimony.  For the reasons that follow, neither is it admissible as lay opinion testimony under Fed. R. Evid. 701.

To be admissible pursuant to Fed. R. Evid. 701, lay opinion testimony must be "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue . . . ."  Fed. R. Evid. 701.  Defendant's argument as to the helpfulness of the testimony has been deflected aptly by plaintiff: "[I]t is undisputed that Veridyne provided the Government with the services that it ordered."  Pl.'s Br. filed Nov. 14, 2011, at 3.  Delivery of services militates against the persuasiveness of the cases cited by defendant.  According to defendant, plaintiff's fraud caused MARAD and the SBA to suffer intangible harm that is not susceptible to ready valuation.  Thus, defendant proposes that Mr. Cornelius's testimony as to the effect of fraud on the goals of the 8(a) program will assist the trier of fact in "determin[ing] . . . a fact in issue," Fed. R. Evid. 701, by enabling the court better to ascertain the extent to which the Government was allegedly harmed by tarnishing the SBA 8(a) program and thereby determine damages.  Def.'s Br. filed Nov. 1, 2011, at 6.

In support of its argument, defendant cites Longhi and TDC Management—two FCA cases involving challenges to the measure of damages awarded.  Longhi was a *qui tam* action in which the United States alleged that the defendants—recipients of research grants from the Federal Government—made false statements in order to obtain the grants.  See 575 F.3d at 461-62.  Finding that there was "evidence that the false statements actually influenced the decision to award Defendants the . . . grants," the United States Court of Appeals for the Fifth Circuit affirmed the lower court's award to the Government of the full amount of the grant payments despite the defendants' argument that "no court has ever applied a fraudulent inducement/disgorgement theory in the absence of some tangible injury to the government."  Id. at 472 (internal quotation marks omitted).  The Fifth Circuit acknowledged that the Government did not receive a tangible benefit from awarding the grants to the defendants, commenting that "[t]hese were not . . . standard procurement contracts where the government ordered a specific product or good."  Id. at 473.  Rather, "[t]he Government's benefit of the bargain was to award money to eligible deserving small businesses."  Id.  However, the court concluded that damages representing the amount paid out by reason of the false claim were an appropriate measure in the unique circumstances of a fraudulently induced research grant when there was "no tangible benefit . . . and the intangible benefit [wa]s impossible to calculate . . . ."  Id.

Similarly, in TDC Management, the United States Court of Appeals for the District of Columbia Circuit affirmed the lower court's award of summary judgment and damages under the FCA in favor of the Government. 288 F.3d at 422. TDC Management involved a United States Department of Transportation program "designed to assist minority enterprises in securing bonding from sureties when bidding on large transportation construction projects." Id. at 422-23. TDC "was to use its 'best efforts' to locate investors and sureties and obtain their tentative agreement to participate in the Program." Id. at 423. The lower court found that TDC engaged in fraud in carrying out the contract and deducted from TDC's affirmative award an amount for penalties and damages measured by the amount that the Government paid out on vouchers that omitted salient information. On appeal TDC argued that "the government's net damages were zero because it got what it paid for under the best efforts agreement." Id. at 427 (internal quotation marks omitted). In affirming the lower court's decision, the D.C. Circuit explained that, although "[t]he Program at issue . . . did not call for TDC to produce a tangible structure or asset of ascertainable value, . . . the evidence allowed the district court to find that the value of the 'best efforts' provided by TDC was vitiated by TDC's [fraud]." Id. at 428. Essentially, the court reasoned that TDC's conduct robbed the program of any value to the Government.

Defendant assumes that the cases before the court involve damages that would reflect a proxy measurement. It is defendant's position that Mr. Cornelius's testimony satisfies Fed. R. Evid. 701's "helpfulness" requirement by assisting the trier of fact in determining damages in the absence of a readily ascertainable value. As noted, however, these cases actually involve a contract for services that was fully performed for MARAD, or, as stated in Longhi, a "standard procurement contract[] [in which] the government ordered a specific product or good." 575 F.3d at 473. Defendant posits that the intangible harm to the SBA program constitutes damages beyond any impairment to the value of the services provided to MARAD. 2/

_____

2/  Notably, defendant does not comment on Ab-Tech Construction, Inc. v. United States, 31 Fed. Cl. 429 (1994), which was cited by the D.C. Circuit in its 2002 TDC Management opinion.

The court in Ab-Tech admitted testimony similar to Mr. Cornelius's and noted that the payment vouchers were false claims within the meaning of the FCA, but denied treble damages because the Government had failed to show that it "suffered any detriment to its contract interest because of Ab-Tech's falsehoods." Id. The court, however, did impose statutory penalties to compensate the Government "for the very real, though largely unquantifiable, injury to the 8(a) program," explaining that "penalties are intended . . . to compensate the Government for the 'costs of corruption' . . . . [including] most significantly, the societal cost associated with Ab-Tech's abuse of the section 8(a) program." Id. at 435.

The court must resist defendant's overtures.  See Milmark Servs., Inc. v. United States, 731 F.2d 855, 860 (Fed. Cir. 1984) (remarking that "the admissibility of expert testimony is within the discretion of the trial judge").  The undersigned took these cases by transfer in 2007, yet they have been mired in fraud discovery and motions practice since the first trial date was set for November 2008.  The new damages theory raised by defendant would expand the scope of trial, further delaying resolution of these matters.  Fundamentally, the risks of confusion of the issues and waste of time far outweigh any probative value that defendant can conjure for this testimony.  Fed. R. Evid. 403, providing that otherwise relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . or by considerations of undue delay [or] waste of time," anticipates the problems presented by defendant's proffer of Mr. Cornelius's testimony.

Defendant has the burden of proving actual damages under the FCA and should not be allowed to discharge it by introducing evidence of the impact on the future of the SBA's efforts to make similar contracts available to small businesses.  Mr. Cornelius's testimony will do nothing to illuminate the Government's case in this regard because, except to the extent he offers opinion testimony—which already has been deemed inadmissible—he can no more than speculate on the unquantifiable impact of the alleged fraud on the future of the 8(a) program.  Accordingly,

   **IT IS ORDERED**, as follows:

Plaintiff's motion *in limine* is granted, and defendant is precluded from offering Mr. Cornelius's testimony at trial.


                                        /s/ Christine O.C. Miller
                              _____
                                        **Christine Odell Cook Miller**
                                        Judge

_____

2/ (Cont'd from page 6.)

This court's recent criticism of the Ab-Tech opinion, see Kellogg Brown & Root Servs., Inc. v. United States, 99 Fed. Cl. 488, 500 (2011) (order granting in part plaintiff's motion to dismiss fraud counterclaims), extended only to the decision's analysis of the claim under the forfeiture statute and did not need to address its treatment of the FCA claim.  The undersigned also does not endorse the Ab-Tech court's characterization of the FCA's penalties as compensating for actual damages, if proved, see id. at 434-35, which is contrary to the earlier decided Young-Montenay Federal Circuit precedent cited above.