# In the United States Court of Federal Claims

No. 06-150C
(Filed November 5, 2012)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * | * |
| | * |
| **VERIDYNE CORPORATION,** | * Contract Disputes Act of 1978, |
| | * 41 U.S.C. § 7103(c)(2) (Supp. |
| Plaintiff, | * IV 2011) (anti-fraud provision); |
| | * costs of review; attorneys' fees; |
| v. | * documentation of costs. |
| | * |
| **THE UNITED STATES,** | * |
| | * |
| Defendant. | * |
| | * |
| * * * * * * * * * * * * * * * * * * * * * * * | * |

Marc Lamer, Philadelphia, PA, for plaintiff.

Robert E. Chandler and David M. Finkelstein, Washington, DC, with whom was Acting Assistant Attorney General Stuart F. Delery, for defendant. Janis Rodriguez, Department of Transportation, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

This case is before the court after trial on defendant's petition for costs of review pursuant to the anti-fraud provision of the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 7103(c)(2) (Supp. IV 2011). In an opinion dated July 6, 2012, this court held, in part, that plaintiff violated the anti-fraud provision of the CDA. Defendant now seeks a judgment of $357,256.08 under § 7103(c)(2) for its costs attributable to reviewing the unsupported parts of plaintiff's claim. The key issue for decision is whether defendant has provided sufficient documentation in order to demonstrate that the claimed costs are reasonable.

## BACKGROUND AND FACTS

On July 6, 2012 this court issued an opinion after trial in the above-captioned case. See Veridyne Corp. v. United States, 105 Fed. Cl. 769 (2012). The factual background and

procedural history of this case were recited in the court's July 6 opinion and will be repeated only as necessary to provide context.

This case concerns Contract No. DTMA91–95–C–00024 (the "Contract") between Veridyne Corporation ("plaintiff" or "Veridyne") and the United States Department of Transportation, Maritime Administration ("MARAD"). The Contract, awarded in 1995, covered services related to MARAD's logistics program in support of the Ready Reserve Force.

Plaintiff filed a complaint on February 28, 2006, and an amended complaint on May 16, 2006. The three-count amended complaint sought (1) to recover $2,267,163.96 owed to Veridyne by MARAD on Invoice Nos. 260–267, which had been submitted for payment; (2) reimbursement of $77,737.36 in legal fees incurred in connection with a criminal investigation initiated by MARAD and as a result of attempts to obtain payment from MARAD on Invoice Nos. 260–267; and (3) lost profits on account of MARAD's alleged breach of the Contract, totaling $246,394.13. See Am. Compl. filed May 16, 2006, ¶¶ 48–55, 63, 68.

Defendant's answer filed on July 31, 2006, asserted fraud as a defense and counterclaimed for forfeiture under 28 U.S.C. § 2514 (2006). On February 18, 2009, defendant filed a motion to amend its answer to include additional fraud counterclaims "based upon newly-discovered fraudulent statements" in plaintiff's invoices. Def.'s Br. filed Feb. 18, 2009, at 1. Defendant asserted that the justification for the new claims stemmed from plaintiff's falsely representing the level of work-order funding available on Invoice Nos. 260–266 and overbilling MARAD for Invoice No. 267. Id. at 2. On April 16, 2009, the court issued a published opinion granting defendant's motion to amend its answer to include additional fraud counterclaims. Veridyne Corp. v. United States, 86 Fed. Cl. 668 (2009). Defendant filed its seconded amended answer and counterclaim on April 22, 2009, which included a claim under the anti-fraud provision of the CDA 1/ for the unsupported portion of plaintiff's claims. Defendant also sought the costs incurred by the Government for reviewing such claims. See Second Am. Answer & Countercl. filed Apr. 22, 2009, ¶ 95. The anti-fraud provision of the CDA provides:

---

1/ Congress amended and recodified the CDA while this case was pending. See Act of Jan. 4, 2011, Pub. L. No. 111–350, 124 Stat. 3677. The amendment has no substantive effect on this case, despite the fact that defendant filed its counterclaims under the earlier provisions, because, as Congress explained, "the intent [of the amendment] is to conform to the understood policy, intent, and purpose of Congress in the original enactments, with such amendments and corrections as will remove ambiguities, contradictions, and other imperfections." Id. § 2(b).

>If a contractor is unable to support any part of the contractor's claim and it is determined that the inability is attributable to a misrepresentation of fact or fraud by the contractor, then the contractor is liable to the Federal Government for an amount equal to the unsupported part of the claim plus all of the Federal Government's costs attributable to reviewing the unsupported part of the claim. Liability under this paragraph shall be determined within 6 years of the commission of the misrepresentation of fact or fraud.

41 U.S.C. § 7103(c)(2).

The parties proceeded with discovery, and the court ruled on several motions to compel. On December 21, 2009, the court ordered Veridyne to produce all documents responsive to a document request that read: "1. Produce all documents relating to invoices 265, 266, and 267, including but not limited to, documents related to the preparation of those invoices." Order entered Dec. 21, 2009, at 1; Def.'s Mot. filed Dec. 9, 2009, at 2. Following additional discovery disputes between the parties, the court on March 16, 2010, ordered defendant to select a computer forensics expert to produce images of all computers used by plaintiff's employees who were "involved in the negotiation or preparation of plaintiff's proposal for Modification 23, the preparation of Invoices 265 through 267 or plaintiff's claim pursuant to the [CDA]." Order entered Mar. 16, 2010, at 2.

Trial commenced on January 9, 2012, and concluded on January 19, 2012. The court's opinion, Veridyne Corp., 105 Fed. Cl. at 816, held that plaintiff was entitled to recover a total of $1,068,636.22, plus interest under 41 U.S.C. § 7109(a)(1), and that defendant was entitled to recover a total of $1,965,802.09 on its counterclaims, including $568,802.09 in CDA damages. 105 Fed. Cl. at 816. Accordingly, judgment was entered on July 6, 2012, for defendant in the amount of the difference between the minuend $1,965,802.09, and the subtrahend $1,068,636.22, including interest on the latter amount. Id.; Judgment entered July 6, 2012.

The court found that plaintiff was unable to support $568,802.09 of its CDA claim. Veridyne Corp., 105 Fed. Cl. at 816. This amount consisted of $263,496.62 of misstated funding in Invoice No. 265; $131,469.35 of overstated overhead in Invoice No. 266; and $173,836.12 of prior-billed and unincurred expenses in Invoice No. 267. Id. Accordingly, defendant was entitled to recover $568,802.09 pursuant to the CDA's anti-fraud provision. Id. During trial defendant did not offer evidence of any government costs attributable to reviewing the unsupported part of the claim. Id. However, the court neglected to address in its opinion defendant's entitlement to its costs for reviewing the unsupported parts of the CDA claim.

3

On August 3, 2012, defendant filed a motion to alter or amend judgment pursuant to RCFC 59(a)(2). Def.'s Mot. filed Aug. 3, 2012. Defendant requested that judgment be reopened and sought leave to supplement the record with evidence of its costs incurred in reviewing Veridyne's fraudulent claims. Id. at 1. Plaintiff filed its response on August 10, 2012. On August 13, 2012, the court granted defendant's motion and reopened the July 6, 2012 judgment for the limited purpose of allowing defendant to file a statement of its costs incurred in connection with reviewing certain fraudulent claims made by Veridyne. See Order entered Aug. 13, 2012. The court cautioned, however, that a claim for "costs of review" under the CDA's anti-fraud provision is not equivalent to a claim for litigation costs and that defendant's claims for attorneys' fees must be "limited to attorney review incident to the filing of the CDA claim." 2/ See id. at 2.

On August 31, 2012, defendant submitted its Petition for Costs of Review pursuant to the anti-fraud provision of the CDA. Plaintiff submitted its response on September 14, 2012. Argument is deemed unnecessary.

## DISCUSSION

The anti-fraud provision of the CDA entitles the Government to recover "an amount equal to the unsupported part of [a contractor's] claim plus all of the Federal Government's costs attributable to reviewing the unsupported part of the claim." 41 U.S.C. § 7103(c)(2). Pursuant to this provision, defendant seeks a judgment of $357,256.08 for its costs of reviewing Veridyne's usupported claims related to Invoice Nos. 265 through 267. See Def.'s Pet. filed Aug. 31, 2012, at 1. Of this amount $32,225.04 is for costs related to the initial investigation, preparation, and filing of defendant's second amended counterclaim, and $325,031.07 is for costs of discovery related to Invoice Nos. 265 through 267. See id. at 5. Defendant's total costs consist of four categories: 1) costs of Department of Justice ("DOJ") attorney time; 2) costs of labor for MARAD personnel; 3) costs of obtaining documents related to Invoice Nos. 265 through 267, which include forensic imaging of Veridyne's computers; and 4) costs of retaining a forensic auditor from the Defense Contract Audit Agency ("DCAA") to provide investigative support and expert consultative services. Defendant is not seeking costs related to post-discovery activities, including the filing of pre-trial motions and trial preparation. Id. at 3 n.2.

---

2/ Because defendant's August 3, 2012 motion to alter or amend judgment focused on litigation costs, the court's August 13, 2012 order presumed that defendant's claimed costs would be limited to the cost of attorney time. See Order entered Aug. 13, 2012, at 2. As discussed below, defendant's claimed costs of review are not so limited. The court fully considers all of the claimed costs of review set forth in defendant's August 31, 2012 petition.

4

To support its claim for costs of DOJ attorney time, defendant has submitted declarations from two DOJ trial attorneys, Robert E. Chandler and David M. Finkelstein, who ably represented defendant in this case. Defendant seeks to recover $26,918.00 for the 200 hours that Mr. Chandler spent investigating, preparing, and filing defendant's second amended counterclaim from September 2008 through March 2009. Id. at 6, App. at A2 ¶¶ 2-3. Mr. Chandler admits that he "did not regularly record" his time in connection with this case prior to March 2009 and the 200-hour total therefore represents Mr. Chandler's "estimate" based upon his "knowledge of [his] work practices, [his] recollection about some of the events, and a review of some of [his] correspondence from that time period." Id., App. at A2 ¶ 3. Mr. Chandler also estimated that he worked 617 hours, totaling $85,818.98, from April 2009 through March 2011, on discovery regarding Invoices Nos. 265 through 267. Id. at 13, App. at A2 ¶¶ 5-6, A4. This figure is based upon Mr. Chandler's entries into DOJ's time reporting database and his "estimate" of the percentage of his hours relating to the Government's CDA fraud counterclaims. Id., App. at A2 ¶¶ 5-6. Mr. Chandler candidly states that his time entries "reflect rough estimates only, and many of them were made days or weeks after the fact." Id. ¶ 5. Defendant calculated the total cost of Mr. Chandler's time by multiplying the estimated hours worked by his salary rate, benefit rate, and overhead rate. See id. at 6, App. at A4.

Defendant also seeks $65,681.90 for the 534 hours that Mr. Finkelstein spent on discovery related to Invoice Nos. 265 through 267. Id. at 13, 15. This figure is based upon Mr. Finkelstein's entries into the DOJ's time reporting database and his "estimate" that 75% of his time spent on Veridyne matters related to the Government's CDA fraud counterclaims. Id., App. at A16-17 ¶¶ 4-5. Mr. Finkelstein notes that his time entries "reflect rough estimates" and that he would "typically enter each estimate at the end of each day, and record a notion indicating the principal task or tasks on which [he] worked that day." Id., App. at A16 ¶ 4. Defendant calculated the total cost of Mr. Finkelstein's time by multiplying the estimated hours worked by his salary rate, benefit rate, and overhead rate. See id. at 13, App. at A4.

Defendant has submitted declarations from three MARAD employees, Janis P. Rodriguez, Erica Williams, and William Kaag, to document its claimed labor costs for MARAD personnel. Ms. Rodriguez, MARAD's agency counsel, "estimate[s]" that she spent forty hours assisting DOJ in preparing the amended counterclaims, forty hours assisting with discovery, and 118 hours in depositions relating to defendant's counterclaims. Id., App. at A5-6 ¶¶ 3-6. Ms. Rodriguez admits that she does not keep time records and therefore developed the estimates by reviewing contemporaneous e-mails and calendar entries and discussing her estimates with DOJ and other MARAD employees. Id., App. at A5 ¶ 2. Ms. Williams, the MARAD Contracting Officer, states that she spent approximately forty hours reviewing Invoice Nos. 265 through 267 and an additional fifty-nine hours assisting in discovery concerning defendant's amended counterclaim. Id., App. at A7-8 ¶¶ 5-7. Mr.

Kaag, the MARAD Fiscal Officer, claims that he spent approximately eight hours preparing spreadsheets and reviewing documents relating to Veridyne's misrepresentations of work order funding, and an additional nine hours preparing for and attending his deposition. Id., App. at A9 ¶¶ 3-5. Similar to Ms. Rodriguez, Ms. Williams and Mr. Kaag do not keep time records and developed their estimates by reviewing contemporaneous e-mails and calendar entries and discussing the estimates with agency counsel. Id., App. at A7 ¶ 3, A9 ¶ 2. Defendant calculated its MARAD labor costs by multiplying each employee's estimated hours by his or her hourly rate during the relevant time period. Id. at 7.

Defendant also seeks to recover the costs of obtaining a third-party contractor, Lockheed Martin Services, Inc. ("LMSI"), to perform forensic imaging of Veridyne's computers. See id. at 10-12. Defendant retained LMSI pursuant to this court's March 16, 2010 order directing defendant to select a computer forensics expert to produce mirror images of Veridyne's computers. See Order entered Mar. 16, 2010, at 2; Def.'s Br. filed Aug. 31, 2012, at 11. According to Richard Omerso, the DOJ Case Manager who oversaw LMSI's forensic imaging, the Government paid LMSI $111,285.75 for the forensic imaging work. Id., App. at A11 ¶¶ 1, 3. This figure included the costs of imaging seventeen Veridyne devices, in addition to LMSI's travel to Veridyne facilities. Id. ¶¶ 2-3. Defendant seeks to recover an additional $3,654.00 for the forty hours that Mr. Omerso spent overseeing LMSI's work. Id., App. at A11-12 ¶¶ 4-5. The forty-hour figure represents Mr. Omerso's "estimate" and does not appear to be based on contemporaneous time records. Id.

Defendant retained a forensic auditor from DCAA, Robert Konfala, to provide investigative support and expert consultative services in connection with Invoice Nos. 265 through 267. Id., App. at A13 ¶ 1. Mr. Konfala described his role, as follows:

> I reviewed documents, analyzed the extent of the overcharges on Veridyne's invoices and summarized my findings, attended depositions, assisted attorneys in preparation for depositions, researched and provided advice as to particular Government contract accounting principles, and generally responded to questions from Government attorneys regarding accounting matters outside their expertise.

Id. ¶ 2. Defendant seeks recovery of $43,700.64 for 326 hours of Mr. Konfala's time between November 2009 and March 2011. Id. ¶ 3. The 326 hours are reflected in Mr. Konfala's "certified time records," and "DCAA actually billed the client agency, [MARAD], that amount for [his] services during that period." Id. Mr. Konfala calculated the total cost of his services by multiplying his hours by a DCAA overhead factor of 1.22 and then applying his billing rate for each relevant pay period. Id.

Defendant asserts that it has been "exceedingly conservative in estimating the amount of time" it spent reviewing the unsupported portions of Veridyne's claims. See id. at 3 n.2. Defendant also argues that the plain language and legislative history of the anti-fraud provision do not restrict the time period during which the Government's "review" may occur and accordingly allow the Government to recover for costs of review incurred during civil discovery. See id. at 2-4.

Plaintiff responds with three arguments. First, plaintiff contends that defendant's claimed attorney expenses do not constitute costs of "review" under the anti-fraud provision. See Pl.'s Br. filed Sept. 14, 2012, at 1-2. Plaintiff specifically takes issue with the fact that the majority of defendant's claimed costs were incurred in conducting discovery after defendant filed its second amended counterclaim. Id.

Second, plaintiff emphasizes that defendant did not properly document DOJ and MARAD employee time and therefore is not entitled to recover those costs. Plaintiff contends that a CDA claim for costs of review is analogous to a claim for attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (2006), and accordingly must "'be in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and the need for the service and the reasonable fee to be allowed.'" See id. at 4 (quoting Applegate v. United States, 52 Fed. Cl. 751, 768 (2002)). Plaintiff cites EAJA cases for the proposition that a defendant's claim must be based on itemized statements and contemporaneous records. See id. at 3-5 (citing cases). Of particular concern to plaintiff is that Mr. Chandler and the MARAD employees did not regularly record their time and that the DOJ and MARAD employees could provide only "estimates" of their time spent reviewing the CDA counterclaims. See id. at 5-11.

Third, regarding the forensic imaging costs, plaintiff contends that the imagining "went well beyond Invoices 265 [through] 267" and therefore was not limited to reviewing Veridyne's unsupported claims. See id. at 2 n.5, 14. Plaintiff points to a list of search terms that purportedly were not related to Invoice Nos. 265 through 267. See id. at 14.

There is a dearth of case law interpreting the Government's entitlement to costs of review under the CDA's anti-fraud provision, 41 U.S.C. § 7103(c)(2). The one case from the United States Court of Federal Claims on point, UMC Electronics Co. v. United States, 45 Fed. Cl. 507 (1999), took the position that costs of review necessarily include costs incurred by DOJ because the authority to settle, compromise, pay, or otherwise adjust a claim for fraud rests with DOJ. See 45 Fed. Cl. at 510 (citing 41 U.S.C. § 605(a) (1994), now codified at 41 U.S.C. § 7103(c)(1)).

This court is of the view that UMC Electronics is not persuasive authority for the proposition that an award for "costs of review" necessarily includes attorneys' fees incurred

7

in litigating a CDA fraud claim. Congress knows how to mandate an award of attorneys' fees, but chose not to include such language in the CDA. Compare 31 U.S.C. § 3729(a)(3) (providing that a violator of the False Claims Act "shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages"), with 41 U.S.C. § 7103(c)(2) (providing that a contractor is liable for "all of the Federal Government's costs attributable to reviewing the unsupported part of the claim"). A distinction exists between litigation costs and costs of review that may entail attorney time. The court takes no position, however, on where that line may be drawn. To the extent that defendant has drawn the line between litigation costs and costs of review for attorney time, it has not provided the court with proper documentation supporting its reasonable costs.

The court agrees with UMC Electronics insofar as it holds that the costs of review must be "reasonable" and "properly documented." 45 Fed. Cl. at 510, 512. Although the anti-fraud provision contains no express requirement that the costs must be "reasonable," see 41 U.S.C. § 7103(c)(2), it presumes that defendant actually has incurred the claimed costs of review. To make this determination, the court must review sufficiently reliable documentation verifying the activities billed for and the accuracy of such costs.

Numerous federal statutes authorize some form of fee-shifting, and court decisions interpreting these statutes are instructive on the type of documentation necessary to substantiate costs. 3/ In Hensley v. Eckerhart, 461 U.S. 424 (1983), the United States Supreme Court emphasized that a party seeking attorneys' fees bears the burden of "documenting the appropriate hours expended and hourly rates. . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." 461 U.S. at 437. The Court cautioned, however, that a party seeking attorneys' fees "is not required to record in great detail how each minute of his time was expended," as long as the "general subject matter" of the time expenditures is identified. Id. at 437 n.12.

Applying the Hensley standard to the fee-shifting provision of the EAJA, the United States Court of Appeals for the Federal Circuit has held that "under EAJA contemporaneous records of attorney's time and usual billing rates, as well as a breakdown of expenses, are necessary in order to determine the reasonableness of the charges." Naporano Iron & Metal Co. v. United States, 825 F.2d 403, 404 (Fed. Cir. 1987). Plaintiff urges this court to apply the requirements outlined in Naporano Iron & Metal and other EAJA cases, arguing that the "Government should be held to at least the same standard for recovery of attorney expense as a small business seeking an EAJA award." Pl.'s Br. filed Sept. 14, 2012, at 3 n.6. Unlike

---

3/   The United States Supreme Court has indicated that its opinions construing "reasonableness" under one fee-shifting statute are generally applicable to others. See City of Burlington v. Dague, 505 U.S. 557, 561-62 (1992); see also Wagner v. Shinseki, 640 F.3d 1255, 1261 n.3 (Fed. Cir. 2011); Applegate, 52 Fed. Cl. at 759 n.11.

other fee-shifting statutes, however, the EAJA imposes specific documentation requirements on a party seeking attorneys' fees. See 28 U.S.C. § 2412(d)(1)(B) (requiring a party seeking attorney's fees to provide an "itemized statement" of expenses). Indeed, many of the EAJA cases relied upon by plaintiff reflect interpretations of the EAJA's "itemized statement" provision. See, e.g., Avgoustis v. Shinseki, 639 F.3d 1340, 1343-44 (Fed. Cir. 2011) (clarifying that "contemporaneous records" satisfy the EAJA's itemized statement requirement). Because the CDA does not include such requirements, the EAJA case law should not govern the case at bar.

In a recent opinion, Tip Top Construction, Inc. v. Donahoe, 695 F.3d 1276 (Fed. Cir. 2012), the Federal Circuit clarified the type of documentation sufficient to support a contractor's claim for consultant and attorneys' fees arising from negotiations relating to the price of changed work. The case involved an interpretation of a contract clause – not an award of attorneys' fees under the EAJA. Id. at 1279-82. The Federal Circuit held, in part, that the contractor's consultant and attorneys' fees were reasonable because the contractor submitted sworn declarations describing the work, in addition to timesheets or billing records for the relevant time period. Id. at 1284-85. The court sees no reason why the Government should be held to a different standard when it seeks costs of review pursuant to the CDA.

Defendant has not submitted sufficient documentation in this case that substantiates all of its claimed costs of review; to wit, defendant has provided seven sworn declarations regarding DOJ and MARAD labor costs, but has not submitted timesheets or billing records that support the claims covered by those declarations. Indeed, most timesheets are not available because all of the DOJ and MARAD employees identified, with the exception of Mr. Finkelstein, failed to keep contemporaneous or complete time records during the relevant time period. 4/ These individuals instead constructed their time estimates several years later based on discussions with colleagues and a review of calendar entries and correspondence. In its February 18, 2009 motion to amend its answer to include a CDA fraud counterclaim, defendant represented that its motion was based upon "newly-discovered fraudulent statements" in plaintiff's invoices. Def.'s Br. filed Feb. 18, 2009, at 1. Upon discovering this evidence, the Government was on notice that it should have been recording its time to support an eventual claim for costs of review under the CDA's anti-fraud provision.

Although DOJ attorneys Messrs. Chandler and Finkelstein kept time records during at least a portion of the relevant time period, they have not substantiated sufficiently the hours spent reviewing plaintiff's unsupported claims. From April 2009 through March

---

4/ Mr. Chandler did not regularly record his time prior to March 27, 2009. Def.'s Br. filed Aug. 31, 2012, App. at A2 ¶ 3.

9

2011, Mr. Chandler made entries into DOJ's time reporting database, representing a "rough estimate" of the time he devoted to each of his cases. Def.'s Br. filed Aug. 31, 2012, App. at A2 ¶¶ 5-6. Based upon this rough estimate, Mr. Chandler provided a percentage estimate of the work "related to" defendant's CDA fraud claims. Id. ¶ 6. Although Mr. Finkelstein's time entries were more precise, see id., App. at A16 ¶ 4, Mr. Finkelstein also provided a percentage estimate of the work "related to" defendant's CDA fraud claims. Considering the factual complexity and multiplicity of legal claims involved in this case, however, the record does not give the court a reasonable evidentiary basis to support a finding that the estimated hours adequately reflect the costs of reviewing – rather than litigating – Invoice Nos. 265 through 267. The DOJ time records presumably would have described the specific activities related to the attorneys' work in this case and therefore would have assisted the court in discerning the amount of attorney costs attributable to actual "review" – not litigation. Without such DOJ records or other similar documentation describing the attorneys' work activities, the court is unable to award defendant the costs of review incurred by the DOJ attorneys.

Those who disparage the time and work of dedicated government personnel (in this case, especially, the DOJ attorneys) do not want to pay additional administrative costs that would be incurred by DOJ and agency personnel if they were required to bill their time with the same exacting temporal breakdowns and detail as private party litigants. Therefore, the court assumes that post facto reconstruction of government costs may be anticipated. However, what persuades the court in this case that it would be unfair, improvident, and unwarranted to accept defendant's conservative estimate of DOJ and MARAD labor costs is that defendant knew as of a given date that it would be incurring costs of review for which the CDA allowed recovery. As soon as it began considering filing a CDA fraud counterclaim, the Government was obliged to begin reconstructing its prior costs of review and documenting its ongoing costs of review.

The court takes a different view with respect to defendant's costs of retaining Mr. Konfala, the DCAA auditor. Unlike the MARAD employees, Mr. Konfala kept "certified time records" of his work. See id., App. at A13 ¶ 3. The Government engaged Mr. Konfala for the purpose of providing investigative support and expert consultative services related to Invoice Nos. 265 through 267, and the DCAA actually billed MARAD for Mr. Konfala's services. Id. ¶¶ 1-3. Because Mr. Konfala is an auditor with accounting expertise and not an attorney, the documentation provided reasonably establishes that Mr. Konfala's costs reflect the costs of "reviewing" the unsupported claims. Accordingly, defendant is entitled to recover $43,700.64 in costs that the DCAA billed to MARAD for Mr. Konfala's services.

Regarding the forensic imaging, the court finds that the forensic imaging costs are not entirely attributable to reviewing plaintiff's unsupported claims regarding Invoice Nos. 265 through 267. Defendant hired LMSI to conduct the forensic imaging pursuant to this

court's March 16, 2010 order that defendant select a computer forensics expert to produce images of all computers used by plaintiff's employees who were "involved in the negotiation or preparation of plaintiff's proposal for Modification 23, the preparation of Invoices 265 through 267 or plaintiff's claim pursuant to the [CDA]." Order entered Mar. 16, 2010, at 2. By the terms of the March 16 order, the forensic imaging was not limited to the scope of reviewing Invoice Nos. 265 through 267. See id. Indeed, the list of search terms used to conduct the imaging reveals that the imaging was not limited to reviewing the unsupported part of plaintiff's claims. See Pl.'s Br. filed Sept. 14, 2012, App. at 5.

The court has considered whether its own extensive and extended involvement with the development of this case enables it to make a partial award for the costs of imaging. The court can make a discriminating assessment in that the court waded with the parties through the product of this task. Moreover, keeping a record of charges for what records over what time periods were recorded from each source imaged would not have been feasible. The court finds that the record supports an award of 40% of the amount billed and paid to LMSI for the CDA costs of review – $44,514.30.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant's petition for costs of review is granted to the extent of $88,214.94 and is otherwise denied.

2. The Clerk of the Court shall enter the revised judgment, as follows:

> 1) Plaintiff has proved by a preponderance of the evidence that it is entitled to recovery in *quantum meruit* for the services that it performed before the stop-work order issued (Invoice Nos. 260–265) to the extent that sufficient funding was available in the relevant WOs at the time the invoices were submitted for payment.  On Invoice No. 266, plaintiff has proved by a preponderance of the evidence that it is entitled to recover expenses incurred for the benefit of the Spare Parts Contract.  Accordingly, plaintiff is entitled to recover a total of $1,068,636.22, plus interest under 41 U.S.C. § 7109(a)(1), from June 14, 2005, the date on which MARAD's contracting officer received plaintiff's claim.

> 2) Defendant has carried its burden of proof on its forfeiture, FCA, and CDA claims, respectively.  Defendant is entitled to recover a total of $2,054,017.03

11

on these counterclaims, which includes partial recovery of defendant's costs of review on its CDA claim.

3) The Clerk of the Court shall enter judgment for defendant in the amount of the difference between the minuend $2,054,017.03, and the subtrahend $1,068,636.22, including interest on the latter amount.

No costs.

/s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge